Lisa T. Simpson (LS-0694)
Rishona Fleishman (RF-5263)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Telephone: (212) 506-5000

Attorneys for Defendant
Mervyn's LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Great White Bear, LLC,<br><br>    Plaintiff,<br><br>-against-<br><br>Mervyns, LLC,<br><br>    Defendant. | 06 Civ. 13358 (RMB)(FM)<br><br>**DECLARATION OF**<br>**RISHONA FLEISHMAN** |

RISHONA FLEISHMAN declares:

1. I am a member of the Bar of this Court and am associated with the firm Orrick, Herrington & Sutcliffe LLP, attorneys for defendant Mervyn's, LLC ("Mervyn's") in this action. I make this declaration in support of Mervyn's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

2. Attached hereto as Exhibit A is a true and correct copy of the Amended Complaint filed November 20, 2006 by plaintiff Great White Bear, LLC in this action.

3. Attached hereto as Exhibit B is a true and correct copy of the Amended Answer, dated January 30, 2007, filed by Mervyn's in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York on February 7, 2007.

_____
Rishona Fleishman

# EXHIBIT A

JS 44C/SDNY
REV. 12/2005

**CIVIL COVER SHEET**

06 CV 13358

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| GREAT WHITE BEAR, LLC | MERVYNS, LLC |

RECEIVED DEC 07 2006

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
NESENOFF & MILTENBERG, LLP
363 SEVENTH AVENUE, 5TH FLOOR
NEW YORK, NY 10001  (212) 736-4500

**ATTORNEYS (IF KNOWN)**

RECEIVED NOV 20 2006 U.S.D.C. S.D.N.Y. CASHIERS

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

BREACH OF CONTRACT AND QUASI-CONTRACT

Has this or a similar case been previously filed in SDNY at any time? No [X]  Yes? [ ]  Judge Previously Assigned _____

If yes, was this case Vol [ ]  Invol. [ ]  Dismissed.  No [ ]  Yes [ ]  if yes, give date _____ & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)  **NATURE OF SUIT**

**CONTRACT**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 151 MEDICARE ACT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL. VETERANS)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
- [ ] 160 STOCKHOLDERS SUITS
- [X] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**TORTS - PERSONAL INJURY**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
- [ ] 362 PERSONAL INJURY - MED MALPRACTICE
- [ ] 365 PERSONAL INJURY PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
- [ ] 610 AGRICULTURE
- [ ] 620 FOOD & DRUG
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 630 LIQUOR LAWS
- [ ] 640 RR & TRUCK
- [ ] 650 AIRLINE REGS
- [ ] 660 OCCUPATIONAL SAFETY/HEALTH
- [ ] 690 OTHER

**LABOR**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
- [ ] 740 RAILWAY LABOR ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 COPYRIGHTS
- [ ] 830 PATENT
- [ ] 840 TRADEMARK

**SOCIAL SECURITY**
- [ ] 861 HIA (1395FF)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 TAXES
- [ ] 871 IRS-THIRD PARTY 26 USC 7609

**OTHER STATUTES**
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 410 ANTITRUST
- [ ] 430 BANKS & BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
- [ ] 480 CONSUMER CREDIT
- [ ] 490 CABLE/SATELLITE TV
- [ ] 810 SELECTIVE SERVICE
- [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
- [ ] 875 CUSTOMER CHALLENGE 12 USC 3410
- [ ] 891 AGRICULTURE ACTS
- [ ] 892 ECONOMIC STABILIZATION ACT
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 894 ENERGY ALLOCATION ACT
- [ ] 895 FREEDOM OF INFORMATION ACT
- [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES
- [ ] 890 OTHER STATUTORY ACTIONS

**REAL PROPERTY**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES - CIVIL RIGHTS**
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING ACCOMMODATIONS
- [ ] 444 WELFARE
- [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
- [ ] 446 AMERICANS WITH DISABILITIES -OTHER
- [ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
- [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
- [ ] 530 HABEAS CORPUS
- [ ] 535 DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS
- [ ] 555 PRISON CONDITION

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $6,622,000  OTHER _____

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____  DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: [X] YES [ ] NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

# United States District Court

SOUTHERN  **DISTRICT OF** NEW YORK

GREAT WHITE BEAR, LLC

Plaintiff

V.

