UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

GREAT WHITE BEAR, LLC

                Plaintiff,

    -against -

MERVYNS, LLC,

              Defendant.

--------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)


**PLAINTIFF GREAT WHITE BEAR LLC'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANT MERVYNS'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF
PLAINTIFF GREAT WHITE BEAR LLC'S CROSS-MOTION TO AMEND**


**NESENOFF & MILTENBERG, LLP**
Attorneys for Plaintiff Great White Bear, LLC
363 Seventh Avenue - Fifth Floor
New York, New York 10001
212.736.4500

-i-

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

THE PROCEDURAL HISTORY OF THE CASE ......................................................... 2

STATEMENT OF FACTS ......................................................................................... 2

    A.    The Parties ....................................................................................... 3

    B.    Great White Bear's "Rampage" License For Junior
           Coats and Knits/Activewear ............................................................. 3

    C.    Mervyns's Efforts With Great White Bear For Great White Bear
           To Obtain A "Rampage" License or Collections To Sell To Mervyns ... 4

    D.    The Mervyns-Great White Bear Agreement ....................................... 5

    E.    Problems Arise With Mervyns's Contract Performance ....................... 6

    F.    Mervyns's Breach ............................................................................. 7

    G.    Great White Bear's Damages ............................................................ 7

PRINCIPLES GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS ...... 8

ARGUMENT ........................................................................................................... 9

I.    GREAT WHITE BEAR HAS A MERITORIOUS CLAIM FOR
    BREACH OF CONTRACT IN THE AMENDED COMPLAINT: THE
    STATUTE OF FRAUDS DOES NOT BAR GREAT WHITE BEAR'S
    FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT ........................... 9

    A.    The First Cause of Action As Alleged In The Amended Complaint ...... 9

    B.    Mervyns's Argument ....................................................................... 9

    C.    The "Merchants' Exception" Of New York's Uniform
           Commercial Code § 2-201(2) Applies In This Case .......................... 10

    D.    The Cases Cited By Mervyns Do Not Support Its Position .................. 11

           1.    One Unreported Case On Pleading "Merchants' Exception" .......... 11

           2.    Cases Involving Oral Employment And Loan Agreements ............. 11

           3.    Two Cases Involving Oral Distributorship
                 and Franchise Agreements ...................................................... 13

-ii-

II.    GREAT WHITE BEAR HAS AND HAS STATED A MERITORIOUS
       CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND
       FAIR DEALING IN THE AMENDED COMPLAINT: GREAT
       WHITE BEAR HAS ALLEGED AN ENFORCEABLE CONTRACT ............................. 14

III.   GREAT WHITE BEAR HAS AND HAS STATED A MERITORIOUS
       CLAIM FOR QUASI-CONTRACT (UNJUST DETRIMENT) ............................................15

IV.    THE CROSS-MOTION TO AMEND SHOULD BE GRANTED ....................................17

       A.    No Unfair Prejudice ..........................................................................................18

       B.    No Undue Delay Or Bad Faith ..........................................................................18

       C.    No Undue Futility ..............................................................................................18

CONCLUSION ....................................................................................................................................19

-iii-

## TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

<u>Aetna Cas. and Sur. Co. v Aniero Concrete Co.</u>, 404 F.3d 566 (2d Cir. 2005) .............................18

<u>Amana Elevation Corp.  v. Ydrohoos-Aquarius, Inc.</u>, 244 A.D.2d 371,
    664 N.Y.S.2d 88 (2d Dep't 1997) ........................................................................................15

<u>Block v. First Blood Associates</u>, 988 F.2d 344 (2d Cir. 1993) ................................................17, 18

<u>Burnette v. Carothers</u>, 192 F.3d 52 (2d Cir. 1999) .........................................................................3, 8

<u>Carruthers v. Flaum</u>, 365 F.Supp.2d 448 (S.D.N.Y. 2005) ...............................................................8

<u>Cherry Creek Woodcraft v. Plum Creek Mfg., Inc.</u>, No. 94-CV-0601E(H),
    1995 WL 428609 (W.D.N.Y. July 18, 1995) .....................................................................11

<u>Clark-Fitzpatrick, Inc. v. Long Island R. Co.</u>, 70 N.Y.2d 382, 516 N.E.2d 190,
    521 N.Y.S.2d 653 (1987) ....................................................................................................15

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957) ..............................................................................................8

<u>DeSantis v. United States</u>, 783 F.Supp.165 (S.D.N.Y. 1992)............................................................ 8

<u>Desiderio v. National Ass'n of Sec. Dealers</u>, 191 F.3d 198 (2d Cir. 1999) .................................3, 8

<u>Doehla v. Whatne Ltd., Inc.</u>, No. 98 Civ. 6087, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) .......12-13

<u>Dolmetta v. United Nat'l Corp.</u>, 712 F.2d 15 (2d Cir. 1983) ..........................................................15

<u>Farash v. Sykes Datatronics</u>, 59 NY2d 500, 452 N.E.2d 1245, 465 N.Y.S.2d 917 (1983) .......1, 15-16

<u>Foman v. Davis</u>, 371 U.S. 178 (1962) .............................................................................................17

<u>Hampton Living, Inc. v. Carltun on the Park</u>, 286 A.D.2d 664,
    729 N.Y.S.2d 773 (2d Dep't 2001) ................................................................................... 15

<u>Huntington Dental & Medical Co., Inc. v. Minnesota Mining and Manufacturing Company</u>,
    95 Civ. 10959, 1998 WL 60954 (S.D.N.Y. Feb. 13, 1998) ...........................................13, 15

<u>In re Ionosphere Clubs, Inc.</u>, 85 F.3d 992, 999 (2d Cir. 1996) ...................................................... 19

<u>Jones v New York State Div. of Military & Naval Affairs</u>, 166 F.3d 45 (2d Cir.1999) ................ 18

