UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Great White Bear, LLC,

    Plaintiff,

-against-

Mervyns, LLC,

    Defendant.

---

06 Civ. 13358 (RMB)(FM)

 

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO AMEND**

 

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
212-506-5000

Attorneys for Defendant
Mervyn's LLC

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.    GWB'S OPPOSITION CANNOT REMEDY THE FATAL
      PLEADING DEFICIENCIES IN ITS COMPLAINT ................................................. 2

      A.    GWB's Breach of Contract Claim
            Does Not Satisfy the Statute of Frauds .............................................................. 2

      B.    GWB's Claim For Quasi-Contract
            Similarly Fails And Must Be Dismissed ............................................................ 3

II.   GWB'S CROSS-MOTION TO AMEND ITS COMPLAINT
      SHOULD BE DENIED, AS THE PROPOSED AMENDED COMPLAINT
      ALSO FAILS TO STATE A VALID AND ENFORCEABLE CLAIM ....................... 7

      A.    GWB's New Factual Allegations In Support Of Its Amended Breach
            Of Contract Claim Are Still Insufficient To Satisfy The Statute Of Frauds .......... 8

      B.    GWB's New Equitable Claim For Promissory Estoppel
            Also Fails To State A Claim And Must Be Dismissed ..................................... 12

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Abrams v. Unity Mut. Life Ins.*,
  237 F.3d 862 (7th Cir. 2001) ..................................................................................3

*Absher Constr. Corp. v. Colin*,
  233 A.D.2d 279, 649 N.Y.S.2d 174 (2d Dep't 1996)..................................................6

*Angelo, Gordon & Co., L.P. v. Dycom Indus, Inc.*,
  No. 04 Civ. 1570 (RMB), 2006 WL 870453 (S.D.N.Y. Mar. 31, 2006).....................12

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
  No. 03 Civ. 1537 (MBM), 2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003) ...................7

*Bank of New York v. Sasson*,
  786 F. Supp. 349 (S.D.N.Y. 1992) ...........................................................................7

*Bazak Int'l Corp. v. Mast Indus.*,
  73 N.Y.2d 113, 535 N.E.2d 633, 538 N.Y.S.2d 503 (1989).......................................11

*Birnbaum v. Airbourne Freight Corp.*,
  183 Misc. 2d 100, 702, N.Y.S.2d 500 (N.Y. Sup. Ct., Monroe County, 1999).............7

*Cherry Creek Woodcraft, Inc. v. Plum Creek Mfg., Inc.*,
  No. 94-CV-0601E(H), 1995 WL 428609 (W.D.N.Y. July 18, 1995) ...........................3

*Cortec Indus. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991).......................................................................................8

*Farash v. Sykes Datatronics*,
  59 N.Y.2d 500, 452 N.E.2d 1245, 465 N.Y.S.2d 917 (1983)...............................4, 5, 6

*Huntington Dental & Med. Co. v. Minn. Mining and Mfg. Co.*,
  No. 95 Civ. 10959 (JFK), 1998 WL 60954 (S.D.N.Y. Feb. 13, 1998)..........................3

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*,
  936 F.2d 759 (2d Cir. 1991).....................................................................................8

*In re Ionosphere Clubs, Inc.*,
  85 F.3d 992 (2d Cir. 1996).......................................................................................14

## TABLE OF AUTHORITIES

   Page

*Keough v. Texaco, Inc.*,
   No. 97 Civ. 5981 (LMM), 1999 WL 61836 (S.D.N.Y. Feb. 10, 1999) ...... 14

*KSW Mech. Contractors, Inc. v. Eco-Care Corp.*,
   259 A.D.2d 671, 686 N.Y.S.2d 868 (2d Dep't 1999) ...... 12

*Landcom, Inc. v. Galen-Lyons Joint Landfill Comm'n, et al.*,
   259 A.D.2d 967, 687 N.Y.S.2d 841 (4th Dep't 1999) ...... 4, 6

*Long Island Pen Corp. v. Shatsky Metal Stamping Corp., Inc.*,
   112 A.D.2d 980, 492 N.Y.S.2d 791 (2d Dep't 1985) ...... 5

*Martin H. Bauman Assocs., Inc. v. H&M Int'l Transport, Inc.*,
   171 A.D.2d 479, 567 N.Y.S.2d 404 (1st Dep't 1991) ...... 4, 5

*Marvin Inc. v. Alberstein*,
   386 F. Supp. 2d 247 (S.D.N.Y. 2005) ...... 7

*Merex A.G. v. Fairchild Weston Sys. Inc.*,
   29 F.3d 821 (2d Cir. 1994) ...... 14

*Mobile Data Shred, Inc. v. United Bank of Switzerland*,
   No. 99 Civ. 10315 SAS, 2000 WL 351516 (S.D.N.Y. Apr. 5, 2000) ...... 13, 14