MERVYNS, LLC

Defendant

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **06 CV 13358**

**Judge Berman**

TO: (Name and address of defendant)

MERVYNS, LLC
223301 FOOTHILL ROAD
HAYWARD, CALIFORNIA 94541

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

NESENOFF & MILTENBERG, LLP
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001

an answer to the complaint which is herewith served upon you, within __20 (TWENTY)__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

*(signature)*

(BY) DEPUTY CLERK

DATE  NOV 20 2006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
GREAT WHITE BEAR, LLC

                Plaintiff,

-against-

MERVYNS, LLC,

                Defendant.
---------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)

**AMENDED COMPLAINT**

**JURY DEMANDED**

SENT TO CHAMBERS
FOR REVIEW

NOV 30 2006

U.S.D.C.S.D.N.Y.
CASHIERS

Plaintiff GREAT WHITE BEAR, LLC, by its attorneys Nesenoff & Miltenberg, LLP, as and for its Amended Complaint, respectfully alleges as follows:

### THE PARTIES

1. Plaintiff Great White Bear, LLC ("Great White Bear") is a limited liability company organized under the laws of New Jersey with its principal place of business at 1412 Broadway - Suite 1604, New York, New York 10018. Great White Bear is a wholesale clothing company that sells various lines of outerwear to department stores with storefronts throughout the United States.

2. Defendant Mervyns, LLC ("Mervyns") is a limited liability company organized under the laws of California with its main office at 223301 Foothill Road, Hayward, California 94541. Mervyns operates midrange retail department stores in California and nine other states, primarily in the West and in Texas, selling name-brand and private label apparel and housewares.

### JURISDICTION AND VENUE

3. Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), and the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000.00).

4. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5. Great White Bear, as a wholesale company, sells its various lines of apparel to department stores with storefronts throughout the United States such as Macy's, Marshall's, Fashion Bug, Cato,

-2-

Richs, and Dillards. Great White Bear presents its different lines to its buyers and takes orders for its various merchandise. After it obtains the orders from buyers, Great White Bear contracts with independent vendors or agents to manufacture the goods.

6. Rampage Clothing Company (hereinafter "Rampage") is an apparel label marketing collections of Junior' Sportswear and Jeanswear. In March 2005, Great White Bear negotiated an agreement with Rampage by which Great White Bear would sell Junior Coats under the Rampage main label as a licensee. The license agreement did not include a license for Collections (Knits, Wovens, Jackets, and Pants). Great White Bear also had a license through another company to sell Knits and Activewear under the Rampage label, but that license did not extend to the sale of Rampage Collections.

7. In or about late March or early April 2005, Scott Jeffries, a Senior Buyer of Juniors Sportswear at Mervyns, led a group of buyers from Mervyns to meet with Danny Fodiman and Glenn Sands of Great White Bear at Great White Bear's Manhattan offices. Danny Fodiman and Glenn Sands explained to Scott Jeffries and the others from Mervyns that Great White Bear had a license to sell Junior Coats under the Rampage main label. Scott Jeffries responded that Mervyns would not be interested in buying from Great White Bear just Junior Knits and Activewear to sell under the Rampage label. Scott Jeffries further stated, however, that the Rampage brand would be important to Mervyns to have and that Great White Bear should attempt to get a license to sell Collections under the Rampage label.

8. Given the statements of Mervyns's Scott Jeffries to Great White Bear, a meeting was arranged by Great White Bear between representatives of Rampage and Great White Bear with respect to Great White Bear's request for a license to sell Collections under the Rampage label. At the conclusion of that meeting, however, Rampage refused Great White Bear's request for a license to sell Collections under the rampage main label because such a license would put Great White Bear in a position of competing with Rampage itself.

9. Mervyns's Scott Jeffries, upon being informed of Rampage's denial of a license to Great

-3-

White Bear of a license for Collections, said that Rampage's denial to Great White Bear was unacceptable. Mervyns's Scott Jeffries then went with Danny Fodiman and Glenn Sands of Great White Bear and met with Larry Hansel, the President and a main principal of Rampage, to renew the request of Great White Bear for a license to sell Collections under the Rampage label. Rampage's Larry Hansel at first said no, but then after Great White Bear offered a to give a guarantee to Rampage of a minimum amount of business and offered further to accept a license limited to sell to Mervyns under a special Rampage label, Rampage's Larry Hansel agreed for Rampage with Great White Bear that Great White Bear would receive a license for Collections to be sold to Mevyns under the label "R for Rampage."