<u>Keough v. Texaco, Inc.</u>, No. 97 Civ. 5981, 1999 WL 61836 (S.D.N.Y. Feb. 10, 1999) ............13, 19

<u>Krumme v. Westpoint Stevens Inc.</u>, 143 F.3d 71 (2d Cir. 1998) ....................................................17

<u>Long Island Pen Corp. v. Shatsky Metal Stamping Corp., Inc.</u>, 112 A.D.2d 980,
    492 N.Y.S.2d 791 (2nd Dep't 1985) ............................................................................2, 16-17

-iv-

Mataraza v Newburgh Enlarged City School Dist., 294 F.Supp 483 (S.D.N.Y. 2003) ..............18, 19

McCoy v. Goldberg, 845 F. Supp. 155 (S.D.N.Y. 1994) ...................................................18

Merex A.G. v. Fairchild Weston Systems, Inc., 81 F.3d 821 (2d Cir, 1994) .................................. 19

Philllip v. University of Rochester, 316 F.3d 291 (2d. Cir. 2003).....................................................8

Resorts and Motel Advancement Development Agency, Ltd. v. Sloan,
        160 F.R.D. 449 (S.D.N.Y. 1995) ........................................................................17-18

Rosbach v. Industry Trading Co., Inc., 81 F.Supp.2d 522 (S.D.N.Y. 2000) .....................................12

Shady Records, Inc. v. Source Enters., Inc., 351 F.Supp.2d 74 (S.D.N.Y. 2004) ............................15

Sheppard v. Beerman, 18 F.3d 147 (2d Cir. 1994)...........................................................2-3, 8

Stillman v. Townsend, No. 05 Civ. 6612, 2006 WL 2067035
        (S.D.N.Y. July 26, 2006) ...............................................................................12, 14

Streit v. Bushnell, 424 F.Supp.2d 633 (S.D.N.Y. 2006) ......................................................8

United Magazine Co. v. Murdock Magazines Distribution,
        146 F.Supp.2d 385 (S.D.N.Y. 2001) .................................................................... 14

Village Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995) ..........................................8

Wallace Marine Corporation v. Donzi Marine Corporation,
        675 F.Supp. 838 (S.D.N.Y. 1987) ....................................................................13-14

Zaitsev v. Salomon Bros., Inc., 60 F.3d 1001, 1003-04 (2d Cir. 1995) ............................................12

Zeising v. Kelly, 152 F.Supp.2d 335 (S.D.N.Y. 2001) ........................................................12

## Statutes & Rules

Federal Rules of Civil Procedure, Rule 12(b)(6) ....................................................... 1, 8, 18

Federal Rules of Civil Procedure, Rule 12(c) ...................................................................... *passim*

Federal Rules of Civil Procedure, Rule 15(a) ...............................................................1, 17

New York General Obligation Law § 5-701(a)(1) ........................................................ 12

New York Uniform Commercial Code § 2-201(1) ....................................................... 1, 9-10, 13-14

New York Uniform Commercial Code § 2-201(2) .............................................1, 9-14, 15, 17, 18, 19

-v-

## Other Authorities

Calamari & Perillo, <u>Contracts</u> (3d ed. 1977) ................................................................... 16

Restatement of Contracts, Second, § 139(1) ................................................................... 19

-1-

## PRELIMINARY STATEMENT

Plaintiff Great White Bear, LLC ("Great White Bear") submits this Memorandum of Law in opposition to the motion of defendant Mervyns, LLC ("Mervyns") for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and in support of Great White Bear's cross-motion to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

Mervyns's motion for judgment on the pleadings should be denied. In the Amended Complaint, Great White Bear pleads meritorious claims that it has for (i) breach of contract, (ii) breach of the covenant of good faith and fair dealing and (iii) quasi-contract (unjust detriment).

Great White Bear's first claim in the Amended Complaint is for Mervyns's breach of a contract for $11.7 million worth of clothing to be sold by Great White Bear to Mervyns as a consequence of and in reliance on the granting of a special "R for Rampage" license for "Collections" wear. Contrary to Mervyns's argument, that claim is not barred by the Statute of Frauds. There is a "writing in confirmation" memorializing the agreement that Mervyns's own authorized representative indisputably made with Great White Bear; the "merchant's exception" in New York's Uniform Commercial Code § 2-201(2) thus applies to take the case out of the Statute of Frauds and make the agreement enforceable.

Great White Bear's second claim in the Amended Complaint is for breach of the covenant of good faith and fair dealing. Mervyns's only argument against it is that a claim for breach of contract does not exist here. But a claim for breach of contract does exist here. Accordingly, the second claim for breach of the covenant of good faith and fair dealing is properly asserted in the Amended Complaint.

Great White Bear's third claim in the Amended Complaint is for quasi-contract. Mervyns's argument against it is that the Amended Complaint does not plead the elements of unjust enrichment. The short answer is that Mervyns is invoking the wrong branch of quasi-contract law. Great White Bear is relying upon what under New York quasi-contract law may be called "unjust detriment." See, e.g., Farash v. Sykes Datatronics, 59 NY2d 500, 452 N.E.2d 1245, 465 N.Y.S.2d 917 (1983);

-2-

Long Island Pen Corp. v. Shatsky Metal Stamping Corp., Inc., 112 A.D.2d 980, 492 N.Y.S.2d 791 (2nd Dep't 1985).

To remove any issue of a technical defect to the pleading in the Amended Complaint of the breach of contract claim (based on an unreported decision) and to allow the addition of a valid "promissory estoppel" claim, then Great White Bear's cross-motion to amend should be granted. The Declaration of Great White Bear's Danny Fodiman shows and documents that in connection with the breach of contract claim, Great White Bear can truthfully plead the "writing in confirmation" necessary to invoke the "merchants' exception" under § 2-201(2) of New York's Uniform Commercial Code taking this case out of the Statute of Frauds. A cause of action for promissory estoppel may also properly be added at this point.