*Muller-Paisner v. TIAA, TIAA-CREF Enters., Inc.*,
   446 F. Supp. 2d 221 (S.D.N.Y. 2006) ...... 8

*Philo Smith & Co., Inc. v. USLIFE Corp.*,
   554 F.2d 34 (2d Cir. 1977) ...... 14

*Precise-Marketing Corp. v. Simpson Paper Co.*,
   No. 95 Civ. 5629 (RJW), 1999 WL 259518 (S.D.N.Y. Apr. 30, 1999) ...... 11, 12

*Rogers v. HSN Direct Joint Venture*,
   No. 97 Civ. 7710 (LLS), 1999 WL 595533 (S.D.N.Y. Aug. 6, 1999) ...... 6

*S & S Textiles Int'l v. Steve Weave, Inc.*,
   No. 00 Civ. 8391, 2002 WL 1837999 (S.D.N.Y. Aug. 12, 2002) ...... 11, 12

*Stillman v. Townsend*,
   No. 05 Civ. 6612 (WHP), 2006 WL 2067035 (S.D.N.Y. July 26, 2006) ...... 3

## TABLE OF AUTHORITIES

**Page**

*Sugerman v. MCY Music World, Inc.*,
  158 F. Supp. 2d 316 (S.D.N.Y. 2001)..................................................................13, 14

*United Magazine Co. v. Murdoch Magazines Distrib., Inc.*,
  146 F. Supp. 2d 385 (S.D.N.Y. 2001)....................................................................3, 13

*Wallach Marine Corp. v. Donzi Marine Corp.*,
  675 F. Supp. 838 (S.D.N.Y. 1987) ..............................................................................3

*Zeising v. Kelly*,
  152 F. Supp. 2d 335 (S.D.N.Y. 2001)..................................................................2, 4, 8

### STATE STATUTES

N.Y.U.C.C. § 2-201 (McKinney 2006) ...............................................................7, 10, 11, 12

### FEDERAL STATUTES

Federal Rule of Civil Procedure 12(c) .........................................................................1, 15

Federal Rule of Civil Procedure 15(a) ..............................................................................1

Defendant Mervyn's LLC ("Mervyn's") respectfully submits this reply memorandum of law in further support of its motion, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings, dismissing in its entirety the Amended Complaint of Plaintiff Great White Bear, LLC ("GWB"), served on December 7, 2006 ("Complaint" or "Compl."), for failure to state a claim upon which relief can be granted and in opposition to GWB's cross-motion to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.[1]

### PRELIMINARY STATEMENT

GWB's opposition does nothing to remedy the fatal pleading defects in its Complaint. GWB does not, and cannot, point to any allegation in its Complaint of a writing sufficient to satisfy the Statute of Frauds. Nor does GWB's attempt to recast its quasi-contract claim as one for "unjust detriment" succeed in distinguishing that claim in any way from GWB's failed contract claim or in remedying its failure to plead the required elements for such a claim. For these reasons, Mervyn's motion for judgment on the pleadings should be granted, and GWB's Complaint should be dismissed in its entirety, with prejudice.

Recognizing the insufficiency of its Complaint, GWB has accompanied its opposition to Mervyn's motion with a cross-motion seeking to amend its Complaint. GWB's Proposed Amended Complaint purports to allege a "writing in confirmation" sufficient to satisfy the Statute of Frauds and attempts to add a new claim for promissory estoppel. Those proposed amendments, however, are insufficient to salvage GWB's claims. Its alleged "writing in confirmation" indeed confirms nothing but that the parties discussed some rough sales projections. The parties' aspirational exchange in this regard references no specific goods, no

---

[1] For ease of reference, Mervyn's will refer to the Amended Complaint currently on file with the Court (and to which its motion to dismiss is directed) as the "Complaint" or "Compl." and will refer to the proposed Second Amended Complaint, submitted with GWB's motion to amend, as the "Proposed Amended Complaint."

quantities of those goods and no price, and in fact makes clear that no binding contract existed. GWB's promissory estoppel claim, yet another attempt to state an equitable claim to avoid the application of the Statute of Frauds, fails to allege the elements necessary to state such a claim, specifically, a clear and unambiguous promise and the unconscionable injury required under New York law. Since GWB's Proposed Amended Complaint cannot satisfy the Statute of Frauds and fails to state any claim upon which relief can be granted, its motion to amend should be denied as futile.