10. As a consequence of and in reliance on the agreement between Rampage and Great White Bear for a special license for Collections to sell to Mervyns, Great White Bear's Danny Fodiman and Glenn Sands sat in the Rampage showroom together with Mervyns's Scott Jeffries and examined Rampage samples, and Scott Jeffries picked out desired samples and quantities. Also, Great White Bear was set up as a vendor for Mervyns, requiring forms to be filled out, and arrangements were made for Great White Bear to have access to the Mervyns web site. Mervyns then issued purchase orders to Great White Bear based upon what Scott Jeffries had picked out in Rampage's showroom. As to such purchase orders, Great White Bear needed to have them 90 days in advance in order to fill the orders.

11. Because Great White Bear needed to give a guarantee of a minimum amount of business to Rampage per the license, Great White Bear inquired of Mervyns what volume of business was Mervyns going to be giving Great White Bear per the "R for Rampage" Collections license. Mervyns's Scott Jeffries returned the call to Great White Bear in Manhattan and committed Mervyns to placing orders for $13 million at cost allowing for a 10% deviation down (or $11.7 million) over an eighteen-month period. Great White Bear accepted this commitment, reasonably relied upon it and acted upon it by in turn extending a guarantee to Rampage of $5 million business for 18 months at an 8% royalty, entailing a $400,000 payment by Great White Bear to Rampage. Accordingly,

-4-

Mervyns and Great White Bear entered into an agreement whereby Mervyns would be placing orders for $11.7 million of business per the "R for Rampage" Collections license over an eighteen-month period. Pursuant to that agreement, Mervyns's Scott Jeffries informed Great White Bear the initial breakdown that he wanted in the "R for Rampage" Collections.

12. When the next orders came in to Great White Bear from Mervyns, however, those orders were "light" -- smaller than expected. This caused Great White Bear to question whether Mervyns would be hitting the agreed upon numbers per the agreement between Mervyns and Great White Bear, and Great White Bear's Sandy Fodiman placed a call to Mervyns's Scott Jeffries raising that concern. Mervyns's Scott Jeffries returned that call to Great White Bear in Manhattan and reassured Great White Bear that Mervyns would be making up the initial "light" orders.

13. Soon thereafter, however, Scott Jeffries was moved out of his position as a Mervyns Senior Buyer dealing with, among others, Great White Bear. In his place were other representatives of Mervyns -- Laura Willett and Heather Takaji. They handled the Great White Bear account in a deliberately counterproductive way, lacking entirely in good faith and in breach of the agreement by frustrating performance thereunder, so that Great White Bear was set up to fail. Mervyns's Laura Willett and Heather Takaji, among other things, gave to Great White Bear only 60 to 75 days to fill orders, ordered items that were not selling and failed to provide information needed to process orders. On information and belief, Mervyns was building for itself a record with which to terminate the contract and business relationship with Great White Bear. Complicating matters was that in July 2005, the United States reimposed quotas in imports from China, disrupting clothing shipments from that country; and Mervyns again mishandled the relationship with Great White Bear so that the import quotas were a difficult obstacle for Great White Bear to overcome in connection with filling orders for Mervyns under the agreement for Collections to be sold under "R for Rampage" label.

14. In November 2005, the General Merchandise Manager for Mervyns, Michael Wallen, along with Mervyns buyers Laura Willett and Robin Green, met with Danny Fodiman, Sandy Fodiman and Glenn Sands of Great White Bear in Great White Bear's Manhattan offices. Mervyns's

-5-

Michael Wallen stated they had a problem with the Great White Bear goods not selling, but knowing there was a commitment to Great White Bear, they would try to test Great White Bear with small orders but that Mervyns was not interested in any kind of substantial business. The response of Great White Bear was to disagree strongly and explain why there had been problems, which essentially stemmed from the ways that Mervyns was mishandling the business relationship, such as, among other things, not giving sufficient lead time to fill orders and submitting small orders that could not as a practical matter be filled.

15. In January 2006, Mervyns, without justification or excuse, informed Great White Bear that the contract with Great White Bear was done and that Mervyns would be placing no further orders. At that point in time, Mervyns had placed only $2,300,000 in orders of the $11,700,000 in sales over eighteen months committed to by Mervyns under their agreement with Great White Bear. Also, Mervyns returned goods and assessed excess charge-backs. Mervyns's termination of the agreement and related actions were in wrongful breach of that agreement.