## STATEMENT OF PROCEDURAL HISTORY

Great White Bear commenced this action with the filing of a Complaint dated November 20, 2006. Great White Bear filed and served an Amended Complaint dated November 21, 2006. After a Stipulation and Order signed by the Court December 28, 2007, set the time for Mervyns to move or answer, Mervyns filed and served an Answer dated January 10, 2007. On January 17, 2007, a Court conference was held at which a Case Management Plan was entered. On January 30, 2007, Mervyns filed and served an Amended Answer. On February 7, 2007, Great White Bear and Mervyns exchanged Rule 26(a)(1) Initial Disclosure Statements; and at that time, Great White Bear also produced documents (Bates stamped P00001-P01092) as referenced in paragraph 2 of its Rule 26(a)(1) Initial Disclosure Statement. Also on February 7, 2007, Mervyns served its motion for judgment on the pleadings. (Declaration of Philip A. Byler, Esq., ¶¶ 3-4 & citations to SDNY Docket therein.)

## STATEMENT OF FACTS

The allegations of the Amended Complaint are reviewed here because as explained by the Second Circuit in Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994), "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6). Under that

-3-

test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. . . ." Accord, Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Desiderio v. National Ass'n of Sec. Dealers, 191 F.3d 198, 202 (2d Cir. 1999). Mervyns's abbreviated statement of facts in its Memorandum of Law attempts to skirt this part of the governing legal standard.

### A.    The Parties.

Plaintiff Great White Bear is a limited liability company organized under the laws of New Jersey with its principal place of business in New York, New York. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 1.) Great White Bear, as a wholesale company, sells its various lines of apparel to department stores with storefronts throughout the United States such as Macy's, Marshall's, Fashion Bug, Cato, Richs and Dillards. Great White Bear presents its different lines to its buyers and takes orders for its various merchandise. After it obtains the orders from buyers, Great White Bear contracts with independent vendors or agents to manufacture the goods. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 5.)

Defendant Mervyns is a limited liability company organized under the laws of California with its main office in Hayward, California. Mervyns operates retail department stores in California and nine other states, primarily in the West and in Texas, selling name-brand and private label apparel and housewares. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 2.)

### B.    Great White Bear's "Rampage" License For Junior Coats and Knits/Activewear.

Rampage Clothing Company (hereinafter "Rampage") is an apparel label marketing collections of Junior' Sportswear and Jeanswear. In March 2005, Great White Bear negotiated an agreement with Rampage by which Great White Bear would sell Junior Coats under the Rampage main label as a licensee. The license agreement did not include a license for Collections (Knits, Wovens, Jackets, and Pants). Great White Bear also had a license through another company to sell Knits and Activewear under the Rampage label, but that license did not extend to the sale of Rampage Collections. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 6.)

-4-

**C.    Mervyns's Efforts With Great White Bear For Great White Bear
To Obtain A "Rampage" License or Collections To Sell To Mervyns.**

In or about late March or early April 2005, Scott Jeffries, a Senior Buyer of Juniors Sportswear at Mervyns, led a group of buyers from Mervyns to meet with Danny Fodiman and Glenn Sands of Great White Bear at Great White Bear's Manhattan offices. Danny  Fodiman and Glenn Sands explained to Scott Jeffries and the others from Mervyns that Great White Bear had a license to sell Junior Coats under the Rampage main label. Scott Jeffries responded that Mervyns would not be interested in buying from Great White Bear just Junior Knits and Activewear to sell under the Rampage label. Scott Jeffries further stated, however, that the Rampage brand would be important to Mervyns to have and that Great White Bear should attempt to get a license to sell Collections under the Rampage label. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 7.)

Given the statements of Mervyns's Scott Jeffries to Great White Bear, a meeting was with respect to Great White Bear's request for a license to sell Collections under the Rampage label. At the conclusion of that meeting, however, Rampage refused Great White Bear's request for a license to sell Collections under the Rampage main label because such a license would put Great White Bear in a position of competing with Rampage itself.  (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 8.)

Mervyns's Scott Jeffries, upon being informed of Rampage's denial of a license to Great White Bear for Collections, said that Rampage's denial to Great White Bear was unacceptable. Mervyns's Scott Jeffries then went with Danny Fodiman and Glenn Sands of Great White Bear and met with Larry Hansel, the President and a main principal of Rampage, to renew the request of Great White Bear for a license to sell Collections under the Rampage label. Rampage's Larry Hansel at first said no, but then after Great White Bear offered a to give a guarantee to Rampage of a minimum amount of business and offered further to accept a license limited to sell to Mervyns under a special Rampage label, Rampage's Larry Hansel agreed for Rampage with Great White Bear that Great White Bear would receive a license for Collections to be sold to Mervyns under  the "R for Rampage" label. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 9.)

-5-

**D.**     <u>**The Mervyns-Great White Bear Agreement.**</u>

As a consequence of and in reliance on the agreement between Rampage and Great White Bear for a special license for Collections to sell to Mervyns, Great White Bear's Danny Fodiman and Glenn Sands sat in the Rampage showroom together with Mervyns's Scott Jeffries and examined Rampage samples, and Scott Jeffries picked out desired samples and quantities. Also, Great White Bear was set up as a vendor for Mervyns, requiring forms to be filled out, and arrangements were made for Great White Bear to have access to the Mervyns web site. Mervyns then issued purchase orders to Great White Bear based upon what Scott Jeffries had picked out in Rampage's showroom. As to such purchase orders, Great White Bear needed to have them 90 days in advance in order to fill the orders. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 10.)