## ARGUMENT

### I.

### GWB'S OPPOSITION CANNOT REMEDY THE FATAL PLEADING DEFICIENCIES IN ITS COMPLAINT

**A.    GWB's Breach of Contract Claim Does Not Satisfy the Statute of Frauds**

GWB cannot escape the fatal defect in its breach of contract claim – the failure to allege the existence of any writing setting forth the terms of the supposed $11.7 million purchase agreement with Mervyn's. *See* Compl. ¶ 11. Indeed, GWB makes no attempt to explain the absence of any reference to a writing in its Complaint. Nor does it cite a single legal authority to suggest that its pleading is sufficient. Rather, GWB calls this omission a "technical defect" and proceeds to describe an e-mail neither mentioned nor incorporated by reference into the Complaint in an attempt to cure the "defect." *See* GWB Mem. in Opp'n at 2; *see* Compl. ¶ 11. That e-mail, however, is not properly before the Court on Mervyn's motion to dismiss the Complaint. *See Zeising v. Kelly*, 152 F. Supp. 2d 335, 344 (S.D.N.Y. 2001) ("Plaintiff cannot 'cure' his pleading deficiencies in the complaint by addressing them in his motion papers.").[2]

---

[2]  Mervyn's will address that e-mail and its inability to provide a sufficient "writing in confirmation" pursuant to the Statute of Frauds when it addresses the futility of GWB's motion to amend, *supra.*

2

The simple fact is that GWB, as Plaintiff, bears the burden of pleading and proving a written agreement in order to adequately state a breach of contract claim and satisfy the Statute of Frauds, and it has not done so. Consequently, its breach of contract claim must be dismissed. *See Cherry Creek Woodcraft, Inc. v. Plum Creek Mfg., Inc.*, No. 94-CV-0601E(H), 1995 WL 428609, at * 2 (W.D.N.Y. July 18, 1995); *Stillman v. Townsend*, No. 05 Civ. 6612 (WHP), 2006 WL 2067035, at *2 (S.D.N.Y. July 26, 2006); *Huntington Dental & Med. Co. v. Minn. Mining and Mfg. Co.*, No. 95 Civ. 10959 (JFK), 1998 WL 60954, at * 4 (S.D.N.Y. Feb. 13, 1998); *Wallach Marine Corp. v. Donzi Marine Corp.*, 675 F. Supp. 838, 840-41 (S.D.N.Y. 1987).[3]

### B. GWB's Claim For Quasi-Contract Similarly Fails And Must Be Dismissed

Due to GWB's cookie cutter pleading style that cut and pasted nearly the same allegations and damage claims for all three of its causes of actions in its original Complaint, the basis for GWB's quasi-contract claim is less than clear. *Compare* Compl. ¶¶ 18-20 *with* ¶¶ 21-23 *with* ¶¶ 24-26. What is clear is that GWB has not sufficiently alleged a claim for unjust enrichment or quantum meruit, a fact GWB implicitly recognizes by now saying that it was not making a claim under those theories at all, but instead seeks recovery for what it terms as "unjust detriment." Regardless of this questionable distinction, it is well-settled that "the law prevents a plaintiff from circumventing the reach of the statute of frauds by asserting a quasi-contract claim." *Huntington Dental*, 1998 WL 60954, at * 7. This is especially true here where the plaintiff makes no distinction whatsoever between its contract claim and its quasi-contract claim or the damages sought by each. *See Abrams v. Unity Mut. Life Ins.*, 237 F.3d 862, 864 (7th Cir.

---

[3] As set forth in Mervyn's moving papers, GWB's claim for breach of the covenant of good faith and fair dealing must also be dismissed since there is no enforceable contract. *See United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, 146 F. Supp. 2d 385, 405 (S.D.N.Y. 2001). GWB does not dispute that these claims rise and fall together. *See* GWB Mem. in Opp'n at 14.

3

2001) (applying New York law) (claim under *Farash* "may be barred if it is based on the same promise and seeks the same relief as an otherwise barred contract claim"); *Zeising*, 152 F. Supp. 2d at 345 (quasi-contract claims dismissed with prejudice – "Plaintiff cannot simply restate his contract claim which is barred by the Statute of Frauds, in an attempt to obtain damages in a quasi-contractual claim."). A quasi-contract theory "'only applies in the absence of an express agreement,'" and is intended to create an agreement at law where there is none. *Martin H. Bauman Assocs., Inc. v. H&M Int'l Transport, Inc.*, 171 A.D.2d 479, 484, 567 N.Y.S.2d 404, 408 (1st Dep't 1991) (citation omitted). Here, GWB alleges an express agreement, it just cannot satisfy the Statute of Frauds with respect to that agreement. The equitable claim of quasi-contract is not intended to apply in such situations.