16. As a direct consequence of Mervyns's breach and after discharging any duty to mitigate, Great White Bear suffered a loss of $9,400,000 in lost orders. A 40% gross profit rate (computed after costs of goods but before overhead) is standard in the industry; and at that 40% gross profit rate, Great White Bear suffered $3,760,000 in lost profits caused by Mervyns's breach.

17. As a further consequence of the breach of Mervyns's contractual commitment and after discharging any duty to mitigate, additional reasonably foreseeable losses to Great White Bear included: (i) loss of the guarantee payment of $400,000 to Rampage, which had made in reasonable reliance on the agreement between Mervyns and Great White Bear for the sale of Collections under the "R for Rampage" label; (ii) returns and cancellations that were not justified under the agreement and that totaled $250,000; (iii) excess charge-backs that were not justified under the agreement that cost $225,000; (iv) certain samples and development costs that totaled $95,000; (v) additional employee expense that totaled $120,000; (vi) interest totaling $40,000 representing financing cost on goods on hand at Great White Bear intended for delivery to Mervyns per the agreement breached

-6-

by Mervyns; (vii) lost travel expense that was $12,000; (viii) loss of opportunity cost that was $700,000 in other business that Great White Bear specifically did not do due to its contractual obligations to Mervyns; and (ix) loss on showroom expense that was $400,000. The foregoing consequential damages totaled $2,862,000.

### AS AND FOR THE FIRST CAUSE OF ACTION
### For Breach of Contract

18. Great White Bear repeats and realleges paragraphs 1 through 17 as if fully set forth herein.

19. Mervyns made an enforceable agreement with Great White Bear by Mervyns making the commitment to place $11.7 million in orders with Great White Bear over an eighteen-month period and Great White Bear acting in reliance thereon and providing $2.3 million on filled orders in partial performance of the aforesaid agreement. Mervyns acted in breach of the aforesaid agreement when Mervyns took actions intended to set up Great White Bear to fail, such as, among other things, giving Great White Bear only 60 to 75 days to fill orders, ordering items that were not selling, failing to provide information needed to process orders and ultimately building for itself a record with which to terminate the contract and business relationship with Great White Bear. Mervyns further acted in breach of the agreement by terminating that agreement without justification or excuse when only $2.3 million of orders were placed with Great White Bear, $9.4 million of orders short of the contractual commitment over eighteen months, and committing related actions to the termination such as return of goods and excess charge-backs.

20. Proximately caused by the aforesaid breach by Mervyns were damages resulting to Great White Bear in the loss of profits and in the further reasonably forseeable consequential losses suffered thereby.

### AS AND FOR THE SECOND CAUSE OF ACTION
### For Breach of Contract (Good Faith & Fair Dealing)

21. Great White Bear repeats and realleges paragraphs 1 through 20 as if fully set forth herein.

-7-

22. Mervyns made an enforceable agreement with Great White Bear by Mervyns making the commitment to place $11.7 million in orders with Great White Bear over an eighteen-month period and Great White Bear acting in reliance thereon and providing $2.3 million on filled orders in partial performance of the aforesaid agreement. Mervyns acted in breach of its duty of good faith and fair dealing when taking actions intended to set up Great White Bear to fail. Mervyns, among other things, gave Great White Bear only 60 to 75 days to fill orders, ordered items that were not selling, failed to provide information needed to process orders and ultimately building for itself a record with which to terminate the contract and business relationship with Great White Bear. Mervyns acted in breach of the agreement by terminating that agreement without justification or excuse when only $2.3 million of orders were placed with Great White Bear, $9.4 million of orders short of the contractual commitment over eighteen months, and committing related actions to the terminations such as return of goods and excess charge-backs.

23. Proximately caused by the aforesaid breach by Mervyns were damages resulting to Great White Bear in the loss of profits and in the further reasonably foreseeable consequential losses suffered thereby.

### AS AND FOR THE THIRD CAUSE OF ACTION
#### For Quasi-Contract

24. Great White Bear repeats and realleges paragraphs 1 through 23 as if fully set forth herein.

25. Mervyns made an agreement with Great White Bear by Mervyns making the commitment to place $11.7 million in orders with Great White Bear over an eighteen-month period, and Great White Bear acting in reliance thereon and providing $2.3 million on filled orders in partial performance of the aforesaid agreement. Mervyns acted in breach of the agreement when Mervyns took actions intended to set up Great White Bear to fail, such as, among other things, giving Great White Bear only 60 to 75 days to fill orders, ordering items that were not selling, failing to provide information needed to process orders and ultimately building for itself a record with which to terminate the contract and business relationship with Great White Bear. Mervyns acted in breach of

-8-

the agreement by terminating that agreement without justification or excuse when only $2.3 million of orders were placed with Great White Bear, $9.4 million of orders short of the contractual commitment over eighteen months, and committing related actions to the termination such as return of goods and excess charge-backs.