Because Great White Bear needed to give a guarantee of a minimum amount of business to Rampage per the license, Great White Bear inquired of Mervyns what volume of business was Mervyns going to be giving Great White Bear per the "R for Rampage" Collections license. Mervyns's Scott Jeffries returned the call to Great White Bear in Manhattan and committed Mervyns to placing orders for $13 million at cost allowing for a 10% deviation down (or $11.7 million) over an eighteen-month period. Great White Bear accepted this commitment, reasonably relied upon it and acted upon it by in turn extending a guarantee to Rampage of $5 million business for 18 months at an 8% royalty, entailing a $400,000 payment by Great White Bear to Rampage. Accordingly, Mervyns and Great White Bear entered into an agreement whereby Mervyns would be placing orders for $11.7 million of business per the "R for Rampage" Collections license over an eighteen-month period. Pursuant to that agreement, Mervyns's Scott Jeffries informed Great White Bear the initial breakdown that he wanted in the "R for Rampage" Collections. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 11.)

When the next orders came in to Great White Bear from Mervyns, however, those orders were "light" -- smaller than expected. This caused Great White Bear to question whether Mervyns would be hitting the agreed upon numbers per the agreement between Mervyns and Great White

-6-

Bear, and Great White Bear's Sandy Fodiman placed a call to Mervyns's Scott Jeffries raising that concern. Mervyns's Scott Jeffries returned that call to Great White Bear in Manhattan and reassured Great White Bear that Mervyns would be making up the initial "light" orders. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 12.)

**E.      Problems Arise With Mervyns's Contract Performance.**

Soon thereafter, however, Scott Jeffries was moved out of his position as a Mervyns Senior Buyer dealing with, among others, Great White Bear. In his place were other representatives of Mervyns -- Laura Willett and Heather Takaji. They handled the Great White Bear account in a deliberately counterproductive way, lacking entirely in good faith and in breach of the agreement by frustrating performance thereunder, so that Great White Bear was set up to fail. Mervyns's Laura Willett and Heather Takaji, among other things, gave to Great White Bear only 60 to 75 days to fill orders, ordered items that were not selling and failed to provide information needed to process orders. On information and belief, Mervyns was building for itself a record with which to terminate the contract and business relationship with Great White Bear. Complicating matters was that in July 2005, the United States reimposed quotas in imports from China, disrupting clothing shipments from that country; and Mervyns again mishandled the relationship with Great White Bear so that the import quotas were a difficult obstacle for Great White Bear to overcome in connection with filling orders for Mervyns under the agreement for Collections to be sold under "R for Rampage" label. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 13.)

In November 2005, the General Merchandise Manager for Mervyns, Michael Wallen, along with Mervyns buyers Laura Willett and Robin Green, met with Danny Fodiman, Sandy Fodiman and Glenn Sands of Great White Bear in Great White Bear's Manhattan offices. Mervyns's Michael Wallen stated they had a problem with the Great White Bear goods not selling, but knowing there was a commitment to Great White Bear, they would try to test Great White Bear with small orders but that Mervyns was not interested in any kind of substantial business. The response of Great White Bear was to disagree strongly and explain why there had been problems, which essentially stemmed

-7-

from the ways that Mervyns was mishandling the business relationship, such as, among other things, not giving sufficient lead time to fill orders and submitting small orders that could not as a practical matter be filled. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 14.)

**F.    Mervyns's Breach.**

In January 2006, Mervyns, without justification or excuse, informed Great White Bear that the contract with Great White Bear was done and that Mervyns would be placing no further orders. At that point in time, Mervyns had placed only $2,300,000 in orders of the $11,700,000 in sales over eighteen months committed to by Mervyns under their agreement with Great White Bear. Also, Mervyns returned goods and assessed excess charge-backs. Mervyns's termination of the agreement and related actions were in wrongful breach of that agreement. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 15.)

**G.    Great White Bear's Damages.**

As a direct consequence of Mervyns's breach and after discharging any duty to mitigate, Great White Bear suffered a loss of $9,400,000 in lost orders. A 40% gross profit rate (computed after costs of goods but before overhead) is standard in the industry; and at that 40% gross profit rate, Great White Bear suffered $3,760,000 in lost profits caused by Mervyns's breach. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 16.)

As a further consequence of the breach of Mervyns's contractual commitment and after discharging any duty to mitigate, additional reasonably foreseeable losses to Great White Bear included: (i) loss of the guarantee payment of $400,000 to Rampage, which had made in reasonable reliance on the agreement between Mervyns and Great White Bear for the sale of Collections under the "R for Rampage" label; (ii) returns and cancellations that were not justified under the agreement and that totaled $250,000; (iii) excess charge-backs that were not justified under the agreement that cost $225,000; (iv) certain samples and development costs that totaled $95,000; (v) additional employee expense that totaled $120,000; (vi) interest totaling $40,000 representing financing cost on goods on hand at Great White Bear intended for delivery to Mervyns per the agreement breached

-8-

by Mervyns; (vii) lost travel expense that was $12,000; (viii) loss of opportunity cost that was $700,000 in other business that Great White Bear specifically did not do due to its contractual obligations to Mervyns; and (ix) loss on showroom expense that was $400,000. The foregoing consequential damages totaled $2,862,000.00. Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶ 17.)

## PRINCIPLES GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure provides in pertinent part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. . . ." As noted above, the Second Circuit has made clear that a court, in deciding a motion for judgment on the pleadings under Rule 12(c), is to apply the same standard as applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Burnette v. Carothers, 192 F.3d at 56; Sheppard v. Beerman, 18 F.3d at 150.  Accordingly:

(i) "[A] court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant. . . ."  Burnette v. Carothers, 192 F.3d at 56. Accord, Desiderio v. National Ass'n of Sec. Dealers, 191 F.3d at 202; Sheppard v. Beerman, 18 F.3d at 150; DeSantis v. United States, 783 F.Supp. 165 (S.D.N.Y. 1992).

(ii) The court "should not dismiss the complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Sheppard v. Beerman, 18 F.3d at 150, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Philllip v. University of Rochester, 316 F.3d 291, 293 (2d Cir. 2003). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claim. Village Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995); Carruthers v. Flaum, 365 F.Supp.2d 448, 454 (S.D.N.Y. 2005).