In addition, GWB's quasi-contract claim, even now that GWB is calling it a claim for "unjust detriment," still fails to state a cause of action. Regardless of GWB's theory of recovery, to state a claim for quasi-contract, a plaintiff must allege (1) the performance of services in good faith; (2) the acceptance of the services; (3) an expectation of compensation therefore; and (4) the reasonable value of the services. *See Landcom, Inc. v. Galen-Lyons Joint Landfill Comm'n, et al.*, 259 A.D.2d 967, 968, 687 N.Y.S.2d 841, 842 (4th Dep't 1999); *Bauman Assocs.*, 171 A.D.2d at 484, 567 N.Y.S.2d at 408.

GWB has alleged none of those elements as part of this claim. It has not identified any services rendered to Mervyn's, accepted by Mervyn's, or which benefited Mervyn's in any way, for which it did not receive compensation. Nor has it identified the reasonable value of any such services. GWB relies on *Farash v. Sykes Datatronics*, 59 N.Y.2d 500, 504, 452 N.E.2d 1245, 1247, 465 N.Y.S.2d 917, 919 (1983) for its "unjust detriment theory," but that case, which nowhere references a claim for "unjust detriment," is easily

4

distinguishable and provides no support for GWB's deficient pleading. In *Farash*, the court stated that the plaintiff could state a claim for expenditures made in reliance on the defendant. Specifically, "a promisee who partially performs (e.g., by doing work in a building or at an accelerated pace) at a promisor's request should be allowed to recover the fair and reasonable value of the performance rendered, regardless of the enforceability of the original agreement." *Farash*, 59 N.Y.2d at 506, 452 N.E.2d at 1248, 465 N.Y.S.2d at 920. In that case, the CEO of Sykes Datatronics agreed to enter into a lease and specifically requested that the necessary work be done without waiting for the actual signing of the lease. *Farash*, 59 N.Y.2d at 507, 452 N.E.2d at 1249, 465 N.Y.S.2d at 921.

Here, GWB's Third Cause of Action makes no reference to any expenditures done at Mervyn's specific request for which GWB should be entitled to recovery. Instead, GWB notes that in fact $2.3 million of merchandise was exchanged between Mervyn's and GWB. *See* Compl. ¶ 15. GWB makes no claim that it was not paid for that merchandise. GWB's damage claim on this Cause of Action is $6,622,000, the full contract damages sought for its breach of contract claim. *See* Compl. Prayer For Relief (i), (iii). GWB's brief in opposition also provides no insight as to what expenditures are sought by this claim. *See Bauman Assocs.*, 171 A.D.2d at 484, 567 N.Y.S.2d at 408 (quasi-contract claim held indistinguishable from contract claim and dismissed where plaintiff alleged only full contract damages and plaintiff's complaint was "entirely devoid of any indication" of plaintiff's expenditures.[4]

Further, the Court of Appeals in *Farash* was careful to note that in order to recover on such a claim, the defendant must have received the plaintiff's performance. While

---

[4] GWB's reliance on *Long Island Pen Corp. v. Shatsky Metal Stamping Corp., Inc.*, 112 A.D.2d 980, 492 N.Y.S.2d 791 (2d Dep't 1985) is similarly misplaced. In that case the court held that the plaintiff alleged sufficient detriment in complying with numerous detailed and specific requests made by the defendant and alleged in full in the complaint. GWB does not and cannot allege any such numerous and detailed requests by Mervyn's here.

not requiring physical "receipt," the court held that the act at issue had to be part of an agreed exchange between the parties. As such, *Farash* indicated that acts merely preparatory to performance will not justify an action for quasi-contract. *Farash*, 59 N.Y.2d at 506, 452 N.E.2d at 1248, 465 N.Y.S.2d at 920. The only expenditure referenced in GWB's Complaint that arguably could fall within the parameters of *Farash* (although not referenced by GWB with regard to this specific claim) is GWB's allegation of a $400,000 guaranteed payment to Rampage. *See* Compl. ¶ 17.[5] The agreement between Rampage and GWB, however, was merely preparatory and a prerequisite to any dealings between Mervyn's and GWB with respect to Rampage merchandise. Without a deal with Rampage, there was nothing for GWB and Mervyn's to discuss. Further, GWB has not and cannot allege that Mervyn's was aware of the specific terms of GWB's agreement with Rampage or that Mervyn's agreed to reimburse any payments made pursuant to any such agreement between GWB and Rampage. Since GWB's arrangement with Rampage was in preparation of Mervyn's dealing with GWB, it cannot support a claim for quasi-contract of any sort. *See Rogers v. HSN Direct Joint Venture*, No. 97 Civ. 7710 (LLS), 1999 WL 595533, at *2 (S.D.N.Y. Aug. 6, 1999 ) (expenditures in preparation for anticipated sales held insufficient; "[m]oney expended in preparation for eventually performing under an agreement is not compensable in quasi-contract"); *Landcom*, 259 A.D.2d at 968, 687 N.Y.S.2d at 842-43 (4th Dep't 1999) (work not done with expectation of compensation; as such, it was merely preparatory and insufficient for claim of quasi-contract); *Absher Constr. Corp. v. Colin*, 233 A.D.2d 279, 280, 649 N.Y.S.2d 174, 175 (2d Dep't 1996) (plaintiff did the work in hopes that it would be awarded the contract; as such, it was "merely preparatory to performance"