26. Proximately caused by the aforesaid breach by Mervyns were damages unjustly resulting to Great White Bear in the loss of profits and in the further reasonably forseeable consequential losses suffered thereby.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Great White Bear demands judgment as follows:

(i) On the First Cause of Action against defendant Mervyns, for a Judgment in an amount to be determined at trial but no less than $6,622,000.00 (six million six hundred twenty-two thousand dollars);

(ii) On the Second Cause of Action against defendant Mervyns, for a Judgment in an amount to be determined at trial but no less than $6,622,000.00 (six million six hundred twenty-two thousand dollars); and

(iii) On the Third Cause of Action against defendant Mervyns, for a Judgment in an amount to be determined at trial but no less than $6,622,000.00 (six million six hundred twenty-two thousand dollars); and

(iv) Granting such other and further relief as to the Court deems just and proper, together with the fees, costs and disbursements of this action.

Dated:   New York, New York
         November 21, 2006                NESENOFF & MILTENBERG, LLP

                                          By: _____
                                              Philip A. Byler, Esq. (PB 1234)

                                          Attorneys for Plaintiff
                                          363 Seventh Avenue - 5th Floor
                                          New York, New York 10001
                                          212.736.4500

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Great White Bear, LLC,<br><br>                Plaintiff,<br>-against-<br><br>Mervyns, LLC,<br><br>                Defendant. | 06 Civ. 13358 (RMB)(FM) |

### AMENDED ANSWER OF DEFENDANT MERVYN'S LLC

Defendant Mervyn's LLC ("Mervyn's"), by and through its undersigned counsel, hereby amends its answer to the Amended Complaint of Plaintiff Great White Bear, LLC ("Great White Bear") pursuant to Federal Rule of Civil Procedure 15(a) as follows:

### PARTIES

1. Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 1 of the Amended Complaint.

2. Defendant Mervyn's LLC avers that the correct address of its main office is 22301 Foothill Road, Hayward, California 94541, and otherwise admits the allegations set forth in paragraph 2 of the Amended Complaint.

### JURISDICTION AND VENUE

3. Defendant admits the allegations set forth in paragraph 3 of the Amended Complaint in so far as Plaintiff has alleged damages sufficient to satisfy the jurisdictional pre-requisite.

4. Defendant admits that venue purports to lie in this judicial district pursuant to 28 U.S.C. § 1391(a) and otherwise denies the allegations set forth in paragraph 4 of the Amended Complaint.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

5.  Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 5 of the Amended Complaint.

6.  Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 6 of the Amended Complaint.

7.  In response to allegations set forth in paragraph 7 of the Amended Compliant, Defendant admits that Scott Jeffries in or about January 2005 met with Sandy Fodiman of Great White Bear at Great White Bear's Manhattan offices to discuss placing specific orders for Rampage merchandise with Great White Bear, and except as so admitted denies the remaining allegations set forth in paragraph 7 of the Amended Complaint.

8.  Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 8 of the Amended Complaint.

9.  In response to allegations set forth in paragraph 9 of the Amended Complaint, Defendant admits that Scott Jeffries, at the request of Great White Bear, and representatives of Great White Bear met with Larry Hansel of Rampage, and that they discussed selling Rampage merchandise under a special Rampage label, and Defendant denies information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph 9 of the Amended Complaint.

10. In response to allegations set forth in paragraph 10 of the Amended Complaint, Defendant admits that Great White Bear was set up as a vendor for Mervyn's and that arrangements were made for Great White Bear to sign on to Mervyn's Partners Online, that Scott Jeffries examined Rampage samples and picked out desired samples and quantities for specific purchase orders, and that specific purchase orders were issued to Great White Bear, and except

as so admitted Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 10 of the Amended Complaint.

11. Defendant denies the allegations set forth in paragraph 11 of the Amended Complaint.

12. Defendant denies the allegations set forth in paragraph 12 of the Amended Complaint.

13. In response to the allegations set forth in paragraph 13 of the Amended Complaint, Defendant admits that Scott Jeffries moved out of his position at Mervyn's and that Laura Willett and Heather Takagi worked with Great White Bear; Defendant denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in the first clause of the last sentence of paragraph 13 of the Amended Complaint; and Defendant denies the remaining allegations set forth in paragraph 13 of the Amended Complaint.