(iii) A court is to give credence to a plaintiff's actual pleadings in the Complaint, not to defendant's characterizations.  Streit v. Bushnell, 424 F.Supp.2d 633 (S.D.N.Y. 2006).

-9-

## ARGUMENT

Before the Court is Defendant Mevyns's motion for judgment on the pleadings. The motion should be denied for the following reasons.

### I.

**GREAT WHITE BEAR HAS A MERITORIOUS CLAIM FOR BREACH OF CONTRACT IN THE AMENDED COMPLAINT: THE STATUTE OF FRAUDS DOES NOT BAR GREAT WHITE BEAR'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

Great White Bear's first cause of action in the Amended Complaint is for breach of contract, which Mervyns does not fairly describe fairly before meritlessly attacking it. The bottom line here is that "merchants' exception" of § 2-201(2) of New York's Uniform Commercial Code applies in this case to make the Great White Bear-Mervyns agreement enforceable.

**A.    The First Cause of Action As Alleged In The Amended Complaint.**

What the Amended Complaint alleges is that as a consequence of and in reliance on the agreement between Rampage and Great White Bear for a special license for Collections for sales at retail by Mervyns, Great White Bear and Mervyns entered into an agreement whereby Mervyns would be placing orders for $11.7 million of business with Great White Bear per the "R for Rampage" Collections license over an eighteen-month period. This agreement came about because Great White Bear needed to give a guarantee of a minimum amount of business to Rampage per the special license for Collections, Mervyns committed to placing orders for $13 million at cost allowing for a 10% deviation down (or $11.7 million) over an eighteen-month period per the "R for Rampage" Collections license and Great White Bear accepted this commitment, reasonably relied and acted upon it by in turn extending a guarantee to Rampage of $5 million business for 18 months at an 8% royalty, entailing a $400,000 payment by Great White Bear to Rampage. (Declaration of Philip A. Byler, Esq. Ex. A: Complaint, ¶¶ 10-11.)

**B.    Mervyns's Argument.**

Mervyns attacks this cause of action as barred by the Statute of Frauds, New York's Uniform Commercial Code § 2-201(1), applicable to the sale of goods because there was not a written

-10-

agreement between Mervyns and Great White Bear. (Mervyns Memo of Law, p. 5.) Mervyns does

acknowledge the "merchants' exception" in New York's Uniform Commercial Code § 2-201(2):

> "Between merchants if within a reasonable time a writing in confirmation of the
> contract and sufficient against the sender is received and the party receiving it has
> reason to know its contents, it satisfies the requirements of subsection (1) against
> such party unless written notice of objection to its contents is given within ten days
> after it is received."

(Mervyns Memo of Law, pp. 5-6.) Mervyns further acknowledges that the "merchants' exception"

may be relevant to Great White Bear and Mervyns as merchants. (Mervyns Memo of Law, p. 6.)

But Mervyns denies its application to this case on the ground that the Complaint does not

specifically plead the confirming writing. (Mervyns Memo of Law, p. 6.)

**C.     The "Merchants' Exception" Of New York's Uniform
         Commercial Code § 2-201(2) Applies In This Case.**

The short answer to Mervyns is that in this case there is a "writing in confirmation" within

the meaning of New York's Uniform Commercial Code § 2-201(2) that takes the case out of the

Statute of Frauds provision of New York's Uniform Commercial Code § 2-201(1). The Declaration

of Great White Bear's Danny Fodiman states in pertinent part:

> "I sent an e-mail to Scott Jeffries at Mervyns, and Scott Jeffries immediately
> responded. The e-mail exchange is the Bates stamped document P01091 and
> attached to this Declaration as Exhibit A. My e-mail stated:
>
> > 'Hi Scott[,] Sandy asked me to forward this message to you. He was
> > concerned after the conversation he had with you the other day.
> > Based upon your original phone message which told Sandy that the
> > collections would be $9,000,000 at cost and active would be
> > $4,200,000 at cost (13,200,000) over an 18 month period he wanted
> > to know if we would be able to hit the numbers you had given him.
> > That would translate based on your message to $120,700,000 in retail
> > sales at a 38% maintained guaranteed margin with the initial IMU
> > [initial mark up] at 67%. The reason for this concern is the
> > guarantees which we have already given Rampage. I realize that you
> > had said the number could be aggressive and maybe 10% high but our
> > guarantees are substantial. Please bear this in mind.'

(P 01091.) Scott Jeffries responded about one-half hour later:

> > "I'll make it up in the last 12 months. Nothing else I can do in this
> > season unless my sales plan is raised to accommodate.'

(P 01091.)"

-11-

This "writing in confirmation" was produced by Great White Bear to Mervyns along with Great White Bear's Rule 26(a)(1) Initial Disclosure Statement (Declaration of Philip A. Byler, Esq. ¶¶ 4-5 & Ex. B) and is consistent with the pleaded allegations that when contract issues later arose, Mervyns acknowledged that there was a contractual obligation to Great White Bear (Declaration of Philip A. Byler, Esq. Ex. A: Complaint ¶ 14).    Mervyns's present argument denying, in passing, that there is a "writing in confirmation" is based solely on its quickly asserted say-so.  (Mervyns's Memo of Law, p. 7.)  That unsupported assertion is, ironically, what is unsupportable.

**D.    The Cases Cited By Mervyns Do Not Support
Its Position Of Dismissal With Prejudice.**

The cases cited by Mervyns do not support its position of dismissal with prejudice of Great White Bear's Amended Complaint.  The cited cases fall into three categories: (1) one unreported case ruling that an express pleading satisfying the "merchants' exception" is required but also granting leave to amend; (2) a string of cases involving oral employment or loan agreements that are wholly inapposite; and (3) two cases involving oral distributorship and franchise agreements that are also inapposite.