---

[5] The other alleged damages in this paragraph, such as for alleged returns and cancellations, and chargebacks on merchandise, all are either direct contract damages arising from the purchase orders and actual dealings between the parties or otherwise do not qualify as expenditures made in reliance where there is no enforceable agreement, as described in *Farash*.

6

and could not constitute the basis for recovery on quasi-contract); *Birnbaum v. Airbourne Freight Corp.*, 183 Misc.2d 100, 101-02, 702, N.Y.S.2d 500, 501 (N.Y. Sup. Ct., Monroe County, 1999) (same). This claim, therefore, must be dismissed.

## II.

### GWB'S CROSS-MOTION TO AMEND ITS COMPLAINT SHOULD BE DENIED, AS THE PROPOSED AMENDED COMPLAINT ALSO FAILS TO STATE A VALID AND ENFORCEABLE CLAIM

A motion for leave to amend a complaint may be denied if the amendment is futile. *See Marvin Inc. v. Alberstein*, 386 F. Supp. 2d 247, 255 (S.D.N.Y. 2005) (denying leave to amend because it would be futile) (citations omitted). An amendment is considered futile if it can not survive a motion to dismiss. *Id.* (citations omitted); *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at * 18 (S.D.N.Y. Dec. 22, 2003) (denying leave to file an amended complaint because each of plaintiff's claim fails on grounds that cannot be remedied by amendment). GWB's attempt to alleged a writing in confirmation to satisfy § 2-201(2) of New York's Uniform Commercial Code and its attempt to alleged a claim of promissory estoppel are futile because both fail to state claims upon which relief may be granted. Plaintiff's motion to amend should therefore be denied. *See Marvin Inc.*, 386 F. Supp. 2d at 255 (denying leave to amend complaint because plaintiff has not and cannot allege any basis for promissory estoppel and therefore leave to amend would be futile); *Bank of New York v. Sasson*, 786 F. Supp. 349, 353 (S.D.N.Y. 1992) (denying motion to amend answer and add counterclaim for breach of contract because oral agreement was unenforceable under the Statute of Frauds and amendment would therefore be futile).

### A. GWB's New Factual Allegations In Support Of Its Amended Breach Of Contract Claim Are Still Insufficient To Satisfy The Statute Of Frauds

Recognizing its failure to satisfy the Statute of Frauds in its initial Complaint, GWB moves to amend its Complaint to add allegations with respect to an e-mail that, it argues, serves as a "writing in confirmation" sufficient to satisfy the Statute of Frauds.[6] That e-mail in turn references a voicemail allegedly left by Scott Jeffries of Mervyn's.[7] As described below, the e-mail and the transcribed voicemail do not satisfy the requirements of a "writing in confirmation." Rather, they illustrate a discussion of sales goals and rough projections for the future.

Determination of whether documents are sufficient to satisfy the Statute of Frauds is appropriate on a motion to dismiss. *See Zeising*, 152 F. Supp. 2d at 343. So that the Court may easily consider the documents in context, they are set forth herein as follows:

Scott Jeffries' "original phone message" for Sanford Fodiman of GWB provides the basis for the e-mail relied upon by GWB. In that voicemail, Jeffries provides rough estimates

---

[6] Although not attached to GWB's Proposed Amended Complaint, the e-mail at issue was submitted in opposition to Mervyn's' motion to dismiss as Exhibit A to the Affidavit of Danny Fodiman, and is incorporated by reference into the Proposed Amended Complaint. *See* Prop. Am. Compl. ¶ 12. As such, it can be considered on this motion. *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) (allowing defendant to introduce exhibit as part of its motion attacking the pleading when the plaintiff fails to attach integral document to its complaint).