14. In response to allegations set forth in paragraph 14 of the Amended Complaint, Defendant admits that Michael Wallen, Laura Willett, and Robin Green were scheduled to attend a meeting in or around November 2005 with Great White Bear in New York, and denies the remaining allegations set forth in paragraph 14 of the Amended Complaint.

15. In response to allegations set forth in paragraph 15 of the Amended Complaint, Defendant avers that it informed Great White Bear it would not place any more orders from Great White Bear in or about December 2005 or January 2006, and further avers that due to various problems with purchase orders it returned goods and assessed charge-backs, and denies the remaining allegations set forth in paragraph 15 of the Amended Complaint.

16. Defendant denies the allegations set forth in paragraph 16 of the Amended Complaint.

17. Defendant denies the allegations set forth in paragraph 17 of the Amended Complaint.

### AS AND FOR AN ANSWER TO THE FIRST
### CAUSE OF ACTION FOR BREACH OF CONTRACT

18. In response to paragraph 18 of the Amended Complaint, Defendant repeats and realleges its responses to paragraphs 1 through 17 of the Amended Complaint as if fully set forth herein.

19. Defendant denies the allegations set forth in paragraph 19 of the Amended Complaint.

20. Defendant denies the allegations set forth in paragraph 20 of the Amended Complaint.

### AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION
### FOR BREACH OF CONTRACT (GOOD FAITH AND FAIR DEALING)

21. In response to paragraph 21 of the Amended Complaint, Defendant repeats and realleges its responses to paragraphs 1 through 20 of the Amended Complaint as if fully set forth herein.

22. Defendant denies the allegations set forth in paragraph 22 of the Amended Complaint.

23. Defendant denies the allegations set forth in paragraph 23 of the Amended Complaint.

### AS AND FOR AN ANSWER TO THE THIRD
### CAUSE OF ACTION FOR QUASI-CONTRACT

24. In response to paragraph 21 of the Amended Complaint, Defendant repeats and realleges its responses to paragraphs 1 through 23 of the Amended Complaint as if fully set forth herein.

25. Defendant denies the allegations set forth in paragraph 25 of the Amended Complaint.

26. Defendant denies the allegations set forth in paragraph 26 of the Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

27. The Amended Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

28. Plaintiff's claims are barred in whole or in part by the statute of frauds.

## THIRD AFFIRMATIVE DEFENSE

29. Plaintiff's claims are barred in whole or in part by the equitable doctrines of laches, waiver, estoppel, and/or ratification.

## FOURTH AFFIRMATIVE DEFENSE

30. Plaintiff's claims are barred in whole or in part by the statute of limitations.

## FIFTH AFFIRMATIVE DEFENSE

31. Plaintiff's claims are barred in whole or in part by failure to mitigate damages.

## SIXTH AFFIRMATIVE DEFENSE

32. Plaintiff's claims are barred in whole or in part because any alleged damages were caused by the acts or omissions of Plaintiff or third parties over whom or which Mervyn's had and has no control, and the acts or omissions of Plaintiff or third parties were intervening and superseding causes of Plaintiff's alleged injuries or risk of injuries.

## SEVENTH AFFIRMATIVE DEFENSE

33. Plaintiff's claims are barred by the contract that governs Mervyn's sale of goods to Plaintiff.

## RESERVATION OF RIGHTS

Mervyn's hereby gives notice that it may rely upon any additional affirmative defenses that become available or apparent during discovery, and thus reserves the right to amend its answer to assert such additional defenses.

WHEREFORE, Defendant Mervyn's LLC respectfully prays that judgment be entered in its favor (i) dismissing the Amended Complaint, and all claims and causes of action asserted herein, with prejudice; (ii) awarding Mervyn's its costs, disbursements and reasonable attorney's fees; and (iii) granting such other and further relief in favor of Mervyn's and against Plaintiff as the Court may deem just and proper.

Dated:   New York, New York
         January 30, 2007

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Lisa T. Simpson
Lisa T. Simpson (LS-0694)
Rishona Fleishman (RF-5263)
666 Fifth Avenue
New York, NY  10103-0001
212-506-5000

Attorneys for Defendant Mervyn's LLC