**1.    One Unreported Case On Pleading "Merchants' Exception."**

Mervyns cites but one unreported case on the pleading of the "merchants' exception."  In Cherry Creek Woodcraft v. Plum Creek Mfg., Inc., No. 94-CV-0601E(H), 1995 WL 428609 (W.D.N.Y. July 18, 1995), the court dismissed *without prejudice* a Complaint because the plaintiff did not plead whether the contract was written or if not written, whether the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2) applied.  The court, however, granted leave to plaintiff to file a timely motion to amend.  All that Cherry Creek Woodcraft v. Plum Creek Mfg., Inc. means in this case is that if the Court agrees that the "merchants' exception" should be expressly pled, then the Court should grant Great White Bears' cross-motion to amend (p. 17 below).

**2.    Cases Involving Oral Employment And Loan Agreements.**

Mervyns cites a string of cases involving oral employment and loan agreements that are

-12-

simply off point:

(i) In Stillman v. Townsend, No. 05 Civ. 6612, 2006 WL 2067035 (S.D.N.Y. July 26, 2006), the Court dismissed most of the claims in a Complaint involving an oral employment agreement ruled to be unenforceable under the general Statute of Frauds provision in New York's General Obligation Law § 5-701(a)(1). The claim for breach of the oral employment agreement did not by definition involve the sale of goods under Article 2 of New York's Uniform Commercial Code and thus did not involve the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

(ii) In Zaitsez v. Salomon Bros., Inc., 60 F.3d 1001, 1003-04 (2d Cir. 1995), the Court dismissed a Complaint brought over an oral employment agreement unenforceable under New York's General Obligation Law § 5-701(a)(1). Again, that case did not by definition involve the sale of goods under Article 2 of New York's Uniform Commercial Code and thus did not involve the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

(iii) In Zeising v. Kelly, 152 F.Supp.2d 335 (S.D.N.Y. 2001), involved application of New York's General Obligation Law § 5-701(a)(1) to alleged contracts between investor and officers of a start up corporation. Once more, that case did not by definition involve the sale of goods under Article 2 of New York's Uniform Commercial Code and thus did not involve the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

(iv) In Rosbach v. Industry Trading Co., Inc., 81 F.Supp.2d 522 (S.D.N.Y. 2000), the Court refused to apply New York's General Obligation Law § 5-701(a)(1) to a loan agreement because it could be performed within a year, but dismissed a claim for breach of contract for a finder's fee under New York's General Obligation Law § 5-701(a)(1). The latter claim did not by definition involve the sale of goods under Article 2 of New York's Uniform Commercial Code and thus did not involve the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

(v) Doehla v. Whatne Ltd., Inc., No. 98 Civ. 6087, 1999 WL 566311 (S.D.N.Y. Aug.

-13-

3, 1999), was another oral employment contract case in which the oral employment agreement was ruled unenforceable under New York's General Obligation Law § 5-701(a)(1). Again, that case did not by definition involve the sale of goods under Article 2 of New York's Uniform Commercial Code and thus did not involve the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

> (vi) In <u>Keough v. Texaco, Inc.</u>, No. 97 Civ. 5981, 1999 WL 61836 (S.D.N.Y. Feb. 10, 1999), the Court upheld the pleading of claims for libel and promissory estoppel and dismissed pleaded claims for intentional infliction of emotional distress, retaliatory discharge against public policy, negligent supervision and tortious interference with employment relationship. The case did not by definition involve the sale of goods under Article 2 of New York's Uniform Commercial Code and thus did not involve the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

### 3.    <u>Two Cases Involving Oral Distributorship and Franchise Agreements.</u>

Mervyns finally cites two cases involving distributorship and franchise agreements that are also off point:

> (i) <u>Huntington Dental & Medical Co., Inc. v. Minnesota Mining and Manufacturing Company</u>, 95 Civ. 10059, 1998 WL 60954 (S.D.N.Y. Feb. 13, 1998), the Complaint asserted claims for breach of an oral agreement, tortious interference with prospective economic advantage, negligent misrepresentation unfair competition, unjust enrichment and quantum meruit arising out of an oral distributorship agreement. The Court granted the motion to dismiss for failure to state a claim for breach of the alleged oral distributorship agreement because the existence and terms of the contract were inadequately pleaded. The Court added that the oral nature of the agreement would also run afoul of New York's General Obligation Law § 5-701(a)(1) and New York's Uniform Commercial Code § 2-201(1) and so stated without any reference to the "merchants' exception" under New York's Uniform Commercial Code § 2-201(2).

> (ii) <u>Wallace Marine Corporation v. Donzi Marine Corporation</u>, 675 F.Supp. 838

-14-

(S.D.N.Y. 1987), was an action brought by a former franchisee against a former franchisor, officers and sales representative alleging breach of contract, fraud, violations of New York's General Business Law, breach of fiduciary duty and prima facie tort. The Court followed case law holding New York's Uniform Commercial Code § 2-201(1) applicable to distributorship and franchise agreements and ruled the oral franchise agreement in that case to be unenforceable with no reference to New York's Uniform Commercial Code § 2-201(2).

*    *    *    *    *    *

In sum, Great White Bear has a meritorious claim in the first cause of action in the Amended Complaint is for breach of contract. The Statute of Frauds in New York's Uniform Commercial Code § 2-201(1) is not applicable because the "merchants' exception" of § 2-201(2) of New York's Uniform Commercial Code does apply in this case.

II.

**GREAT WHITE BEAR HAS AND HAS STATED A MERITORIOUS CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING IN THE AMENDED COMPLAINT: GREAT WHITE BEAR HAS ALLEGED AN ENFORCEABLE CONTRACT**

Great White Bear's second cause of action in the Amended Complaint is for breach of the covenant of good faith and fair dealing. Mervyns's sole argument against this claim is that to assert a claim for breach of the covenant of good faith and fair dealing requires a valid contract, citing United Magazine Co. v. Murdock Magazines Distribution, 146 F.Supp.2d 385 (S.D.N.Y. 2001), and Stillman v. Townsend, 2006 WL 2067035, for the unexceptional proposition that the covenant of good faith and fair dealing is dependent upon there being an enforceable contract. (Mervyns's Memo of Law, p. 7.)