[7] Although not submitted with GWB's motion papers, GWB produced an alleged transcription of the Jeffries voicemail with its Rule 26(a)(1) Initial Disclosures, at P 01090. Since GWB clearly relied on the Jeffries voicemail and the numbers stated therein in framing its Amended Complaint (indeed, the e-mail at issue cannot be read without reference to the voicemail), the voicemail transcription also may be considered by the Court on this motion. It is submitted herewith as Exhibit A to the Declaration of Lisa T. Simpson, dated March 16, 2007 ("Simpson Decl."). *See Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that documents can be reviewed for a motion to dismiss without converting it to one of summary judgment when plaintiff has actual notice of the information in the movant's papers and has relied upon these documents in framing the complaint); *I. Meyer*, 936 F.2d 759, 762; *Muller-Paisner v. TIAA, TIAA-CREF Enters., Inc.*, 446 F. Supp. 2d 221, 226-27 (S.D.N.Y. 2006) (holding that exhibits submitted by the defendants in its reply papers could be used in the Court's analysis because "all the exhibits relied on in their moving papers are referenced by Plaintiff in the Complaint and/or were relied on by Plaintiff in bringing the instant suit"). Mervyn's, by submitting the voicemail transcription on this motion, in no way waives or intends to waive any arguments it may have with respect to the authenticity or admissibility of this document.

8

of sale projections based on averages in Jeffries' department. Jeffries clearly states that his estimates are aggressive and that certain important numbers had not yet been backed out:

> Hey Sanford, it's Scott, I got some **rough numbers** for you. Um, I'm lookin' at **about** nine million dollars in sales on the collections, over eighteen months that's on two fixtures. And I've got ya' at **like**, four million two on active. 'Cause I actually have, some fabrics to give you, what my proposal was, what is for ten six for you to take over the Side Out active fixture. I couldn't move the back to school, 'cause we were already in production. So that'll get you to a total sales figure of thirteen million two fifty, ah, and that would equate to **roughly** twenty million seven in retail purchases. And that's at a thirty-eight margin right, so I'm **guessing we probably wanna' be at** sixty-seven, sixty-eight mark up so you can back that out to get cost purchases. **Um, this is a little high from the perspective of four way productivity, 'cause that did not back out the table um, but that gets you basically to my ra-ah, average rack productivity for the department, so I- I don't know if you wanna' take it down ten percent, but I – I feel like this – it's pretty aggressive as it sits today.** Give me a call if you have any questions ah, I'm in between appointments. I had to come down to the lobby, hopefully you're getting a good signal and you can hear everything. I will talk to you later, bye. (emphasis added).

See Simpson Decl. at Ex. A.

GWB alleges that Danny Fodiman of GWB then sends the following e-mail referencing the voicemail and Jeffries' estimates. Fodiman acknowledges that the numbers given were aggressive and requests that Jeffries keep the projections in mind when planning for future orders:

> Hi Scott[,] Sandy asked me to forward this message to you. He was concerned after the conversation he had with you the other day. Based upon your **original phone message** which told Sandy that the collections would be $9,000,000 at cost and active would be $4,200,000 at cost (13,200,000) over an 18 month period he **wanted to know if we would be able to hit the numbers** you had given him. That would translate based on your message to $20,700,000 in retail sales at a 38% maintained guaranteed margin with the initial IMU [initial mark up] at 67%. The reason for this concern is the guarantees which we have already given Rampage. **I realize that you had said the number could be aggressive and maybe 10% high** but our guarantees are substantial. Please bear this in mind. (emphasis added)

9

Jeffries responds–

> I'll make it up in the last 12 months. Nothing else I can do in this season unless my sales plan is raised to accommodate.

*See* Simpson Decl. at Ex. B.

To qualify under the "merchants' exception" of the Statute of Frauds, the alleged "writing in confirmation" must be "sufficient against the sender" and the party receiving it must have "reason to know its contents." N.Y.U.C.C. § 2-201(2) (McKinney 2006) (emphasis added). This alleged writing simply does not qualify. The exchange serves as confirmation only of an aspirational conversation in which Mervyn's and GWB discussed numbers that they hoped to achieve. Fodiman recognizes this – rather than demanding performance on some previous agreement, he indicates that he knows the numbers are aggressive, he wonders whether they will hit those numbers, and he asks that Jeffries keep the numbers in mind – not the language that one would expect if Mervyn's was already in breach of a firm agreement. Nor is the e-mail "confirmation" of any prior agreement, since Fodiman is still seeking answers as to what numbers the parties hope to hit.[8]

With regard to Jeffries' response, he indicates only that he will make it up, *i.e.*, that he will try to order more in the next 12 months to reach the parties' goals. This response can only be read in context with his initial voicemail in which he provides rough estimates. Jeffries' "knowledge of the contents" then of what is being discussed consists of a discussion of his "rough" and "aggressive" estimates, as set forth in his voicemail, and his hopes to achieve those, not any intention to confirm a binding contract. Indeed, this "writing" is not a contract at all – it

---

[8]   GWB's own allegations make it clear that no binding agreement was ever reached. GWB alleges that Mervyn's committed to ordering $13 million merchandise (even though the e-mail says $13.2 million), it then applies a 10% deviation down to $11.7 (Compl. ¶ 11), theoretically because, as Fodiman acknowledges in the e-mail, the $13.2 million (or $13 million?) number could be "maybe 10% high." Then, it guarantees Rampage an entirely different amount of $5 million. *Id.* Clearly, no firm agreement was ever reached between the parties or is confirmed by GWB's "writing."

contains no specific terms – no types of clothing are specified, no quantity, no price, no delivery dates. Those terms were reserved for the purchase orders that were exchanged between the parties.