The short answer to Mervyns is that as established in Point I above (pp. 9-14), there is an enforceable agreement in this case; and thus, Great White Bear may properly proceed with a claim for breach of good faith and fair dealing, as Great Bear White has stated in the second cause of action in the Amended Complaint.

-15-

## III.

### GREAT WHITE BEAR HAS AND HAS STATED A MERITORIOUS CLAIM FOR QUASI-CONTRACT (UNJUST DETRIMENT)

Great White Bear's third cause of action in the Amended Complaint is for "quasi-contract." Mervyns's argument is that Great White Bear cannot proceed on a quasi-contract theory in order to avoid the Statute of Frauds and that Great White Bear does not plead the necessary elements of a quasi-contract claim in receipt of uncompensated for benefit for which equity and good conscience requires redress, citing cases involving unjust enrichment or quantum meruit claims. (Mervyns's Memo of Law, p. 8.)

The short answer to Mervyns is that Great White Bear is not avoiding the Statute of Frauds because, as shown above (pp. 10-14), the proper application here of the "merchants' exception" in § 2-201(2) of New York's Uniform Commercial Code takes this case out of the Statute of Frauds and that Mervyns is misconceiving Great White Bear's pleading of "quasi-contract," which in this case is a claim of "unjust detriment." The latter point requires the following legal discussion.

One kind of quasi-contract claim is for "unjust enrichment," as in Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987), and often courts categorize unjust enrichment as quasi-contract, see, e.g., Hampton Living, Inc. v. Carltun on the Park, 286 A.D.2d 664, 665, 729 N.Y.S.2d 773, 775 (2d Dep't 2001), and Amana Elevation Corp. v. Ydrohoos-Aquarius, Inc., 244 A.D.2d 371, 372, 664 N.Y.S.2d 88, 89 (2d Dep't 1997). The three cases cited in this connection by Mervyns -- Huntington Dental & Medical Co., Inc. v. Minnesota Mining and Manufacturing Company, 95 Civ. 10959, 1998 WL 60954, Shady Records, Inc. v. Source Enters., Inc., 351 F.Supp.2d 74 (S.D.N.Y. 2004) and Dolmetta v. United Nat'l Corp., 712 F.2d 15 (2d Cir. 1983) -- are all unjust enrichment cases.

Here, however, what is being called "quasi-contract" is another kind of quasi-contract claim that may be referred to as "unjust detriment": a claim for quasi-contract is asserted so as to permit the recovery of a party's expenditures, even if the defendant did not receive any real benefit therefrom, if the expenditures were made in reliance on the defendant's request, as in Farash v.

-16-

Sykes Datatronics, 59 NY2d 500, 452 N.E.2d 1245, 465 N.Y.S.2d 917 (1983), and Long Island Pen

Corp. v. Shatsky Metal Stamping Corp., Inc., 112 A.D.2d 980, 492 N.Y.S.2d 791 (2nd Dep't 1985).

This kind of quasi-contract claim arises in contractual contexts. See Calamari & Perillo,

Contracts (3d ed.) §1-12, p. 20 (1977). Farash v. Sykes Datatronics and Long Island Pen Corp.v.

Shatsky Metal Stamping Corp., Inc. were, for example, both cases where there were contracts, albeit

an unenforceable oral contract in Farash v. Sykes Datatronics and an unwritten agreement in Long

Island Pen Corp.v. Shatsky Metal Stamping Corp., Inc. that also appeared to be unenforceable; and

those contracts contemplated the defendant going forward with a lease or company purchase

resulting in the payment of monies to the plaintiff that the plaintiff expected in making the

expenditures. Quasi-contract liability is imposed in this circumstance to remedy unfairness arising

from failed contractual arrangements. Calamari & Perillo, Contracts (3d ed.) §1-12, p. 20 (1977).

This can be seen by reference to Farash v. Sykes Datatronics and Long Island Pen Corp.v. Shatsky

Metal Stamping Corp., Inc..

In Farash v. Sykes Datatronics, Inc., 59 N.Y.2d 500, 452 N.E.2d 1245, 465 N.Y.S.2d 917,

a plaintiff and a defendant allegedly entered into an agreement whereby the plaintiff would renovate

a building and the defendant agreed to lease the renovated premises for two years once the

renovations were made. No written agreement was ever signed. The Farash v. Sykes Datatronics

plaintiff did the renovations, but the Farash v. Sykes Datatronics defendant did not then lease the

renovated premises from the Farash v. Sykes Datatronics plaintiff. In that factual context, the New

York Court of Appeals affirmed the dismissal of the Farash v. Sykes Datatronics plaintiff's contract

claims because the statute of frauds barred them, but upheld the pleading of a claim for quasi-

contract because that plaintiff had suffered a detriment in reliance upon the defendant.

In Long Island Pen Corp. v. Shatsky Metal Stamping Co., Inc., 112 A.D.2d 980, 492

N.Y.S.2d 791, there was an alleged unwritten agreement that the Long Island Pen Corp. defendant

would sell his corporations to the Long Island Pen Corp. plaintiff, and the Long Island Pen Corp.

plaintiff then incurred expenses in connection with the agreement. In that factual context, the

-17-

Appellate Division-Second Department upheld the pleading of quasi-contract because the <u>Long Island Pen Corp.</u> plaintiff had suffered a detriment at the request of the <u>Long Island Pen Corp.</u> defendant in connection with the alleged contract that the <u>Long Island Pen Corp.</u> defendant would sell his corporations to the <u>Long Island Pen Corp.</u> plaintiff.

It is based on this "unjust detriment" branch of quasi-contract law that Great White Bear premises its third cause of action.