The New York Court of Appeals' discussion in *Bazak Int'l Corp. v. Mast Indus.*, 73 N.Y.2d 113, 535 N.E.2d 633, 538 N.Y.S.2d 503 (1989), despite holding that the writing at issue there was sufficient, provides support here for the conclusion that GWB's writing is insufficient to satisfy the Statute of Frauds. In *Bazak*, the court found that the handwritten notes on the purchase order were "highly specific" and included "precise quantities, descriptions, prices per unit and payments terms stated." *Bazak*, 73 N.Y.2d at 124, 535 N.E.2d at 638, 538 N.Y.S.2d at 508. The documents also referred to an earlier presentation given by the plaintiff and were relayed between the plaintiff and the parent company of the defendant to the defendant. The Court, in reaching its determination that those documents satisfied the merchant's exception, explained that "[w]hile no one of these factors would be sufficient under U.C.C. 2-201(2), considered together they adequately indicate confirmation of a preexisting agreement." *Bazak*, 73 N.Y.2d at 124, 535 N.E.2d at 639, 538 N.Y.S.2d at 508. Using these factors as a comparison to the instant case, it is clear that GWB's e-mail exchange fails to satisfy the writing in confirmation required by §2-201(2).

The e-mail exchange cited by GWB as a "writing in confirmation" is more in line with the documents held insufficient as "writings in confirmation" in *S & S Textiles Int'l v. Steve Weave, Inc.*, No. 00 Civ. 8391, 2002 WL 1837999, at *5 (S.D.N.Y. Aug. 12, 2002) and *Precise-Marketing Corp. v. Simpson Paper Co.*, No. 95 Civ. 5629 (RJW), 1999 WL 259518, at *7-8 (S.D.N.Y. Apr. 30, 1999). In *S & S Textiles*, an e-mail stating "'agree/confirm concessions as per tel talk with you. Please pay the Bills Nos. . .'" was held too ambiguous and too tenuous to

serve as a "writing in confirmation" of a modification of a prior agreement. *Id.* Similarly, in *Precise Marketing*, the court considered a letter that stated, "'[a]s per agreement with Don Nay dated February 16, 1994, price is reduced $1.00/cwt effective March 1, 1994 through June 30, 1994.'" The court held that the letter was insufficient to satisfy the requirements of N.Y.U.C.C. § 2-201(2), concluding that the "document . . . does not confirm the existence of a binding contract. This letter could simply reflect a conversation in which plaintiff required price quotes for potential future purchases." *Id.*; *see KSW Mech. Contractors, Inc. v. Eco-Care Corp.*, 259 A.D.2d 671, 672, 686 N.Y.S.2d 868 (2d Dep't 1999) (none of the writings between the parties confirmed the alleged contract in accordance with UCC § 2-201(2)). GWB's cited e-mail is similarly too ambiguous to serve as a writing in confirmation of a binding agreement.

Since GWB has not and cannot plead a writing sufficient to satisfy the Statute of Frauds, granting GWB leave to amend its Complaint would be futile. GWB's motion to amend its breach of contract claim should therefore be denied. *United Magazine*, 146 F. Supp. 2d at 405 (breach of contract claim dismissed with prejudice on 12(b)(6) motion pursuant to U.C.C. §2-201 and Gen. Oblig. Law 5-701 Statute of Frauds due to lack of written agreement); *Angelo, Gordon & Co., L.P. v. Dycom Indus, Inc.*, No. 04 Civ. 1570 (RMB), 2006 WL 870453, at *7 (S.D.N.Y. Mar. 31, 2006) (Berman, J.) (dismissing breach of contract claim when plaintiff failed to meets its burden of proving that a binding agreement existed between the parties).

**B.    GWB's New Equitable Claim For Promissory Estoppel
       Also Fails To State A Claim And Must Be Dismissed**

In addition to its efforts to salvage its failed breach of contract claim, GWB also attempts to assert an entirely new claim in its Proposed Amended Complaint – a claim for promissory estoppel. That claim is yet another attempt by GWB to plead an equitable cause of action in order to avoid the Statute of Frauds. GWB, however, has not and cannot allege the

12

three necessary elements of a claim for promissory estoppel. *See* Prop. Am. Compl. ¶ 28. In order to state claim for promissory estoppel where the Statute of Frauds has been implicated, a plaintiff must establish the following three elements: "'(1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the party was made; and (3) an "unconscionable injury" suffered by plaintiff by reason of plaintiff's reliance.'" *Sugerman v. MCY Music World, Inc.,* 158 F. Supp. 2d 316, 325 (S.D.N.Y. 2001) (Berman, J.).