## IV.

## <u>THE CROSS-MOTION TO AMEND SHOULD BE GRANTED</u>

To eliminate any technical issue that the "merchants' exception" under § 2-201(2) of New York's Uniform Commercial Code should be expressly pled, as one unreported decision of a court in the Western District of New York ruled (without prejudice to re-pleading), then the Court should grant Great White Bear's cross-motion to permit what is a modest amendment in order to add that express pleading in the proposed Second Amended Complaint. (Declaration of Philip A. Byler, Esq. Ex. D, ¶ 12.) Also, the Second Amended Complaint appropriately adds a fourth cause of action for "promissory estoppel" under Second Circuit precedent. (Declaration of Philip A. Byler, Esq. Ex. D, Fourth Cause of Action.)

Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave shall be freely given when justice so requires." According to the U.S. Supreme Court, "this mandate is to be heeded"; "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Unless there is unfair prejudice, undue delay, bad faith or futility, leave is granted to amend. <u>See, e.g.,</u> <u>Foman v. Davis</u>, 371 U.S. 178; <u>Krumme v. Westpoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998); <u>Block v. First Blood Associates</u>, 988 F.2d 344 (2d Cir. 1993); <u>Resorts and Motel Advancement Development Agency, Ltd. v. Sloan</u>, 160 F.R.D. 449 (S.D.N.Y. 1995). The exceptions of unfair prejudice, undue delay, bad faith and futility do not remotely apply in this case; and thus, leave to amend should be granted.

-18-

A.    **No Unfair Prejudice.**

There would be no unfair prejudice in this case resulting from granting leave to file the amendment. The "time, effort and money" that litigants expend in litigating the matter do not give rise to the kind of "substantial prejudice" warranting the denial of leave to amend. <u>Block v. First Blood Associates</u>, 988 F.2d 351. There needs to be present a set of circumstances in which allowing the amendment would be unjust -- for example, when significant delay would result in the resolution of the case. <u>Block v. First Blood Associates</u>, 988 F.2d 351. The kind of unfair prejudice that would warrant denial of an amendment to the pleadings is simply not present when, as the Statement of Procedural History shows (p. 2 above) here, the case is in the very early stages -- the pleadings have been done and Rule 26(a)(1) Initial Disclosure Statements have been exchanged; that's all.

B.    **No Undue Delay Or Bad Faith.**

Delay alone is not sufficient to deny a motion for leave to amend; delay must be accompanied by some other factor such as unfair prejudice or bad faith. <u>Resorts and Motel Advancement Development Agency, Ltd. v. Sloan</u>, 160 F.R.D. 451; <u>McCoy v. Goldberg</u>, 845 F. Supp. 155, 157 (S.D.N.Y. 1994). As the Statement of Procedural History shows (p. 2 above), there has been no delay, much less undue delay. As shown above (pp. 10-11), the evidence will clearly support what is a proposed modest amendment as to the breach of contract claim that cannot remotely be considered bad faith; nor can adding a cause of action based on a permissible alternative theory of law be viewed as bad faith. In any event, as shown above (p. 18), unfair prejudice does not exist in this case.

C.    **No Futility.**

While a motion for leave to amend a complaint may be denied if the amendment would be futile, <u>Aetna Cas. and Sur. Co. v Aniero Concrete Co.</u>, 404 F.3d 566, 603-604 (2d Cir. 2005), an amendment is considered futile only if it would not survive a motion to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure 12(b)(6), <u>see</u>, <u>e.g.</u>, <u>Jones v New York State Div. of Military & Naval Affairs</u>, 166 F.3d 45, 55 (2d Cir.1999); <u>Mataraza v Newburgh Enlarged City School Dist.</u>,

-19-

294 F.Supp 483 (S.D.N.Y. 2003).

There would be no futility in this case to amending the Complaint in order to make express the "merchants' exception" under § 2-201(2) of New York's Uniform Commercial Code. Far to the contrary, such amendment would render futile Mervyns's arguments attacking the pleading of the first and second causes of action for breach of contract and breach of the covenant of good faith and fair dealing.

Nor would there be futility is adding a claim for promissory estoppel. In order to state a claim for promissory estoppel, the Second Circuit has stated that there must be a clear and unambiguous promise, reasonable and forseeable reliance on the promise and injury resulting therefrom. In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir. 1996); Merex A.G. v. Fairchild Weston Systems, Inc., 81 F.3d 821, 824 (2d Cir, 1994); see Restatement of Contracts, Second, § 139(1). As the Second Circuit explained in Merex A.G. v. Fairchild Weston Systems, Inc., 81 F.3d at 824, this doctrine is invoked in order to provide relief where the Statute of Frauds does operate. See Keough v. Texaco, Inc., No. 97 Civ. 5981, 1999 WL 61836 at 9 (motion to dismiss denied against claim of promissory estoppel despite Statute of Frauds barring alleged oral employment agreement). Here, there was a clear and unambiguous promise by Mervyns's Scott Jeffries for orders to Great White Bear for $13 million at cost allowing for a 10% deviation down (or $11.7 million) over an eighteen-month period per the "R for Rampage" Collections license; Great White Bear accepted that promise and reasonably relied upon it extending a guarantee to Rampage of $5 million business for 18 months at an 8% royalty, entailing a $400,000 payment by Great White Bear to Rampage; and Great White Bear was injured by Mervyns's failure to abide by its commitment after Great White Bear acted on that commitment. (Declaration of Philip A. Byler, Esq. Ex. A: Amended Complaint, ¶¶ 10-11, 16-17.)

## CONCLUSION

For the reasons stated above, Defendant Mervyns's motion for judgment on the pleadings should be denied, Great White Bear's cross-motion to amend should be granted and such further and

-20-

other relief as the Court deems proper should be ordered.

**Dated:  New York, New York**
         **March 1, 2007**

                    **NESENOFF & MILTENBERG, LLP**

                    **By:** _____
                         Philip A. Byler, Esq.

                    **Attorneys for Plaintiff Great White Bear, LLC**
                    **363 Seventh Avenue - Fifth Floor**
                    **New York, New York 10001**
                    **212.736.4500**