As noted above, GWB has not and cannot allege a clear and unambiguous promise. Jeffries did not commit Mervyn's to any particular guaranteed sales amount for Rampage clothing. Rather, Jeffries provided GWB with numbers that both GWB and Mervyn's viewed as rough estimates and sales goals. Without a clear and unambiguous promise, GWB's cannot satisfy the first element of a claim for promissory estoppel.

GWB also has failed to plead the unconscionable injury required as the third element of a claim for promissory estoppel. In New York, "[a] claim for promissory estoppel may not be maintained . . . where the alternative claim for breach of contract is barred by the Statute of Frauds, unless the circumstances make it unconscionable to deny the promise upon which the plaintiff relied." *See United Magazine,* 146 F. Supp. 2d at 405 (citations omitted); *Mobile Data Shred, Inc. v. United Bank of Switzerland,* No. 99 Civ. 10315 SAS, 2000 WL 351516, at *4 (S.D.N.Y. Apr. 5, 2000) (using promissory estoppel to overcome the Statute of Frauds is "strictly limited to those rare cases when the circumstances render the denial of recovery 'unconscionable'") (citations omitted). Thus, "[t]o succeed on a promissory estoppel claim in this context, a plaintiff must demonstrate injuries beyond those that flow naturally from the defendant's non-performance or from the plaintiff's continuing performance of the

unenforceable agreement." *Mobile Data Shred*, 2000 WL 351516, at *4 (citing *Merex*, 29 F.3d at 826).[9]

GWB has not and cannot allege any such injury. Although GWB's damage claim for this specific cause of action is again unclear – it once again seeks the full $6,622,000 contract damages for this claim – GWB has alleged elsewhere a lost fee to Rampage and other damages that would, if proven, be considered to flow naturally from an alleged non-performance of an agreement (if such an agreement existed). *See* Compl. ¶ 17. Certainly, none of those alleged damages rises to the level of unconscionable injury, nor has GWB so alleged. Such damages, in fact, have been consistently held insufficient to constitute the unconscionable injury required to support a claim for promissory estoppel. "In the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, foregone business opportunities or damage to business reputation." *Mobile Data Shred*, 2000 WL 351516, at *4 (citation omitted). *See Philo Smith & Co., Inc. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977) (holding finder's fee not "unconscionable injury"); *Sugerman*, 158 F. Supp. 2d at 325 (Berman, J.) (holding that "'other than the most exceptional cases, courts have consistently held that lost fees . . . constitute insufficient injury to invoke the doctrine of promissory estoppel as a bar to the assertion of a Statute of Frauds defense'").

Since GWB has not and cannot allege a clear and unambiguous promise or unconscionable damages that do not ordinarily flow from the breach of a promise made, GWB's claim for promissory estoppel cannot survive a motion to dismiss. GWB's cross-motion to

---

[9] Notably, each of the cases cited by GWB in support of its promissory estoppel claim indicates that the element of "unconscionable injury" is required to state a claim. GWB simply omits this important word from its recitation of the elements. *See Merex A.G. v. Fairchild Weston Sys. Inc.*, 29 F. 3d 821, 826 (2d Cir. 1994) ("To invoke the power that equity possesses to trump the Statute of Frauds, plaintiff must demonstrate 'unconscionable' injury, *i.e.* injury beyond that which flows naturally . . ."); *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996) ("unconscionable injury" listed as third element); *Keough v. Texaco, Inc.*, No. 97 Civ. 5981 (LMM), 1999 WL 61836, at * 10 (S.D.N.Y. Feb. 10, 1999) (since no writing exists, claim must be dismissed for statute of frauds unless plaintiff can show unconscionable injury).

amend its Complaint to evade the application of the Statute of Frauds and include a claim for promissory estoppel should therefore be denied as futile.

## CONCLUSION

For the reasons set forth above, as well as in defendant Mervyn's' moving papers, defendant Mervyn's respectfully requests that this Court grant its motion for judgment on the pleadings and dismiss the Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(c) for failure to state any claim upon which relief can be granted, and deny Plaintiff GWB's cross-motion to amend its Complaint on the grounds that permitting such an amendment would be futile.

Dated: New York, New York
March 16, 2007

ORRICK, HERRINGTON & SUTCLIFFE LLP

By _/s/ Lisa T. Simpson_
Lisa T. Simpson (LS-0694)
Rishona Fleishman (RF-5263)

666 Fifth Avenue
New York, NY 10103-0001
212-506-5000

Attorneys for Defendant
Mervyn's LLC

15