**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**GREAT WHITE BEAR, LLC**

                  **Plaintiff,**

     -against -

**MERVYNS, LLC,**

                **Defendant.**
-------------------------------------------------------------x

**06 Civ. 13358 (RMB)(FM)**

**DECLARATION OF PHILIP**
**A. BYLER, ESQ. IN OPPOSITION**
**TO MOTION TO STRIKE ITEMS**
**3-8 IN RANKEL REPORT AND**
**AWARD FEES AND COSTS**

     **PHILIP A. BYLER, ESQ.,** hereby declares subject to the penalties of perjury pursuant to

28 U.S. C. § 1746:

     1. I am a member of the Bars of, among others, the States of New York and Ohio, the U.S.

District Courts for the Southern and Eastern Districts of New York, the U.S. Courts of Appeals for

the Second, Sixth, Eleventh and Federal Circuits, and the U.S. Supreme Court. I am the Senior

Litigation Counsel to the firm of Nesenoff & Miltenberg, LLP, attorneys for plaintiff Great White

Bear LLC ("Great White Bear") in the above-captioned action.

     2. The following papers are being submitted in opposition to motion by Defendant Mervyns

LLC ("Mervyns") to strike items 3-8 in the final expert report of Stephen J. Rankel, C.P.A.[1] and to

award fees and costs:

     (i) this Declaration dated April 24, 2008, describing the papers in opposition to

Mervyns's motion to strike and for fees and costs and stating the procedural history of the case; and

     (ii) Plaintiff Great White Bear LLC's "Memorandum Of Law In Opposition To

Defendant Mervyns LLC's Motion To Strike Items 3-8 In The Expert Report Of Stephen J. Rankel,

C.P.A. and For Fees And Costs," stating the reasons why Defendant Mervyns's motion to strike

---

[1] Mervyns acknowledges that it is not seeking to strike damages items 1 and 2 of the final
Rankel report, but purports to reserve its right to do so after deposition under *Daubert v. Merrell
Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Great White Bear is confident that there will
no *Daubert* issue as to Mr. Rankel's accounting for lost profits and lost royalty payments. Great
White Bear does note that at the conference before District Judge Richard M. Berman held on
April 16, 2008, Judge Berman stated that all motions for summary judgment, *Daubert* preclusion
and real party in interest are be submitted to him at one time before trial.

-2-

items 3-8 in the final expert report of Stephen J. Rankel, C.P.A. and to award fees and costs should be denied.

### The Relevant Procedural History

3.  The key point of relevant procedural history is that on April 8, 2008, the Court ordered Great White Bear's counsel to submit in 48 hours, by 5:00 PM on April 10, 2008, a final expert report of Stephen J. Rankel, C.P.A. as to damages (there was and for six weeks had been no issue as to the completeness of the expert report of Laurence P. Lazar as to industry practices previously produced by Great White Bear); and on April 10, 2008, counsel to Great White Bear produced that final expert report of Stephen J. Rankel, C.P.A. under cover of letter stating why the final expert report fully satisfied Rule 26 of the Federal Rules of Civil Procedure. The letter and the final report of Stephen J. Rankel, C.P.A. were also copied to the Court.  Attached as Exhibit A is a copy of the Order dated  April 8, 2008; attached as Exhibit B is a copy of my letter dated April 10, 2008, explaining full compliance with Rule 26 of the Federal Rules of Civil Procedure by the final Rankel report; and a copy of the final Rankel report itself was provided to the Court on April 10, 2008 and has been provided again as Exhibit O to the Declaration of Mervyns's counsel Lisa Simpson.  These developments were preceded by the following.

4.  Following fact discovery (including voluminous document production by Great White Bear to Mervyns and depositions by Mervyns counsel of Great White Bear principals), on November 29, 2007, the Court entered an Order requiring, among other things, that Great White Bear disclose its experts by December 14, 2007, and submit expert reports by January 11, 2008.  Attached as Exhibit C is a copy of the November 29, 2007 Order.  On December 14, 2007, Great White Bear made the required disclosure of its experts per the November 29, 2007 Order.  Attached as Exhibit D is a copy of Great White Bear's expert disclosure statement.  On January 11, 2008, the parties by agreement requested an extension of Great White Bear's due date for expert reports from January 11, 2008, to January 21, 2008; and the Court so ordered that request.  Attached as Exhibit E is a copy of the letter so ordered by the Court.

-3-

5. In compliance with the deadline to submit expert reports, Great White Bear served on January 21, 2008, two expert reports, one by Laurence P. Lazar as to industry practices (Exhibit F hereto) and one by Stephen J. Rankel, C.P.A. as to damages (Exhibit G hereto). Stephen J. Rankel is a certified public accountant (since 1983) who is an Executive Partner of the New York City accounting firm of Citrin Cooperman & company, LLP and who has had 25 years of experience as an accountant servicing companies in the apparel and textile industries.

6. Over three weeks later, on February 6, 2008, counsel to Mervyns sent a letter to counsel for Great White Bear stating that the two expert reports did not comply in all particulars with Rule 26 of the Federal Rules of Civil Procedure. Attached as Exhibit H is a copy of the February 6, 2008 letter of Mervyns's counsel. On February 13, 2008, counsel to Great White Bear replied providing informal supplementation and promising supplemental reports to incorporate the informally provided information when the two expert witnesses returned to New York. Attached as Exhibit I is a copy of the February 13, 2008 letter of Great White Bear's counsel. On February 20, 2008, counsel to Great White Bear provided a supplemental report of Laurence P. Lazar (concerning prior testimony, publications and compensation) and promised a supplemental report by Stephen J. Rankel, C.P.A. (who was still out of town at the time). Attached as Exhibit J is a copy of the Febraury 20, 2008 letter of Great White Bear's counsel and the supplemental report. Thereafter, there was no issue as to completeness of the expert report of Laurence P. Lazar.

7. On February 21, 2008, counsel to Mervyns applied to the Court requesting that a firm date be set for the supplemented expert report of Stephen J. Rankel, C.P.A. as to damages and an extension of Mervyns's time to serve its expert reports. On February 25, 2008, the Court set March 14, 2008, as the date for the supplemented Rankel report and extended Mervyns's time as to its expert reports. Attached as Exhibit K is a copy of the February 21, 2008 letter of Mervyns's counsel with the February 25, 2008 Order of the Court endorsed thereon. On February 28, 2008, well before the Court deadline, Great White Bear provided a supplemented report from Stephen J. Rankel, C.P.A. and requested counsel to Mervyns to advise counsel to Great White Bear if it were believed

-4-

that any further supplementation was in order. Attached as Exhibit L is a copy of the February 28, 2008 letter of Great White Bear's counsel and the supplementation for the Rankel report.

8. One week later, on March 6, 2008, counsel to Mervyns sent a letter to counsel Great White Bear summarily asserting, without specifics, that the supplemented Rankel report was still insufficient. Attached as Exhibit M is a copy of the March 6, 2008 letter of Mervyns's counsel. Without agreeing with counsel to Mervyns, counsel to Great White Bear provided on March 14, 2008, an additional supplementation to the Rankel report with a cover letter pointing out the supplemented Rankel report complied with Rule 26 of the Federal Rules of Civil Procedure and requesting that any further issue be raised with counsel. Attached as Exhibit N is a copy of the March 14, 2008 letter of Great White Bear's counsel and additional supplementation for the Rankel report.

9. Nothing was heard from counsel to Mervyns for a week until the afternoon of Good Friday, March 21, 2008, when counsel to Mervyns made application to the Court for permission to move to strike the Rankel report; and on that same day, counsel to Great White Bear replied that the supplemented Rankel report complied with Rule 26 of the Federal Rules of Civil Procedure and that a motion to strike the whole report was not justified based on the five items raised by Mervyns tat went to only 29% of the total damages itemized. Attached as Exhibit O is a copy of the Good Friday letter of Mervyns's counsel, and attached as Exhibit P is a copy of the response of Great White Bear's counsel. Among other things, I wrote:

> . . . The Rankel report, as supplemented, satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. That Rule requires that an expert report contain the following:
>
> > "(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> >
> > "(ii) the data or other information considered by the witness in forming them;
> >
> > "(iii) any exhibits that will be used to summarize or support them;
> >
> > "(iv) the witness's qualifications, including a list of all

-5-

publications authored in the previous ten years;

"(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

"(vi) a statement of the compensation to be paid for the study and testimony in the case."

When I sent the second supplement to Ms. Simpson, I stated in my cover letter that the Rankel letter satisfied all six requirements. . . . Ms. Simpson thereafter did not with me dispute my statement of compliance, as my letter requests if she did, and even now does not dispute that the Rankel report fully satisfies requirements (i), (iii), (iv), (v) and (vi).

Yet, Ms. Simpson wants to try to stop Plaintiff GWB from proving its damages case with testimony by a certified public accountant who knows the finances of Plaintiff GWB because, while Mr. Rankel does provide in his report a statement of "the data or other information considered by the witness in forming [his opinions]", which is requirement (ii) in the Rule, Ms. Simpson argues that more detailed information should be provided as to five of eleven damage items. . . .

10.  On April 8, 2008, a teleconference of counsel and the Court was held at which time, as noted at the beginning of this statement of procedural history, the Court gave Great White Bear's counsel to submit in 48 hours, by April 10, 2008, for Great White Bear to submit a final expert report of Stephen J. Rankel, C.P.A. as to damages; and on April 10, 2008, counsel to Great White Bear produced that final expert report of Stephen J. Rankel, C.P.A. (Exhibit O to Simpson Declaration) under cover of letter stating why the final expert report fully satisfied Rule 26 of the Federal Rules of Civil Procedure (Exhibit B hereto).

11.  In the Order issued by the Court on April 8, 2008 (Exhibit A hereto), permission was given by the Court for Mervyns to make, by April 17, 2008, a motion to strike and Mervyns was excused from submitting its expert reports in the meantime.  At approximately 11:00 PM on April 17, 2008, counsel for Mervyns electronically filed, albeit incorrectly, its motion to strike items 3-8 in the final Rankel report and to be awarded fees and costs.  This documented Declaration and an accompanying Memorandum of Law are being submitted in opposition.

I declare under the penalty of perjury that the foregoing is true and correct.

**Dated: New York, New York**
**April 24, 2008**

_/s/_Philip A. Byler, Esq._
**Philip A. Byler, Esq.**

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

GREAT WHITE BEAR, LLC,                           :

                              Plaintiff,         :

            -against-                            :

MERVYNS, LLC,                                    :

                              Defendant.         :

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/9/08_

**ORDER**

06 Civ. 13358 (RMB)(FM)

**FRANK MAAS,** United States Magistrate Judge.

Pursuant to a telephone conference held earlier today, it is hereby

ORDERED that:

1.  By 5:00 p.m. on April 10, 2008, the plaintiff shall provide the defendant with Mr. Rankel's _final_ expert report, together with any necessary schedules and other documentation. The amended report shall take the form of one cohesive report, not supplements to the prior reports prepared by the expert.

2.  On or before April 17, 2008, the defendant may file a motion to strike Mr. Rankel's report if it believes inadequacies persist.

3.  On or before April 24, 2008, the plaintiff shall file any opposition papers.

4.  The defendant need not produce its own experts' reports until further order of the Court.

5.  A further telephone conference shall be held on April 29, 2007, at 10:00 a.m.  Counsel for the defendant shall initiate the call by dialing Chambers at (212) 805-6727.

SO ORDERED.

Dated:    New York, New York
          April 8, 2008


SO ORDERED.

                                                    FRANK MAAS
                                              United States Magistrate Judge


Copies to:

Honorable Richard M. Berman
United States District Judge

Philip A. Byler, Esq.
Nesenoff & Miltenberg LLP
Fax: (212) 736-2260

Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe LLP
Fax: (212) 506-5151

Exhibit B

# NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

April 10, 2008

**BY HAND**
Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe, LLP.
666 Fifth Avenue
New York, New York 10103

Re:    *Great White Bear, LLC v. Mervyns, LLC,*
       <u>Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)</u>

**Dear Ms. Simpson:**

As you know, I am an attorney for the Plaintiff Great White Bear, LLC. ("Plaintiff GWB") in the above-referenced diversity breach of contract action. Per leave kindly given by U.S. District Court Magistrate Judge Frank Mass on April 8, 2008, enclosed with this cover letter is the final Rankel damages expert report.

The final Rankel damages expert report satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. That Rule requires that an expert report contain the following:

"(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

"(ii) the data or other information considered by the witness in forming them;

"(iii) any exhibits that will be used to summarize or support them;

"(iv) the witness's qualifications, including a list of all publications authored in the previous ten years;

"(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

"(vi) a statement of the compensation to be paid for the study and testimony in

**Page -2-**

the case."

A review of these elements as against the enclosed final Rankel damages expert report establishes that the final Rankel damages expert report fully satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

### Subsection (i): "a complete statement of all opinions the witness will express and the basis and reasons for them"

The enclosed final Rankel damages expert report contains the opinions and the basis and reasons for those opinions. Part II of the final Rankel damages expert report outlines the approach taken to the accounting of damages and identifies the two general categories of damages. Part III of the final Rankel damages expert report provides a summary list of the items of damages with amounts added to a total number. Part IV of the final Rankel damages expert report provides an analysis of each of the damage items with the basis and reasons for including the damage item and for the number stated for the item. Part V of the final Rankel damages expert report performs a check on the damages calculation by providing a summary financial history of Plaintiff GWB.

### Subsection (ii): "the data or other information considered by the witness in forming them"

The enclosed final Rankel damages expert report states the data and information considered in preparing the report, identifies and discusses documents used in deriving the specific damage item figures and further attaches as exhibits documents in support of the damages analysis.

### Subsection (iii): "any exhibits that will be used to summarize or support them"

The enclosed final Rankel damages expert report refers to the charts on pages 5 and 12 as being trial exhibits and likely the subject of enlarged size charts at trial.

### Subsection (iv): "the witness's qualifications, including a list of all publications authored in the previous ten years"

The enclosed final Rankel damages expert report provides this information in Part I of the report on pages 1 and 2.

### Subsection (v): "a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition"

The enclosed final Rankel damages expert report provides this information in Part I of the report on page 2.

**Page -3-**

**Subsection (vi): "a statement of the compensation to
be paid for the study and testimony in the case"**

     The enclosed final Rankel damages expert report provides this information in Part I of the report
on page 2.

                                       Respectfully submitted,
                                       **NESENOFF & MILTENBERG, LLP**

                               By:                          
                                      Philip A. Byler, Esq.

cc:     The Honorable Frank Mass, Magistrate Judge
           (By Overnight Courier)

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GREAT WHITE BEAR, LLC,                          :

                                    Plaintiff,  :          **ORDER**

                    -against-                   :          06 Civ. 13358 (RMB)(FM)

MERVYNS, LLC,                                   :

                                    Defendant.  :

-------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

        Pursuant to a telephone conference held yesterday, it is hereby

ORDERED that:

1.    On or before December 14, 2007, the plaintiff shall identify its experts and provide the defendant with all of the information required by Fed. R. Civ. P. 26(a)(2), other than its experts' reports.

2.    On or before January 11, 2008, the plaintiff shall serve its experts' reports.

3.    On or before February 8, 2008, the defendant shall provide the plaintiff with all of the information required by Fed. R. Civ. P. 26(a)(2), including its experts' reports.

4.    On or before February 22, 2008, the plaintiff shall serve any rebuttal reports.

5.    On or before March 14, 2008, expert discovery shall be completed.

6.     A further telephone conference shall be held on March 31, 2008, at 10:00 a.m.  Counsel for the plaintiff shall initiate the call by dialing the main number of Chambers, (212) 805-6727.

SO ORDERED.

Dated:     New York, New York
           November 29, 2007

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Honorable Richard M. Berman
United States District Judge

Philip A. Byler, Esq.
Nesenoff & Miltenberg LLP
Fax: (212) 736-2260

Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe LLP
Fax: (212) 506-5151

2

Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

GREAT WHITE BEAR, LLC

           Plaintiff,                06 Civ. 13358 (RMB)(FM)

  -against -

MERVYNS, LLC,

           Defendant.

-----------------------------------------------------x

## PLAINTIFF'S FED. R. 26(a)(2)(A) CIV. P.
### DISCLOSURE OF EXPERT WITNESSES

Pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure, Plaintiff

GREAT WHITE BEAR, LLC ("Plaintiff"), by its attorneys Nesenoff & Miltenberg, LLP,

hereby discloses Plaintiff's expert witnesses:

### Industry Expert

Name & Address:           Laurence P. Lazar
                              201 East 36th Street
                              New York, New York 10016

Expert's Background:     Graduated with B.A. from University of Miami (Fl.)
                              President and Principal of Network Industries Corp. (1978-2004)
                                  - $65-$70 million revenues company in garment industry
                                  - Customers included K Mart and Walmart
                              Importing Consultant (2004-present)

### Damages Expert

Name & Address:           Stephen J. Rankel
                                Citrin Cooperman & Company, LLP
                                529 Fifth Avenue
                                New York, New York 10017

-2-

Expert's Background:        See Exhibit A attached hereto.

Dated:      New York, New York
            December 13, 2007              NESENOFF & MILTENBERG, LLP

                                    By: _____
                                          Philip A. Byler, Esq. (PB 4234)

                                    **Attorneys for Plaintiff Great
                                        White Bear, LLC
                                    363 Seventh Avenue - 5th Floor
                                    New York, New York 10001
                                    212.736.4500**

TO:  **ORRICK, HERRINGTON & SUTCLIFFE LLP
     Attorneys for Defendant Mervyns, LLC
     Attn.: Lisa T. Simpson, Esq./Rishona Fleishman, Esq.
     666 Fifth Avenue
     New York, New York 10103
     212.506.5000**

Exhibit A

12/13/2007  09:58   12126972797              CITRINCOOPERMAN                    PAGE  02/06

Stephen J. Rankel
Business Profile


College:    Bernard M. Baruch College
            Graduated February 1980
            Degree - Bachelor of Business Administration (Cum Laude)

Certified Public Accountant:   November 7, 1983

Member of:   N.Y.S. Society of CPA's
             AICPA

Work Experience:   Weinick Sanders & Co. (changed name July 1, 1997 to
                   Weinick Sanders Leventhal & Co., LLP) [1]

April 1980 to September 1984 - Staff Accountant
September 1984 to March 1985 - Worked for a client in the Apparel Industry
March 1985 to April 1987 - Manager Weinick Sanders & Co.
April 1987 to December 1991 - Partner
January 1992 to March 1996 - Executive Partner
March 1996 to July 2005 - Managing Partner [2]

Citrin Cooperman & Co., LLP:
August 2005 to Present - Executive Partner


[1]    This firm specializes in the Apparel & Textile Industry with clients of revenues of
       ½ million to $300 million.

[2]    On July 31, 2005, this firm liquidated and 4 partners of Weinick Sanders Leventhal &
       Co., LLP joined Citrin Cooperman & Co., LLP.

Exhibit E

01/11/2008 11:32 FAX  0000000000          NESENOFF&MILTENBERG                    ☑002/002

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____    │
│ DATE FILED: 1/11/08         │
└─────────────────────────────┘
```

# NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

**MEMO ENDORSED**

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

PARALEGAL
TANYA C. SIMMONS

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHEGTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

**January 11, 2008**

APPLICATION GRANTED
SO ORDERED

_____
Frank Maas, USMJ  1/11/08

**BY TELECOPIER: 212-805-6724**
The Honorable Frank Maas, United States Magistrate Judge
United States District Court - Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street - Room 740
New York, New York 10007

        Re:    *Great White Bear, LLC. v. Mervyns, LLC*
               Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)(FM)

Dear Judge Maas:

        I am the attorney for the Plaintiff Great White Bear, LLC. ("Plaintiff GWB") in the above-referenced diversity breach of contract action, but I write this letter on behalf of both Lisa Simpson, Esq., attorney for Defendant Mervyns, LLC ("Defendant Mervyns"), and myself. Counsel have agreed, in respectful deference to each other's professional schedule and commitments as well as experts' schedules and commitments, to adjust the following dates in the schedule for expert discovery: Plaintiff GWB's experts are due to be served January 21 (identity of Plaintiff GWB's experts has already been made per the original schedule); Defendant Mervyns's reports are due to be served February 27; and Plaintiff GWB's rebuttal reports are due to be served March 10. Because the original schedule dates were Court-ordered dates, both Lisa Simpson and I hereby respectfully request that the Court to "so order" this letter to make the agreed upon dates above the new Court-ordered dates. We thank you for your attention to this matter.

                                Respectfully submitted,
                                NESENOFF & MILTENBERG, LLP

                                By: _____
                                    Philip A. Byler, Esq.

cc:    Orrick, Herrington & Sutcliffe, LLP. - by telecopier
       (Lisa T. Simpson, Esq.)

Exhibit F

49 01/17/08
Ntm

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

**GREAT WHITE BEAR, LLC,**

                    **Plaintiff,**

      -against -

**MERVYNS, LLC,**

                  **Defendant.**

------------------------------------------------------------x

**06 Civ. 13358 (RMB)(FM)**

# EXPERT REPORT
## OF LAURENCE P. LAZAR

This is a written report by the undersigned, Laurence P. Lazar, in compliance with what I have been advised are the requirements with respect to expert testimony in federal court. In this report, I address certain subjects concerning how the garment industry works as those subjects pertain to the case of _Great White Bear, LLC v. Mervyns, LLC_, 06 Civ. 13358 (S.D.N.Y.). For this testimony, I have read the Complaint and Answer and certain depositions and deposition exhibits in the case, and I have done so in order to be sufficiently familiar with the facts and factual issues in the case to be in a position to provide testimony about the garment industry that is of material interest to the case.

## 1.    Credentials.

After graduating in 1967 from college with a B.S. degree, I was a stockbroker for Newburger Loeb on Wall Street for about six years until 1973. Having saved money during my years as a stockbroker, I looked to buy a business, but instead in 1974 started up a men's shirt company with my own capital. Since that time in 1974, for the last 33 to 34 years, I have been working in the garment industry. The shirt company lasted until 1976 when I closed the business paying creditors 100% on the dollar. I then went to work in merchandising at Shellburn Shirts, at the time the largest domestic manufacturer of men's shirts, and was there from 1976 to 1978.

In 1978, with a partner, I launched Network Industries Corp.; and from March 1978 to 2004, I was the Executive Vice President and a principal of that company. Network Industries Corp. sold men's and boys' wear and grew into a company with $50 million of annual revenues. The customers included K Mart, Walmart, Target, Caldor and Zayre. My specific areas of focus in running the company were acquisition of product, design and sale of product.

Since 2004, I have been an importing consultant. My years of experience in the garment industry has included, among other things, dealing with all sorts of import issues and problems, as work in the garment industry entails dealing with foreign manufacturing plants in other parts of the world, including Asia. My years of experience in the garment industry has also included, among other things, such matters as contract relations with customers, placing manufacturing orders to fill orders for customers, shipment issues and quality of garments.

What counts in understanding and being able to explain how the garment industry routinely works is experience; it is not an academic subject.

## 2.    The Making Of The Contractual Relationship Between Great White Bear and Mervyns.

The deposition testimony given by Scott Jeffries, the Mervyns Senior Buyer in Juniors whose responsibilities led him to deal with Great White Bear (pp. 14-17),

and the deposition testimony given by Great White Bear's Sandy Fodiman, Glenn Sands and Danny Fodiman all contain testimony concerning, as I explain below, what in my opinion, based on my knowledge and experience in the garment industry, would be considered in the garment industry a contractual commitment between Great White Bear and Mervyns for the sale by Great White Bear to Mervyns of "Juniors Collections" and "active wear" in certain agreed upon amounts bearing the label "R for Rampage" label for which Great White Bear obtained an exclusive license from the owner of the mark, Rampage company.

Marked as Exhibit 1 at the Scott Jeffries deposition, Exhibit 1 at the deposition of Sandy Fodiman and Exhibit 6 at the deposition of Danny Fodiman was the transcription of a cell phone message left by Scott Jeffries (bearing the numbering P 01090). Marked as Exhibit 2 at the Scott Jeffries deposition, Exhibit 2 at the deposition of Sandy Fodiman and Exhibit 7 at the deposition of Danny Fodiman was an e-mail exchange between Danny Fodiman forwarding a message from Sandy Fodiman to Scott Jeffries and Scott Jeffries confirming in a message back to Danny Fodiman (bearing the numbering P 01091).

Scott Jeffries testified he recalled these communications, explained his use of certain language in his phone message and his emailed message and stated he had authority to enter into such arrangements. (Scott Jeffries Deposition pp. 36-37, 44-

-3-

54.)  Richard Leto, the Chief Executive Officer of Mervyns (p. 10), testified that it was "entirely up to him [Scott Jeffries] as to whether he basically did business with Sandy Fodiman," that Scott Jeffries told him (Richard Leto) that "he [Scott Jeffries] had committed to do business under the 'R for Rampage' label," that "they would start with active wear for back to school."  (Richard Leto Deposition pp. 20, 23.) While Richard Leto testified that he was not informed about the e-mail bearing the numbering P 01091 and marked for identification as exhibit 1 at Richard Leto's deposition (p. 25-28), I did not see in the deposition testimony any statement that Scott Jeffries was not authorized to make the contractual commitment he did with Great White Bear.

Sandy Fodiman, Glenn Sands and Danny Fodiman in their deposition testimony gave their recollection of how this contractual relationship came about -- meetings with Rampage that resulted in Rampage agreeing to give an "R for Rampage" exclusive license for sales of certain Juniors Collections garments by Great White Bear to Mervyns but needing a guaranteed payment by Great White Bear for the license; Sandy Fodiman going to Scott Jeffries for a commitment; and Scott Jeffries calling Sandy Fodiman and leaving a message and then confirming in an e-mail to Danny Fodiman that "Collections" would be $9,000,000 at cost and $4,000,000 at cost in "active wear" for a total of $13,000,000, in an 18-month or 3-

-4-

season period, that was up or down 10% aggressive, leaving $11,700,000 in committed sales from Great White Bear to Mervyns in that 18-month or 3-season period, at a 38% guaranteed margin with an initial mark up at 67%. (Sandy Fodiman Deposition pp. 47-123; Glenn Sands deposition pp. 67-89; Danny Fodiman Deposition pp. 113-122.)

The deposition testimony of Danny Fodiman indicates that he has had about 20 years in the garment industry (pp. 11-26); the questioning at that deposition included an extended back and forth between the Mervyns attorney and Danny Fodiman during which Danny Fodiman testified that in the garment industry the transcribed voice message and e-mail documents would be considered a contract and the Mervyns attorney insisted on asking about whether there was a separate signed agreement document  (pp. 117-122).

The deposition testimony of Sandy Fodiman indicates that he has had over 40 years in the garment industry (pp. 8-24) and also includes an explanation by Sandy Fodiman of how he considered the voicemail and email reflected in the documents marked P 01090 and P 01091 to constitute a contract (pp. 88-90).

In my experience of almost 34 years in the garment industry and according to my resulting knowledge of how the garment industry has operated and does operate, the transcribed voice message and e-mail documents, P 01090 and P 01091, would

be considered a contract in the garment industry and a separate signed document would not be required as a matter of general practice.

The garment industry has not operated and does not operate by way of extensively negotiated, detailed written contracts that business people see lawyers present for the acquisition and sale of a business or the purchase and sale of a parcel of real estate. The garment industry moves too fast for there to be such detailed written agreements. It would be an exaggeration to say that orders in the garment industry may be written on toilet paper, but it is worthwhile to make the exaggerated statement so that it is understood that in the garment industry what would be considered a contractual commitment may be made on the strength of "verbals" and a confirming e-mail.

I have been asked whether the transcribed voice message and e-mail documents, P 01090 and P 01091, would be the basis for a company, here Great White Bear, to enter into an exclusive license agreement with another company, here Rampage; and the answer is yes. The exclusive license agreement in question appears to a document entitled "First Amendment To License Agreement," marked as Iconix Exhibit 4. The deposition testimony of Sandy Fodiman (pp. 61-62, 66-68, 72, 86-87, 89-90) discusses the need for a commitment from Mervyns -- a commitment that Sandy Fodiman understood from Mervyns that Scott Jeffries could make -- in order

for Great White Bear to enter into the exclusive license with a guaranteed license payment to Rampage of a minimum of $400,000. This is a reflection of how in the garment industry the transcribed voice message and e-mail documents, P 01090 and P 01091, would be considered a contractual commitment.

I have also been asked whether the transcribed voice message and e-mail documents, P 01090 and P 01091, would be considered in the garment industry a sufficiently detailed commitment; and the answer is yes. In the kind of contractual arrangement made here involving a "Collection" of garments and a group of garments ("active wear"), buyer and seller would need to massage the precise selection of the kinds of specific tops, bottoms and the like, but would do so with cost dictating price and with the object of offering what would sell well in the stores, knowing that it would take three or four deliveries to figure out what was going to sell to Mervyns customers; in the end, the total purchased from Great White Bear would reflect the approximate ratio of $9,000,000 at cost in "Collections" and $4,000,000 at cost in "active wear" and would still be at least $11,700,000 in an 18-month or 3-season period. That Mervyn Chief Executive Officer Richard Leto testified (pp. 25-29) that he was not informed about the commitment reflected in the transcribed voice message and e-mail documents bearing the numbering P 01090 and P 01091(the latter of which was shown to him at his deposition) and that in April 2005 there was not a

-7-

meeting right before Scott Jeffries was transferred concerning the commitment to Great White Bear does not square with the expectation that I would have with respect a company dealing with the garment industry such as Mervyns.

I have finally been asked whether the transcribed voice message and e-mail documents, P 01090 and P 01091, would be considered in the garment industry a non-binding "projection"; and the answer is no. I note that at one point in the deposition of Sandy Fodiman, he was asked whether the voicemail in the document marked P 01090 contained a "projection," and Sandy Fodiman's answer was "No, this is the confirmation of what he [Scott Jeffries] could comfortably handle at Mervyns. . . . This document is a voicemail left by Scott Jeffries to me to confirm our agreement that was made by him to me and Great White Bear." (Sandy Fodiman Deposition p. 71-72.) A projection is not an agreement and not something upon which a company such as Great White Bear could rely in order to enter into a license agreement with the owner of a mark such as Rampage and agree with the owner of the mark to pay a guaranteed amount of royalty as Great White Bear did with Rampage.

3.    **Problems In The Contractual Relationship Between Great White Bear And Mervyns.**

The Complaint and the deposition testimony and exhibits that I read reflected that issues arose in the relationship between Great White Bear and Mervyns. In the

normal course in the garment industry, issues will arise and require good faith behavior by a seller and a buyer because we are typically dealing in the garment industry with an ordering, production, shipping and delivery process that involves international commerce and has the potential for a number of problems to develop.

**Ordering, Production, Shipping and Delivery Process.** The ordering, production, shipping and delivery process in the garment industry typically may be summarized as follows: (i) the placement of orders of specific items of clothing by the buyer with the seller; (ii) the seller going to a factory that today is abroad -- most often somewhere in Asia -- and placing production orders with that factory; (iii) the factory's production of the ordered garments; (iv) the seller's coordination with the factory of receipt of the produced garments for shipment to the United States; (v) the shipment of the ordered garments from the country of the factory to the United States; (vi) the movement of the ordered garments through customs and not delayed by quota limitations on garments coming from a particular country such as China; (vii) the seller's taking possession and inspection of the ordered garments and preparation of the ordered garments for delivery to the buyer; and (viii) the delivery of the ordered garments by the seller to the buyer at a location designated by the buyer with packing and labeling done per the buyer.

This ordering, production, shipping and delivery process requires good faith

behavior by a seller and a buyer; there needs to be communication, coordination and cooperation between buyer and seller.   There cannot be, on the buyer's part, a breakdown in communication, coordination and cooperation about which Glenn Sands appears to be was complaining in an e-mail dated June 20, 2005, to Sandy Fodiman; the e-mail was Glenn Sands deposition exhibit 7 (bearing the numbering M 02480 and P 01114).   Glenn Sands testified: that he knew his e-mail "by heart"; that the problems identified in the e-mail were "not done to help us"; that he told Sandy Fodiman the Mervyns account had become his "worst nightmare"; that it was obvious to Glenn Sands that after Scott Jeffries had left the account, Mervyns buyer Laura Willett "wanted no part" of Great White Bear; that it is very easy for a buyer to blame the seller saying "you didn't do this, you were suppose to do this"; but that Great White Bear did everything it was suppose to do.  (Glenn Sands Deposition pp. 177-184.)

I note in this connection that Laura Willett, the Buyer who moved to Juniors in April 2005 after Scott Jeffries was transferred to another department at Mervyns, testified that she never placed an order with Great White Bear, could not recall discussions with the Junior Buyer Heather Takagi who did place such orders and she (Laura Willett) clearly had an unfriendly relationship with Great White Bear's Glenn Sands.  (Laura Willett Deposition pp. 12-13, 38-40, 68-69.)  I also note in this

-10-

connection that while Laura Willett expressed a negative view of Glenn Sands, she was a buyer for Mervyns for various kinds of garments only since 2003 and thus had about 2 years of experience in dealing with the garment industry (Laura Willett Deposition pp. 10, 12, 68-69), whereas in contrast, Glenn Sands had 30 years of experience in the garment industry, including being a company owner (Glenn Sands Deposition pp. 13-33).

Assuming the truth of what Glenn Sands stated in the referenced e-mail (Glenn Sands deposition Exhibit 7) and the referenced testimony (Glenn sands deposition pp. 177-184) for the purpose of this written report outlining expert testimony, then what Glenn Sands describes is havoc in the ordering, production, shipping and delivery process that a buyer can cause. Other problems can arise as well discussed next.

**Placement of Orders.** Standard in the garment industry is the need for 90 to 120 days lead time for the seller to fill orders from the buyer. Glenn Sands testified that he complained numerous times to Heather Takagi, a Mervyns Junior Buyer, and Laura Willett, the Mervyns Buyer, about being given only 60 to 75 days for orders, that 90 days were needed especially given the problem with the China embargo but that his complaints fell on "deaf ears." (Glenn Sands Deposition pp. 159-163.) Danny Fodiman also testified that Great White Bear was being given 60 to 75 days lead time when 90 days were needed (Danny Fodiman Deposition pp. 190-191), and

Danny Fodiman wrote to Laura Willett in an October 17, 2005 e-mail: "We need 90 days going forward on anything to not have any problems going forward." (Willett Deposition Exhibit 5, P 00283.) The need for a 90-day lead time was also reflected in Laura Willett's deposition testimony, when she testified that "it's understood that the junior division typically works on a 90-day lead time." (Laura Willett Deposition p. 51.)

The ordering, production, shipping and delivery process of the garments simply takes time. Part of a working relationship between buyer and seller is for the buyer to communicate information to seller so that seller can initiate the production of the desired garments and then once produced, so that the produced garments are placed in international shipment for delivery in the United States where the seller can prepare the garments for delivery to the buyer per the instructions of the buyer. If it is assumed for the purpose of this written report outlining expert testimony that, as testified to by Glenn Sands and Danny Fodiman, Mervyns gave to Great White Bear only 60 to 75 days to fill orders, then the experience of the garment industry is that Mervyns was giving Great White Bear insufficient time to fill orders.

**Collections.**  Another aspect of difficulty in this case in terms of how the garment industry operates is that what Mervyns was buying from Great White Bear was in good part "Collections." According to the testimony of Glenn Sands, Scott

Jeffries wanted "Collections" to be sold under a Rampage label. I know from my own knowledge in the garment industry that Glenn Sands is correct in his testimony that selling "Collections" adds a dimension of difficulty because, among other things, product comprising the "collection" may be manufactured in different countries with different quotas, there is a need to match colors at the manufacturing level and there is a need to coordinate shipments to fill the orders (Glenn Sands Deposition pp. 71-74). When "Collections" are the subject of a sale in the garment industry, there is all the more reason for good faith cooperation on the part of the buyer and the seller and a need to allow sufficient lead time to fill orders.

**Import Quota Limitations and Embargos; Related Customs Delays.** I am presently an importing consultant because in my years of experience in the garment industry, I had to deal with the matter of import quotas and embargoes into the United States of garments from a foreign country such as China, with the attendant difficulties and delays in United States customs. I know from my own work that in mid-2005, the United States imposed quotas in imports from China, effectively embargoing shipments from China of garments made in China and tying them up in customs.

Import quota limitations and embargos are not something that a company can do anything about when imposed; they are something concerning which a buyer and

seller need to communicate and cooperate.

Willett Deposition Exhibit 5 was an exchange of e-mail between, primarily, Danny Fodiman and Laura Willett in early to mid-October 2005 (bearing numbers P 00281-00287). Danny Fodiman states, among other things, in his October 17, 2005 e-mail that: "Not only am I having problems with China but the entire market is as I deal with many other retailers. As for customs we send someone there everyday. Every effort has been made to communicate with your staff. At tremendous amounts of money and effort we have done everything humanly possible to do the right thing." (Willett Deposition Exhibit 5, P 00282.) Yet, while Laura Willett seems in her October 18, 2005 e-mail to concede that Great White Bear was doing "everything in [its] power" to deal with "the China embargo and customs delays," she makes clear that Mervyns may not proceed in buying "R for Rampage" from Great White Bear. (Willett Deposition Exhibit 5, P 00281.) Assuming the truth of what Danny Fodiman stated in his e-mail for the purpose of this written report outlining expert testimony, then what Danny Fodiman describes is the good faith conduct of a company coping with what was a market-wide problem and does not seem in my opinion to be a sufficient occasion for Mervyns's terminating what in my opinion is a contractual commitment with Great White Bear.

That Michael Wallen, the Mervyns General Merchandise Manager, did not

recall the China embargo and resulting customs delays in 2005, was not in communication with Great White Bear concerning shipments and did not recall e-mails between Great White Bear and Mervyns regarding shipment issues (pp. 4, 37-38, 46) made his testimony on this matter not something that, in my opinion and from my experience, I would consider reliable for assessing the situation with respect to the ordering, production, shipping and delivery process as it worked in this case.

**Quality of Garments.** The quality of garments is a far more serious issue because while there may be problems in the course of the ordering, production, shipping and delivery process of the garments, once the garments are in the United States and available for delivery to the buyer, they need to conform to the expected quality for sale to the ultimate customer in the general public. I did not see anything in what I read in the Complaint and Answer or in the deposition testimony and exhibits that indicated a problem in the quality of the "R for Rampage" garments sold by Great White Bear to Mervyns.

**Dated:  January 17, 2008**

Laurence P. Lazar

-15-

Exhibit G

50) 01|21|08
Ntm

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GREAT WHITE BEAR, LLC                          |
                                               |   06 Civ. 13358 (RMB)(FM)
                              Plaintiff,        |
       -against-                                |
                                               |
MERVYNS, LLC                                    |
                                               |
                              Defendant.        |
-------------------------------------------------------------x


### EXPERT REPORT
### OF STEPHEN J. RANKEL

This is a written report by the undersigned, Stephen J. Rankel, in compliance with what I have been advised are the requirements with respect to expert testimony in federal court. I address the damages suffered by Great White Bear, LLC, resulting from Mervyns.

My report is in the following three exhibits. Exhibit A contains my credentials. Exhibit is my recap of damages with Mervyns. Exhibit C contains the financial history of Great White Bear, LLC.

All of the information contained in this report was abstracted from Great White Bear, LLC financial records and documents.

Stephen J. Rankel, CPA                    1/21/08
                                          Date

Exhibit A

My credentials are as follows:

College – Baruch College, January 1980

Certified Public Accountant – New York State, November 1983

Work Experience – Weinick Sanders & Co., LLP – changed name to Weinick Sanders Leventhal & Co., LLP in July 1997. Started with this firm in April 1980, as a staff accountant. From September 1984 to March 1985 worked as a CFO for a client of the firm, returned to Weinick Sanders & Co., LLP in March 1985. Made Partner in 1987, Executive Partner in 1992 and Managing Partner of the firm in 1996. This firm specialized in the Apparel and Textile Industry with myself having over 25 years of experience in this field.

In August 2005, Weinick Sanders Leventhal & Co., LLP split up and four Partners including myself joined Citrin Cooperman & Company, LLP which I am an Executive Partner of the firm.

I am a member of the New York State Society of Certified Public Accountants, as well as a member of the American Institute of Certified Public Accountants.

Exhibit B

**Great White Bear LLC (Plaintiff) against
Mervyns, LLC Defendant**

Re: Claims against Mervyns

Recap of Damages

| Reference# | | |
|---|---|---|
| | Projected Losses | |
| 1 | Loss of Orders | $3,760,000 |
| | | |
| | Actual Losses | |
| 2 | Royalty Agreement (Rampage) | $ 288,000 |
| 3 | Returns and cancellations of orders by Mervyns | 250,000 |
| 4 | Chargebacks not justified | 225,000 |
| 5 | Samples & Development Costs | 95,000 |
| 6 | Additional Employees Time and Effort | 370,000 |
| 7 | Interest | 40,000 |
| 8 | Travel | 12,000 |
| 9 | Loss Opportunity Costs | 700,000 |
| 10 | Showroom Expenses | 400,000 |
| 11 | Overseas Deposits | 494,000 |
| | Total Actual Losses | 2,874,000 |
| | | |
| | Total Claim | $6,634,000 |

Reference #
1                          Projected Losses

       Mervyns committed to a $13 million program at cost allowing for a 10% deviation down (or 11.7 million) over an eighteen month period. Mervyn's placed $2.3 million in orders with the Company, so using the conservative approach of $11.7 million (allowing for 10% deviation) the Company has an open order for $9.4 million of merchandise.

       Based on Mervyns not giving GWB the remaining $9.4 million in orders, the Company sustained a loss as follows:

| | |
|---|---|
| Loss Sales | $9,400,000 |
| Gross Profit (%) | 40% |
| Gross Profit ($) | $3,760,000 |

The Company loss $3,760,000 gross profit on this agreement.

Reference #

Actual Losses

2

Royalty Payments

Payments made to Rampage for the exclusive use of the Rampage name/label in sportswear that would be exclusively sold only at Mervyns. GWB made a settlement in royalty agreement with Rampage for $288,000.

3

Returns and Cancellations

Mervyns returned merchandise and canceled orders of merchandise that was in GWB's warehouse for no valid reason. GWB had to subsequently sell off this inventory in a secondary market for a substantial loss and certain inventory was abandoned. The loss is $250,000.

4

Chargebacks

Mervyns made unauthorized deductions when paying GWB's invoices. These deductions were for and not authorized by GWB and there was no basis for these chargebacks/deductions of $225,000. These deductions were taken when GWB invoices were paid to Israel Discount Bank Factors (IDB Factor) which purchased the receivables at the time of the shipment and loaned GWB funds to operate and pay for the merchandise prior to being paid by Mervyns.

5

Samples and Development Costs

GWB was required to create a new sportswear line for Mervyns because of exclusive license of "Rampage Label" in the garments. The costs incurred by GWB was (i) purchasing and making samples and (ii) development costs (patterns, sourcing etc.) These costs/expenses totaled $95,000.

6

Additional Employees Time and Effort

GWB started in business in 2003 and had a base core of customers. The Mervyns business was incremental business that required the Company to hire additional help such as a designer, pattern maker, sales support and clerical help. In addition there were employees presently working for GWB where their efforts were placed on Mervyn's business. The additional expenses of $370,000 include salary, payroll taxes (fringes) and medical insurance.

7

Interest

GWB was financed by IDB Factors which loaned the Company funds. The Company additional costs for inventory, of merchandise that was not shipped, or returned, or the invoices were not fully paid because of unexplained deductions. An estimate of the additional charges were $40,000 based on the factor charging GWB 12% on all advances/loans.

8

Travel

GWB incurred expenses of $12,000 traveling overseas to suppliers as well as trips to Mervyns.

9

Loss Opportunity Cost

GWB had a core customer base of $8,000,000 which excluded Mervyns. To prioritize the customers GWB placed priority on Mervyns which resulted in a loss of 2 customers (Charming and Cato's). This merchandise was delivered late and GWB incurred substantial losses on the merchandise.

10          <u>Showroom</u>    -
            With the growth of business with Mervyns, GWB entered into a new
lease for its space (showroom, office, design pattern making and sample room) the new lease
called for double the rent that GWB was paying prior to the agreement. In addition to the
rent, GWB incurred additional costs in carrying the showroom such as telephone, moving,
stationary, etc. These costs are approximately $400,000.

11          <u>Overseas Deposits</u>
            Due to the amount of business being generated by GWB, the
Company was required to make deposits (advances) to overseas suppliers/makers in order to
make the garments. The overseas suppliers (mainly new suppliers) would not do business
unless there were deposits/advances made. The cancellation of Mervyns order cost the
Company $494,000 in lost deposits.

Exhibit C

### History of Great White Bear LLC

The LLC was formed as a Limited Liability Company on April 24, 2003 and began business on May 12, 2004.

| | Equity Contributed | Loans to LLC | Sales | Profit (Loss) |
|---|---|---|---|---|
| May 12, 2003 to December 31, 2003 | 200,000 | 300,000 | $9,281,000 | 247,000 |
| For Year Ended December 31, 2004 | -- | 250,000 | 8,464,000 | 13,000 |
| For Year ended December 31, 2005 | -- | 100,000 | 8,619,000 | (1,399,000) |
| From January 1, 2006 to September 1, 2006 | -- | 578,000 | 3,191,000 | (1,286,000) |
| Subsequent to September 1, 2006 | 625,000 (A) | | | |

Based on the financial information above, GWB's financial stability declined in 2005, the year they started the Mervyns Program. In 2005, GWB had to make advances to overseas suppliers in 2005 to meet possible doubling of volume. This created outstanding advances to suppliers of $674,000 at June 30, 2005, $603,000 at September 30, 2005 and $220,000 at December 31, 2005 because of write offs in 2005.

The factor (IDB factors) required that GWB put more funds into the business which they did and in August 2006, the factor stopped advancing GWB funds which forced GWB to hire a bankruptcy attorney to negotiate a settlement on the over advance at the factor. Sanford Fodiman had to guarantee a payment personally of $625,000 payable over 2 years to obtain all releases from the factor. This $625,000 is not reflected as part of the loans/equity of GWB.

(A)  Amount that the factor required Sanford Fodiman to pay based on his personal guarantee at the factor.

Exhibit H



ORRICK, HERRINGTON & SUTCLIFFE LLP
666 ゛FTH AVENUE
NEW YORK, NY 10103-0001
tel 2:2-506-5000
fax 212-506-5151
WWW.ORRICK.COM

February 6, 2008

Lisa T. Simpson
(212) 506-3767
lsimpson@orrick.com

**BY FACSIMILE**

Philip A. Byler
Nesenoff & Miltenberg, LLP
363 Seventh Avenue -- Fifth Floor
New York, NY 10001

Re:    <u>Great White Bear, LLC v. Mervyn's, LLC (06 Civ. 13358 (RMB)(FM)</u>

Dear Phil:

We have reviewed the expert reports of Stephen J. Rankel and Laurence P. Lazar, submitted by Great White Bear LLC ("GWB") and served on Mervyn's LLC ("Mervyn's") on January 21, 2008.  Both reports fail to meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).

Rule 26(a)(2)(B) requires that each testifying expert's report contain a complete statement of all the opinions of the witness and the basis and reasons for those opinions.  The report must disclose "the data or other information considered by the witness" in reaching his opinion and "any exhibits that will be used to summarize or support" his opinions.  In addition, Rule 26(a)(2)((B) requires that each witness list all publications authored by him within the last ten years, all cases in which the witness has testified as an expert during the previous four years and a statement of the expert's compensation.  The reports provided by GWB do not satisfy these requirements.

Specifically, the expert report of Stephen J. Rankel is woefully deficient.  Rather than providing a complete statement of the basis and reasons for his stated opinion or specifically identifying the data or information considered in preparing his report, Mr. Rankel indicates that "[a]ll of the information contained in this report was abstracted from Great White Bear, LLC financial records and documents."  This general reference to GWB's financial records is not sufficient.  Mr. Frankel is required to identify specifically the documents or other information on which he relies.  Further, since he did not disclose any documents other than the exhibits attached to his report in accordance with the requirement that he disclose "any exhibit that he will use to support his opinion," we assume that those attachments will be the only exhibits on which Mr. Frankel seeks to rely at trial.

Finally, Mr. Rankel fails to list of all publications authored by him within the proceeding ten years (if there are none, please so state), fails to list any other cases in which he has



# ORRICK

Philip A. Byler
February 6, 2008
Page 2

testified as an expert at trial or by deposition within the preceding four years (if there are none, please so state), and fails to indicate the compensation to be paid for his study and testimony in this case.

Mr. Lazar's report similarly fails to list any publications authored by Mr. Lazar within the proceeding ten years and any other cases in which he has testified as an expert within the preceding four years, and fails to state the compensation to be paid for his study and testimony.

We request that GWB immediately remedy these deficiencies and provide reports in conformity with the requirements of Rule 26 so that Mervyn's expert witnesses can proceed to prepare their rebuttal reports.

Sincerely,

Lisa T. Simpson

Exhibit I

NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

**February 11, 2008**

**By Telecopier & Regular U.S. Mail**
Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe, LLP.
666 Fifth Avenue
New York, New York 10103

Re:    ***Great White Bear v. Mervyns, LLC,***
        **Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)**

Dear Lisa:

I have your letter dated February 6, 2008, requesting further information concerning Plaintiff Great White Bear's experts Laurence P. Lazar and Stephen J. Rankel. I will put this information in supplemental statements once people get back into town.

Laurence P. Lazar has not published anything in the last ten years, has not testified as an expert in the last four years and is not receiving compensation. His opinions and the bases and reasons for those opinions are stated in his expert report. As reflected in his expert report, he was provided the pleadings, the depositions and the deposition exhibits in this case.

Stephen J. Rankel has not published anything in the last ten years, has not testified as an expert in the last four years and is not receiving a special fee or other form of compensation for his testimony but rather is billing the company for his time at his normal rate ($400 an hour) that is standard in the industry. His opinions and the bases and reasons for those opinions are stated in his expert report; he can further itemize the categories of documents for each item of identified damage. As reflected in his expert report, he has knowledge of the financial records of the company.

I am still working on responding to your letter dated January 30, 2008, which has taken much, much longer than expected. Politics is more interesting right now.

Very truly yours,
NESENOFF & MILTENBERG, LLP

By:    _Phil A Byler Esq._
        Philip A. Byler, Esq.

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              1486
RECIPIENT ADDRESS     12125065151
DESTINATION ID
ST. TIME              02/13 12:07
TIME USE              01'00
PAGES SENT            2
RESULT                OK
```

# NESENOFF & MILTENBERG, LLP

### 363 SEVENTH AVENUE
### NEW YORK, NEW YORK 10001

## FACSIMILE COVER LETTER

****WARNING**** THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THE MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POST OFFICE.

OUR FAX MACHINE RECEIVES CALLS BETWEEN 9:00 A.M. AND 5:30 P.M. IF THE TRANSMITTAL IS UNSATISFACTORY, PLEASE CALL US IMMEDIATELY.

NOTICE: PURSUANT TO CPLR RULE 2103(B)(5), THE ELECTRONIC TRANSMITTAL TELEPHONE NUMBER OF THIS OFFICE HAS NOT BEEN DESIGNATED AS A PROPER NUMBER FOR THE SERVICE OF DOCUMENTS OR PAPERS IN THIS ACTION OR PROCEEDING. SERVICE SHOULD BE ACCOMPLISHED PURSUANT TO ANY OTHER PARAGRAPH OF CPLR RULE 2103(B).

### PRIVILEGED AND CONFIDENTIAL

| | | | |
|---|---|---|---|
| **Date:** | **February 13, 2008** | | **2 Page(s) (Including This Sheet)** |

| | | |
|---|---|---|
| **SEND TO:** | **Name:** | **Lisa T. Simpson, Esq.** |
| | | *Orrick, Herrington & Sutcliffe, LLP.* |
| | **Facsimile No.:** | **212.506.5151** |
| | **Telephone No.:** | **212.506.3767** |

| | | |
|---|---|---|
| **FROM:** | **Name:** | **Philip A. Byler, Esq.** |

## COMMENTS TO RECEIVER:

Re: Great White Bear, LLC. v. Mervyns, LLC.

# NESENOFF & MILTENBERG, LLP
### 363 SEVENTH AVENUE
### NEW YORK, NEW YORK 10001

## FACSIMILE COVER LETTER

****WARNING**** THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THE MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POST OFFICE.

OUR FAX MACHINE RECEIVES CALLS BETWEEN 9:00 A.M. AND 5:30 P.M. IF THE TRANSMITTAL IS UNSATISFACTORY, PLEASE CALL US IMMEDIATELY.

NOTICE: PURSUANT TO CPLR RULE 2103(B)(5), THE ELECTRONIC TRANSMITTAL TELEPHONE NUMBER OF THIS OFFICE HAS NOT BEEN DESIGNATED AS A PROPER NUMBER FOR THE SERVICE OF DOCUMENTS OR PAPERS IN THIS ACTION OR PROCEEDING. SERVICE SHOULD BE ACCOMPLISHED PURSUANT TO ANY OTHER PARAGRAPH OF CPLR RULE 2103(B).

## PRIVILEGED AND CONFIDENTIAL

| | | |
|---|---|---|
| **Date:** | **February 13, 2008** | **2 Page(s) (Including This Sheet)** |

| | | |
|---|---|---|
| **SEND TO:** | **Name:** | **Lisa T. Simpson, Esq.** |
| | | *Orrick, Herrington & Sutcliffe, LLP.* |
| | **Facsimile No.:** | **212.506.5151** |
| | **Telephone No.:** | **212.506.3767** |

| | | |
|---|---|---|
| **FROM:** | **Name:** | **Philip A. Byler, Esq.** |

## COMMENTS TO RECEIVER:

Re: <u>Great White Bear, LLC. v. Mervyns, LLC.</u>

Please see the enclosed.

**Please contact our office at 212.736.4500 if there are any problems with this transmission.**

Exhibit J

NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

February 20, 2008

**By Telecopier & Regular U.S. Mail**
Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe, LLP.
666 Fifth Avenue
New York, New York 10103

Re:   *Great White Bear v. Mervyns, LLC,*
      **Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)**

Dear Lisa:

Per what I have told you, enclosed is the supplement to the expert report of Laurence P. Lazar. I expect to have a supplement to the expert report of Stephen J. Rankel shortly and will immediately produce it to you.

Very truly yours,
**NESENOFF & MILTENBERG, LLP**

By: _____
      Philip A. Byler, Esq.

*(51) 02/20/08*
*N+m*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

GREAT WHITE BEAR, LLC,

               Plaintiff,

   -against -

MERVYNS, LLC,

               Defendant.

------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)

## SUPPLEMENT TO
## EXPERT REPORT OF LAURENCE P. LAZAR

This is a supplement to the written report by the undersigned, Laurence P. Lazar, in compliance with what I have been advised are the requirements with respect to expert testimony in federal court.

I have not published anything in the last ten years, have not testified as an expert in the last four years and am not receiving compensation. My opinions and the bases and reasons for those opinions are stated in my expert report dated January 17, 2008. As reflected in my expert report dated January 17, 2008, I was provided what were represented to me were the pleadings, the depositions and the deposition exhibits in this case, and I make reference to certain points to those documents in my report.

Dated: **February 20, 2008**

Laurence P. Lazar

Exhibit K



**ORRICK**



RECEIVED
FEB 27 2008
FRANK MAAS
U.S. MAGISTRATE JUDGE



MEMO ENDORSED

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NEW YORK 10103-0001

*tel* +1-212-506-5000
*fax* +1-212-506-5151

WWW.ORRICK.COM

February 21, 2008

*BY HAND*

Lisa T. Simpson
(212) 506-3767
lsimpson@orrick.com

The Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 740
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/31/08

Re:    *Great White Bear, LLC v. Mervyns, LLC* (06 CV 13358)

Dear Magistrate Judge Maas:

We represent Defendant Mervyn's LLC ("Mervyn's") in the above-referenced matter. On January 21, 2008, pursuant to Your Honor's amended Order, plaintiff Great White Bear, LLC ("GWB") served two expert witness reports on Defendant, one by Larry Lazar, an industry witness, and the other a damages report by Stephen Rankel. Both of Plaintiff's reports failed to meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).

We write to request (1) a firm date for the production of Plaintiff's promised supplemental report from its damages witness, Mr. Rankel; and (2) an extension to a reasonable date thereafter (Defendant would propose 20 days) for Defendant to serve its expert reports.

On February 6, 2008, Defendant sent a letter to counsel for GWB identifying the deficiencies in Plaintiff's expert reports and requesting that Plaintiff immediately provide reports in conformity with the requirement of Rule 26 so that Mervyn's expert witnesses could proceed to prepare their responsive reports. That letter is attached hereto as Exhibit A. Plaintiff's counsel responded by letter dated February 11, 2008 (but faxed February 13), attached as Exhibit B hereto, informally providing some of the information requested and agreeing to provide supplemental reports. By letter dated February 19, attached hereto as Exhibit C, Defendant indicated that it would await the promised supplemental reports so that Defendant's expert witnesses could perform a meaningful analysis and response. Defendant further requested that Plaintiff provide the date on which it would produce the supplemental reports and requested that Plaintiff agree to a reasonable date thereafter for Defendant to submit its expert witness reports. Thereafter, the parties engaged in the e-mail traffic attached as Exhibit D, and Plaintiff thereafter provided, on February 20, 2008, a supplemental report for one of its two expert witnesses, Larry Lazar. Plaintiff promised to provide the supplemental report of its damages witness "shortly."

O

ORRICK

*[handwritten at top:]* Ms. Simpson's objections do not appear to be mere technicalities, as suggested in Mr. Byler's 2/25/08 letter. Indeed, she indicates that plaintiff's financial expert has not sufficiently identified the materials upon which he relies — information more important than a list of prior cases and publications. In any event, complying initially might have obviated Mervyn's objections.

Great White Bear is directed to complete its expert disclosures by March 14, 2008; defendant Mervyn's reports shall be due by April 4, 2008 (together with all

The Honorable Frank Maas
February 21, 2008
Page 2

Defendant's expert witness reports are currently due next Wednesday, February 27, 2008, and Defendant has yet to receive a complete report pursuant to Rule 26 from Plaintiff's *[handwritten: the other materials]* damages witness. Defendant's expert witnesses, and particularly Defendant's financial expert *[handwritten: required by Quen 2]* witness, cannot meaningfully analyze or respond to Plaintiff's damages report in its current form. *[handwritten: (a)(2); The]* Plaintiff's damages report is attached hereto as Exhibit E. As is quickly apparent from a review *[handwritten: PTC shall]* of the report, it is lacking numerous of the requirements of Rule 26. Most noticeably, the *[handwritten: be held (by]* damages figures provided are completely unsupported by any documentation, yet Mr. Rankel *[handwritten: telephone)]* states that the information "was abstracted from Great White Bear, LLC financial records and *[handwritten: as previously]* documents." This general reference to financial records is not sufficient. If documents exist *[handwritten: scheduled]* which support Mr. Rankel's figures, and he has relied on those documents in forming his *[handwritten: on March 31,]* opinion, Defendant is entitled to know what those documents are with specificity. *[handwritten: 2008 at 10 AM.]*

Defendant therefore requests a date certain for the production of Plaintiff's *[handwritten: Fr Maas,]* supplemental damages report and an extension of the due date for Defendant's expert witness *[handwritten: USMJ,]* reports[1] to a date 20 days following the production of Plaintiff's supplemental report (and that *[handwritten: 2/25/08]* the remainder of the expert witness deadlines be adjusted accordingly).

Thank you for your attention to this matter.

Respectfully submitted,

*[signature:]* Lisa Simpson /lf

Lisa T. Simpson

cc:    Philip A. Byler, Esq. (By Hand)
       Counsel for Great White Bear, LLC

---

[1]    Since it is expected that Defendant's industry witness also can speak to certain aspects of Plaintiff's damages report, Defendant requests that the deadline for all of Defendant's expert reports be extended so that Defendant's expert witnesses can each sufficiently review and analyze the supplemental damage report expected from Plaintiff.

Exhibit L

NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

February 28, 2008

**BY OVERNIGHT**
Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe, LLP.
666 Fifth Avenue
New York, New York 10103

Re:   *Great White Bear v. Mervyns, LLC,*
       **Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)**

Dear Lisa:

Enclosed is the supplement to the expert report of Stephen J. Rankel that I had expected to get to you a week ago.

As I have already supplied to you a supplement to the expert report of Laurence P. Lazar and now am supplying a supplement to the expert report of Stephen J. Rankel and the last date for me to provide supplements is March 14, a little over two weeks away, I think that it is only fair for you NOW to state at this point whether you concede that I have complied with the requirement as to supplements and if not, in what specific respect or respects.

If you have any questions or problems with respect to the foregoing, please raise them with me.

Very truly yours,
**NESENOFF & MILTENBERG, LLP**

By:   Philip A. Byler, Esq.

*52* 02/20/08
N+m

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GREAT WHITE BEAR, LLC

                    Plaintiff,

    -against-

MERVYNS, LLC

                    Defendant.

-------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)

## SUPPLEMENT TO
## <u>EXPERT REPORT OF STEPHEN J. RANKEL</u>

This is a supplement to the written report by the undersigned, Stephen J. Rankel, in compliance with what I have been advised are the requirements with respect to expert testimony in federal court.

I have not published anything in the last ten years, have not testified as an expert in the last four years and am not receiving a special fee or other form of compensation for my testimony but rather am billing the company for my time at my normal rate ($400 an hour) that is standard in the industry.

My opinions and the bases and reasons for those opinions are stated in my expert report dated January 21, 2008. I can further itemize the categories of documents for each item of identified damage and do the attached Exhibit D. As reflected in my expert report, I have knowledge of the financial records of the company.

Dated: February 20, 2008

Stephen J. Rankel, C.P.A.

Exhibit D

Reference #

## Actual Losses

2

### Royalty Payments

Payments made to Rampage for the exclusive use of the Rampage name/label in sportswear that would be exclusively sold only at Mervyns. GWB made a settlement in royalty agreement with Rampage for $288,000.

3

### Returns and Cancellations

Mervyns returned merchandise and canceled orders of merchandise that was in GWB's warehouse for no valid reason. GWB had to subsequently sell off this inventory in a secondary market for a substantial loss and certain inventory was abandoned. The loss is $250,000.

4

### Chargebacks

Mervyns made unauthorized deductions when paying GWB's invoices. These deductions were for and not authorized by GWB and there was no basis for these chargebacks/deductions of $225,000. These deductions were taken when GWB invoices were paid to Israel Discount Bank Factors (IDB Factor) which purchased the receivables at the time of the shipment and loaned GWB funds to operate and pay for the merchandise prior to being paid by Mervyns.

5

### Samples and Development Costs

GWB was required to create a new sportswear line for Mervyns because of exclusive license of "Rampage Label" in the garments. The costs incurred by GWB was (i) purchasing and making samples and (ii) development costs (patterns, sourcing etc.) These costs/expenses totaled $95,000.

6

### Additional Employees Time and Effort

GWB started in business in 2003 and had a base core of customers. The Mervyns business was incremental business that required the Company to hire additional help such as a designer, pattern maker, sales support and clerical help. In addition there were employees presently working for GWB where their efforts were placed on Mervyn's business. The additional expenses of $370,000 include salary, payroll taxes (fringes) and medical insurance.

7

### Interest

GWB was financed by IDB Factors which loaned the Company funds. The Company additional costs for inventory, of merchandise that was not shipped, or returned, or the invoices were not fully paid because of unexplained deductions. An estimate of the additional charges were $40,000 based on the factor charging GWB 12% on all advances/loans.

8

### Travel

GWB incurred expenses of $12,000 traveling overseas to suppliers as well as trips to Mervyns.

9

### Loss Opportunity Cost

GWB had a core customer base of $8,000,000 which excluded Mervyns. To prioritize the customers GWB placed priority on Mervyns which resulted in a loss of 2 customers (Charming and Cato's). This merchandise was delivered late and GWB incurred substantial losses on the merchandise.

10            <u>Showroom</u>

           With the growth of business with Mervyns, GWB entered into a new lease for its space (showroom, office, design pattern making and sample room) the new lease called for double the rent that GWB was paying prior to the agreement. In addition to the rent, GWB incurred additional costs in carrying the showroom such as telephone, moving, stationary, etc. These costs are approximately $400,000.

11            <u>Overseas Deposits</u>

           Due to the amount of business being generated by GWB, the Company was required to make deposits (advances) to overseas suppliers/makers in order to make the garments. The overseas suppliers (mainly new suppliers) would not do business unless there were deposits/advances made. The cancellation of Mervyns order cost the Company $494,000 in lost deposits.

Exhibit M



ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001

*tel* 212-506-5000
*fax* 212-506-5151

WWW.ORRICK.COM

March 6, 2008

Lisa T. Simpson
(212) 506-3767
lsimpson@orrick.com

*BY FACSIMILE*

Philip A. Byler
Nesenoff & Miltenberg, LLP
363 Seventh Avenue -- Fifth Floor
New York, NY 10001

Re:     Great White Bear, LLC v. Mervyn's, LLC (06 Civ. 13358 (RMB)(FM))

Dear Phil:

We are in receipt of the supplement report of Stephen Rankel, sent by cover letter dated February 28, 2008. Mr. Rankel's report remains deficient and fails to satisfy the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) for the reasons previously set forth in my correspondence with you and with Magistrate Judge Maas and as set forth in the Court's February 25, 2008 Order.

Sincerely,

Lisa T. Simpson



# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001

*tel* 212-506-5000
*fax* 212-506-5151

WWW.ORRICK.COM

## FAX TRANSMISSION

DATE    March 6, 2008

NO. OF PAGES
(INCLUDING COVER SHEET)    2

**FROM**

| Name | Tel |
|------|-----|
| Lisa Simpson, Esq. | (212) 506-3767 |

**TO**

| name | company/firm | Tel | Fax |
|------|-------------|-----|-----|
| Philip A. Byler, Esq. | Nesenoff & Miltenberg, LLP | 212-736-4500 | 212-736-2260 |

RE:    <u>Great White Bear, LLC. v. Mervyns, LLC</u>

**MESSAGE**

C-M-A    1339/2005 (5104)                                ORIGINALS TO FOLLOW BY MAIL?

IF YOU DO NOT RECEIVE ALL PAGES, PLEASE CALL SENDER'S TELEPHONE NUMBER AS SOON AS POSSIBLE.

*notice to recipient*

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS INTENDED TO BE SENT ONLY TO THE STATED ADDRESSEE OF THE TRANSMISSION. IT MAY BE PROTECTED FROM UNAUTHORIZED USE AND DISSEMINATION BY THE ATTORNEY-CLIENT PRIVILEGE, THE ATTORNEY WORK-PRODUCT DOCTRINE, OR ANY OTHER APPLICABLE PRIVILEGE. IF YOU ARE NOT THE STATED ADDRESSEE, YOUR RECEIPT OF THIS TRANSMISSION WAS UNINTENDED AND INADVERTENT, AND YOU ARE HEREBY NOTIFIED THAT ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. YOU ARE ALSO ASKED TO NOTIFY US IMMEDIATELY BY TELEPHONE AND TO RETURN THE ORIGINAL DOCUMENT TO US IMMEDIATELY BY MAIL AT THE ADDRESS ABOVE. THANK YOU IN ADVANCE FOR YOUR COOPERATION.

Exhibit N

NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

March 14, 2008

**BY OVERNIGHT**
Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe, LLP.
666 Fifth Avenue
New York, New York 10103

Re:    *Great White Bear v. Mervyns, LLC,*
       __Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)__

Dear Lisa:

Enclosed is a second supplement to the expert report of Stephen J. Rankel. With this supplementation, there can be no reasonably raised issue about the compliance with the Rankel Report with Rule 26(a)(B). The report does contain: (i) a complete statement of all opinions that the witness will express and the basis and reasons for them; (ii) the data considered by the expert witness; (iii) the exhibits that summarize his testimony; (iv) the witness's qualifications, including a statement about publications; (v) a statement concerning prior expert testimony; and (vi) a statement on compensation. The enclosed second supplementation provides an amplification as to each item of damage in the Exhibit B Chart (which already had footnotes).

If you have any questions or problems with respect to the foregoing, please raise them with me.

Very truly yours,
**NESENOFF & MILTENBERG, LLP**

By: _____
        Philip A. Byler, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GREAT WHITE BEAR, LLC,

                       Plaintiff,

    -against -

MERVYNS, LLC,

                       Defendant.

-------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)

# SECOND SUPPLEMENT TO
# EXPERT REPORT OF STEPHEN J. RANKEL

This is the second supplement to the written report by the undersigned, Stephen J. Rankel.  Attached as Exhibit E is an amplification of the information providing the bases for my opinions in my expert report.

Dated: March 13, 2008

Stephen J. Rankel, ,C.P.A.

Exhibit E

<u>Exhibit E</u>

Amplification of basis of items 1 through 11 in Exhibit B

From Exhibit B
<u>Reference A</u>

1) <u>Projected Loss</u> – GWB provided emails, spreadsheets and documentation on the styles purchased by Mervyns as well as the costs to manufacture those styles. In addition, once the documents were presented, calculations were performed to calculate the loss.

2) <u>Royalty Payments</u> – GWB had two agreements for review, the original agreement and the termination agreement. To show that there was a royalty agreement with Rampage that Mervyns had the exclusive right to the name. The company provided cancelled checks to back up the loss.

3) <u>Returns and Cancellations</u> – GWB provided cancellation letters, emails on cancellations and garments returned from Mervyns. The inventory was specifically purchased for Mervyns and was sold off to third parties at below the cost of the garment.

4) <u>Chargebacks</u> – GWB provided the factor statements which documented all of the deductions that were taken by Mervyns when they were paying GWB's invoices. There were some back up documents from Mervyns verifying these deductions.

5) <u>Sample and Development Costs</u> – GWB had to create a new line for Mervyns since they had the exclusive rights of Rampage name for sportswear. These styles had to now and different any other styles in GWB's line. The Company had to buy and make samples which they are invoices.

6) <u>Additional Employees Time and Efforts</u> – To start up a new line for Mervyns, GWB had to hire designers, pattern makers, sample hands, production, admin and sales help. Some of the people were new hires and other people were taken from other divisions within GWB. The other divisions sales volume dropped because of the focus on Mervyns.

1

7) <u>Interest</u> – GWB as well as any company that is starting up a new division needs capital as in the case of GWB. They borrowed funds from a factor and they incurred interest charges. The financing was for developed costs, people travel, cost to carry inventory and to pay suppliers.

8) <u>Travel</u> – GWB had to travel overseas to review the foreign factories that were producing the garments.

9) <u>Loss Opportunity Costs</u> – The Company's main focus was on the development of the Mervyns line. This resulted in GWB losing 2 significant customers and a lot of bad will with other customers because of where the priorities were placed.

10) <u>Showroom</u> – GWB entered into a new lease for there headquarters. The Company had copies of leases and cancelled checks to support the payments.

11) <u>Overseas Deposits</u> – GWB pays various suppliers funds before the delivery of merchandise because of the use of new factories. These suppliers would not do business unless deposits were made.

Exhibit O



ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001
*tel 212-506-5000*
*fax 212-506-5151*
WWW.ORRICK.COM

March 21, 2008

Lisa T. Simpson
(212) 506-3767
lsimpson@orrick.com

*BY HAND*

The Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 740
New York, NY 10007

Re:    *Great White Bear, LLC v. Mervyn's, LLC* (06 CV 13358)

Dear Magistrate Judge Maas:

          We represent Defendant Mervyn's LLC ("Mervyn's") in the above-referenced matter. Pursuant to Local Rule 37.2, we write this letter to request a conference with Your Honor to discuss Mervyn's intention to make a motion pursuant to Federal Rules of Civil Procedure ("FRCP") 37(b)(2) and 37(c) to strike the expert report of Stephen Rankel, the financial witness identified by Plaintiff Great White Bear, LLC ("GWB") and preclude GWB's reliance on that report or any related testimony.

          On January 21, 2008, pursuant to Your Honor's amended Order, plaintiff Great White Bear, LLC ("GWB") served two expert witness reports on Defendant, one by Larry Lazar, an industry witness, and the other a damages report by Stephen Rankel. Mr. Rankel's January 21, 2008 report is attached hereto as Exhibit A.[1]  Both of Plaintiff's reports failed to meet the requirements of FRCP 26(a)(2)(B). On February 25, 2008, in response to Mervyn's' request, Your Honor ordered GWB to provide Mervyn's with "complete" expert reports by March 14, 2008 ("the February 25 Order"). See Exhibit B. On February 29, 2008, GWB provided Mervyn's with a supplemental damages report. See Exhibit C.  Again, this report was insufficient and counsel for GWB was so advised in a letter dated March 6, 2008. See Exhibit D. On March 17, 2008, Mervyn's received GWB's second supplemental damages report by Mr. Rankel. See Exhibit E. GWB's second supplemental report still fails to comply not only with FRCP 26 but also with Your Honor's February 25 Order. Furthermore, the report's deficiencies make Defendant's tasks of preparing a meaningful rebuttal damages report and effectively deposing Mr. Rankel impossible.

          As noted in Defendant's February 21, 2008 letter to Your Honor (see Exhibit B), the damages figures provided in the now multiple versions of Mr. Rankel's report are entirely

---

[1] Mervyn's does not here raise the sufficiency of GWB's FRCP 26 expert report for GWB's industry expert, Larry Lazar. However, Mervyn's reserves the right to move to exclude Mr. Lazar's opinions following his deposition, if deemed warranted and appropriate at that time.



**ORRICK**

The Honorable Frank Maas
March 21, 2008
Page 2

unsupported by specific citation to any documentation or other data relied on by Mr. Rankel. As such, Mr. Rankel's report continues to lack a requisite element of FRCP 26(a)(2)(B): "the data or other information considered by the witness in forming [his opinions]." For example, Mr. Rankel's second supplemental report includes the following entries:

- "Additional Employees Time and Efforts – To start a new line for Mervyn's, GWB had to hire designers, pattern makers, sample hands, production, admin and sales help. Some of the people were new hires and other people were taken from other divisions within GWB. The other divisions sales volume dropped because of the focus on Mervyns." See Exhibit E hereto, item 6.

  -- Without any indication of the number of employees, the salary paid or any other information relied on by Mr. Rankel, he concludes that this expense is the round number of $370,000 in his initial report. See Exhibit A.

- "Travel - GWB had to travel overseas to review the foreign factories that were producing the garments." See Exhibit E hereto, item 8.

  -- With no reference to any supporting documentation or data, Mr. Rankel concludes that GWB should recover $12,000 for this supposed expense. See Exhibit A.

- "Loss [sic] Opportunity Costs – The Company's main focus was on the development of the Mervyns line. This resulted in GWB losing 2 significant customers and a lot of bad will with other customers because of where the priorities were placed." See Exhibit E hereto, item 9.

  -- Again, without any numerical data or documents evidencing such an amount, Mr. Rankel concludes that GWB had a core customer base of $8,000,000 which excluded Mervyn's and resulted in a loss of $700,000. See Exhibit A.

- "Showroom – GWB entered into a new lease for there [sic] headquarters. The Company had copies of leases and cancelled checks to support the payments." See Exhibit E hereto, item 10.

  -- No cancelled checks for GWB's showroom have been produced and without any indication of terms or payments made, Mr. Rankel concludes that $400,000 should be attributed to Mervyn's for this. See Exhibit A.



**ORRICK**

The Honorable Frank Maas
March 21, 2008
Page 3

- "Overseas Deposits – GWB pays various suppliers funds before the delivery of merchandise because of the use of new factories. These suppliers would not do business unless deposits were made." See Exhibit E hereto, item 11.

  -- Again, there is no reference to any document or data to support the figure of $494,000 arrived at by Mr. Rankel. See Exhibit A.

FRCP 26, as it relates to the disclosures required of expert witnesses, was designed to prevent exactly this situation. Without a clear understanding of the data or information relied upon by Mr. Rankel in performing his damages calculation, a rebuttal damages report by Mervyn's would be an abstract and futile exercise based on assumptions, estimations, and guesses. Moreover, a deposition of Mr. Rankel would likely devolve into Mr. Rankel's inability to identify any document or other data relied on with specificity and would effectively prevent Defendant from questioning Mr. Rankel on that material. This defeats the entire purpose of FRCP 26.

FRCP 37(b)(2)(A) permits the Court to impose sanctions for the failure to comply with a Court order and specifically allows the Court to strike GWB's incomplete report and prohibit GWB from relying on it in any way. Similarly, FRCP 37(c)(1) provides "[i]f a party fails to provide information or identify a witness as required by FRCP 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless" (emphasis added). It further allows for the recovery of expenses, including attorneys' fees.

Since GWB has failed to comply with the Court's February 25 Order, requiring production of complete expert reports, and since GWB has failed to comply with FRCP 26, Defendant respectfully requests a conference to discuss Mervyn's motion pursuant to FRCP 37(b)(2) and 37(c)(1) to exclude and strike Mr. Rankel's report and preclude GWB's reliance on his testimony and for such other relief as the Court deems proper.

Thank you for your attention to this matter.

Respectfully submitted,

Lisa T. Simpson

cc:    Philip A. Byler, Esq. (By Hand)
       Counsel for Great White Bear, LLC

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

GREAT WHITE BEAR, LLC

                    Plaintiff,

       -against-

MERVYNS, LLC

                   Defendant.

-------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)

**EXPERT REPORT
OF STEPHEN J. RANKEL**

This is a written report by the undersigned, Stephen J. Rankel, in compliance with what I have been advised are the requirements with respect to expert testimony in federal court. I address the damages suffered by Great White Bear, LLC, resulting from Mervyns.

My report is in the following three exhibits. Exhibit A contains my credentials. Exhibit is my recap of damages with Mervyns. Exhibit C contains the financial history of Great White Bear, LLC.

All of the information contained in this report was abstracted from Great White Bear, LLC financial records and documents.

Stephen J. Rankel, CPA                     1/21/08
Date

# Exhibit A

My credentials are as follows:

College – Baruch College, January 1980

Certified Public Accountant – New York State, November 1983

Work Experience – Weinick Sanders & Co., LLP – changed name to Weinick Sanders
Leventhal & Co., LLP in July 1997. Started with this firm in April 1980, as a staff
accountant. From September 1984 to March 1985 worked as a CFO for a client of the firm,
returned to Weinick Sanders & Co., LLP in March 1985. Made Partner in 1987, Executive
Partner in 1992 and Managing Partner of the firm in 1996. This firm specialized in the
Apparel and Textile Industry with myself having over 25 years of experience in this field.

In August 2005, Weinick Sanders Leventhal & Co., LLP split up and four Partners including
myself joined Citrin Cooperman & Company, LLP which I am an Executive Partner of the
firm.

I am a member of the New York State Society of Certified Public Accountants, as well as a
member of the American Institute of Certified Public Accountants.

# Exhibit B

**Great White Bear LLC (Plaintiff) against**
**Mervyns, LLC Defendant**

Re: Claims against Mervyns

Recap of Damages

| Reference# | | |
|---|---|---|
| | Projected Losses | |
| 1 | Loss of Orders | $3,760,000 |
| | Actual Losses | |
| 2 | Royalty Agreement (Rampage) | $ 288,000 |
| 3 | Returns and cancellations of orders by Mervyns | 250,000 |
| 4 | Chargebacks not justified | 225,000 |
| 5 | Samples & Development Costs | 95,000 |
| 6 | Additional Employees Time and Effort | 370,000 |
| 7 | Interest | 40,000 |
| 8 | Travel | 12,000 |
| 9 | Loss Opportunity Costs | 700,000 |
| 10 | Showroom Expenses | 400,000 |
| 11 | Overseas Deposits | 494,000 |
| | Total Actual Losses | 2,874,000 |
| | Total Claim | $6,634,000 |

Reference #
1                           Projected Losses

Mervyns committed to a $13 million program at cost allowing for a 10% deviation down (or 11.7 million) over an eighteen month period. Mervyn's placed $2.3 million in orders with the Company, so using the conservative approach of $11.7 million (allowing for 10% deviation) the Company has an open order for $9.4 million of merchandise.

Based on Mervyns not giving GWB the remaining $9.4 million in orders, the Company sustained a loss as follows:

| | |
|---|---|
| Loss Sales | $9,400,000 |
| Gross Profit (%) | 40% |
| Gross Profit ($) | $3,760,000 |

The Company loss $3,760,000 gross profit on this agreement.

Reference #

Actual Losses

2

Royalty Payments
Payments made to Rampage for the exclusive use of the Rampage name/label in sportswear that would be exclusively sold only at Mervyns. GWB made a settlement in royalty agreement with Rampage for $288,000.

3

Returns and Cancellations
Mervyns returned merchandise and canceled orders of merchandise that was in GWB's warehouse for no valid reason. GWB had to subsequently sell off this inventory in a secondary market for a substantial loss and certain inventory was abandoned. The loss is $250,000.

4

Chargebacks
Mervyns made unauthorized deductions when paying GWB's invoices. These deductions were for and not authorized by GWB and there was no basis for these chargebacks/deductions of $225,000. These deductions were taken when GWB invoices were paid to Israel Discount Bank Factors (IDB Factor) which purchased the receivables at the time of the shipment and loaned GWB funds to operate and pay for the merchandise prior to being paid by Mervyns.

5

Samples and Development Costs
GWB was required to create a new sportswear line for Mervyns because of exclusive license of "Rampage Label" in the garments. The costs incurred by GWB was (i) purchasing and making samples and (ii) development costs (patterns, sourcing etc.) These costs/expenses totaled $95,000.

6

Additional Employees Time and Effort
GWB started in business in 2003 and had a base core of customers. The Mervyns business was incremental business that required the Company to hire additional help such as a designer, pattern maker, sales support and clerical help. In addition there were employees presently working for GWB where their efforts were placed on Mervyn's business. The additional expenses of $370,000 include salary, payroll taxes (fringes) and medical insurance.

7

Interest
GWB was financed by IDB Factors which loaned the Company funds. The Company additional costs for inventory, of merchandise that was not shipped, or returned, or the invoices were not fully paid because of unexplained deductions. An estimate of the additional charges were $40,000 based on the factor charging GWB 12% on all advances/loans.

8

Travel
GWB incurred expenses of $12,000 traveling overseas to suppliers as well as trips to Mervyns.

9

Loss Opportunity Cost
GWB had a core customer base of $8,000,000 which excluded Mervyns. To prioritize the customers GWB placed priority on Mervyns which resulted in a loss of 2 customers (Charming and Cato's). This merchandise was delivered late and GWB incurred substantial losses on the merchandise.

10                  <u>Showroom</u>

             With the growth of business with Mervyns, GWB entered into a new lease for its space (showroom, office, design pattern making and sample room) the new lease called for double the rent that GWB was paying prior to the agreement.  In addition to the rent, GWB incurred additional costs in carrying the showroom such as telephone, moving, stationary, etc.  These costs are approximately $400,000.

11                  <u>Overseas Deposits</u>

             Due to the amount of business being generated by GWB, the Company was required to make deposits (advances) to overseas suppliers/makers in order to make the garments.  The overseas suppliers (mainly new suppliers) would not do business unless there were deposits/advances made.  The cancellation of Mervyns order cost the Company $494,000 in lost deposits.

# Exhibit C

## History of Great White Bear LLC

The LLC was formed as a Limited Liability Company on April 24, 2003 and began business on May 12, 2004.

| | Equity Contributed | Loans to LLC | Sales | Profit (Loss) |
|---|---|---|---|---|
| May 12, 2003 to December 31, 2003 | 200,000 | 300,000 | $9,281,000 | 247,000 |
| For Year Ended December 31, 2004 | -- | 250,000 | 8,464,000 | 13,000 |
| For Year ended December 31, 2005 | -- | 100,000 | 8,619,000 | (1,399,000) |
| From January 1, 2006 to September 1, 2006 | -- | 578,000 | 3,191,000 | (1,286,000) |
| Subsequent to September 1, 2006 | | 625,000 (A) | | |

Based on the financial information above, GWB's financial stability declined in 2005, the year they started the Mervyns Program. In 2005, GWB had to make advances to overseas suppliers in 2005 to meet possible doubling of volume. This created outstanding advances to suppliers of $674,000 at June 30, 2005, $603,000 at September 30, 2005 and $220,000 at December 31, 2005 because of write offs in 2005.

The factor (IDB factors) required that GWB put more funds into the business which they did and in August 2006, the factor stopped advancing GWB funds which forced GWB to hire a bankruptcy attorney to negotiate a settlement on the over advance at the factor. Sanford Fodiman had to guarantee a payment personally of $625,000 payable over 2 years to obtain all releases from the factor. This $625,000 is not reflected as part of the loans/equity of GWB.

(A)   Amount that the factor required Sanford Fodiman to pay based on his personal guarantee at the factor.

Exhibit B

02/25/2008 14:47 FAX 2128056724          JUDGE MAAS                        ☒002/003



ORRICK

RECEIVED
FEB 21 2008
FRANK MAAS
U.S. MAGISTRATE JUDGE

MEMO ENDORSED

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
New York, New York 10103-0001
fax +1-212-506-5151
WWW.ORRICK.COM

February 21, 2008

*BY HAND*

Lisa T. Simpson
(212) 506-3767
lsimpson@orrick.com

The Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 740
New York, NY 10007

Re:   *Great White Bear, LLC v. Mervyns, LLC* (06 CV 13358)

Dear Magistrate Judge Maas:

We represent Defendant Mervyn's LLC ("Mervyn's") in the above-referenced matter. On January 21, 2008, pursuant to Your Honor's amended Order, plaintiff Great White Bear, LLC ("GWB") served two expert witness reports on Defendant, one by Larry Lazar, an industry witness, and the other a damages report by Stephen Rankel. Both of Plaintiff's reports failed to meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B).

We write to request (1) a firm date for the production of Plaintiff's promised supplemental report from its damages witness, Mr. Rankel; and (2) an extension to a reasonable date thereafter (Defendant would propose 20 days) for Defendant to serve its expert reports.

On February 6, 2008, Defendant sent a letter to counsel for GWB identifying the deficiencies in Plaintiff's expert reports and requesting that Plaintiff immediately provide reports in conformity with the requirement of Rule 26 so that Mervyn's expert witnesses could proceed to prepare their responsive reports. That letter is attached hereto as Exhibit A. Plaintiff's counsel responded by letter dated February 11, 2008 (but faxed February 13), attached as Exhibit B hereto, informally providing some of the information requested and agreeing to provide supplemental reports. By letter dated February 19, attached hereto as Exhibit C, Defendant indicated that it would await the promised supplemental reports so that Defendant's expert witnesses could perform a meaningful analysis and response. Defendant further requested that Plaintiff provide the date on which it would produce the supplemental reports and requested that Plaintiff agree to a reasonable date thereafter for Defendant to submit its expert witness reports. Thereafter, the parties engaged in the e-mail traffic attached as Exhibit D, and Plaintiff thereafter provided, on February 20, 2008, a supplemental report for one of its two expert witnesses, Larry Lazar. Plaintiff promised to provide the supplemental report of its damages witness "shortly."

*[handwritten at top:]* Ms. Simpson's objections do not appear to be mere technicalities, as suggested in Mr. Byler's 2/25/08 letter. Indeed, she indicates that plaintiff's financial expert has not sufficiently identified the materials upon which he relies — information more important than a list of prior cases and publications.

○
**ORRICK**

The Honorable Frank Maas *[handwritten:]* In any event, complying initially might have
February 21, 2008    obviated Mervyn's objections.
Page 2

*[handwritten:]* Great White Bear is directed to complete its expert disclosures by March 14, 2008; defendant Mervyn's reports shall be due by April 4, 2008 (together with all

Defendant's expert witness reports are currently due next Wednesday, February *[handwritten: the other]* 27, 2008, and Defendant has yet to receive a complete report pursuant to Rule 26 from Plaintiff's *[handwritten: materials]* damages witness. Defendant's expert witnesses, and particularly Defendant's financial expert *[handwritten: by Rule 26]* witness, cannot meaningfully analyze or respond to Plaintiff's damages report in its current form. *[handwritten: (2)(2)); The]* Plaintiff's damages report is attached hereto as Exhibit E. As is quickly apparent from a review *[handwritten: pre shall]* of the report, it is lacking numerous of the requirements of Rule 26. Most noticeably, the *[handwritten: be held (by]* damages figures provided are completely unsupported by any documentation, yet Mr. Rankel *[handwritten: telephone)]* states that the information "was abstracted from Great White Bear, LLC financial records and *[handwritten: as previously]* documents." This general reference to financial records is not sufficient. If documents exist *[handwritten: scheduled]* which support Mr. Rankel's figures, and he has relied on those documents in forming his *[handwritten: on March 31,]* opinion, Defendant is entitled to know what those documents are with specificity. *[handwritten: 2008 at 10 AM.]*

Defendant therefore requests a date certain for the production of Plaintiff's *[handwritten: FMaas,]* supplemental damages report and an extension of the due date for Defendant's expert witness reports[1] to a date 20 days following the production of Plaintiff's supplemental report (and that *[handwritten: USMJ,]* the remainder of the expert witness deadlines be adjusted accordingly). *[handwritten: 2/25/08]*

Thank you for your attention to this matter.

Respectfully submitted,

*Lisa Simpson/jf*

Lisa T. Simpson

cc:    Philip A. Byler, Esq. (By Hand)
       Counsel for Great White Bear, LLC

---

[1]    Since it is expected that Defendant's industry witness also can speak to certain aspects of Plaintiff's damages report, Defendant requests that the deadline for all of Defendant's expert reports be extended so that Defendant's expert witnesses can each sufficiently review and analyze the supplemental damage report expected from Plaintiff.

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

GREAT WHITE BEAR, LLC

                        Plaintiff,

    -against-

MERVYNS, LLC

                        Defendant.

------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)

## SUPPLEMENT TO
## EXPERT REPORT OF STEPHEN J. RANKEL

This is a supplement to the written report by the undersigned, Stephen J. Rankel, in compliance with what I have been advised are the requirements with respect to expert testimony in federal court.

I have not published anything in the last ten years, have not testified as an expert in the last four years and am not receiving a special fee or other form of compensation for my testimony but rather am billing the company for my time at my normal rate ($400 an hour) that is standard in the industry.

My opinions and the bases and reasons for those opinions are stated in my expert report dated January 21, 2008. I can further itemize the categories of documents for each item of identified damage and do the attached Exhibit D. As reflected in my expert report, I have knowledge of the financial records of the company.

Dated: February 20, 2008

Stephen J. Rankel, C.P.A.

# Exhibit D

Reference #

Actual Losses

2

### Royalty Payments
Payments made to Rampage for the exclusive use of the Rampage name/label in sportswear that would be exclusively sold only at Mervyns. GWB made a settlement in royalty agreement with Rampage for $288,000.

3

### Returns and Cancellations
Mervyns returned merchandise and canceled orders of merchandise that was in GWB's warehouse for no valid reason. GWB had to subsequently sell off this inventory in a secondary market for a substantial loss and certain inventory was abandoned. The loss is $250,000.

4

### Chargebacks
Mervyns made unauthorized deductions when paying GWB's invoices. These deductions were for and not authorized by GWB and there was no basis for these chargebacks/deductions of $225,000. These deductions were taken when GWB invoices were paid to Israel Discount Bank Factors (IDB Factor) which purchased the receivables at the time of the shipment and loaned GWB funds to operate and pay for the merchandise prior to being paid by Mervyns.

5

### Samples and Development Costs
GWB was required to create a new sportswear line for Mervyns because of exclusive license of "Rampage Label" in the garments. The costs incurred by GWB was (i) purchasing and making samples and (ii) development costs (patterns, sourcing etc.) These costs/expenses totaled $95,000.

6

### Additional Employees Time and Effort
GWB started in business in 2003 and had a base core of customers. The Mervyns business was incremental business that required the Company to hire additional help such as a designer, pattern maker, sales support and clerical help. In addition there were employees presently working for GWB where their efforts were placed on Mervyn's business. The additional expenses of $370,000 include salary, payroll taxes (fringes) and medical insurance.

7

### Interest
GWB was financed by IDB Factors which loaned the Company funds. The Company additional costs for inventory, of merchandise that was not shipped, or returned, or the invoices were not fully paid because of unexplained deductions. An estimate of the additional charges were $40,000 based on the factor charging GWB 12% on all advances/loans.

8

### Travel
GWB incurred expenses of $12,000 traveling overseas to suppliers as well as trips to Mervyns.

9

### Loss Opportunity Cost
GWB had a core customer base of $8,000,000 which excluded Mervyns. To prioritize the customers GWB placed priority on Mervyns which resulted in a loss of 2 customers (Charming and Cato's). This merchandise was delivered late and GWB incurred substantial losses on the merchandise.

10

### Showroom

With the growth of business with Mervyns, GWB entered into a new lease for its space (showroom, office, design pattern making and sample room) the new lease called for double the rent that GWB was paying prior to the agreement. In addition to the rent, GWB incurred additional costs in carrying the showroom such as telephone, moving, stationary, etc. These costs are approximately $400,000.

11

### Overseas Deposits

Due to the amount of business being generated by GWB, the Company was required to make deposits (advances) to overseas suppliers/makers in order to make the garments. The overseas suppliers (mainly new suppliers) would not do business unless there were deposits/advances made. The cancellation of Mervyns order cost the Company $494,000 in lost deposits.

Exhibit D

*1339· 2005*
*1· 001*

# ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
666 FIFTH AVENUE
NEW YORK, NY 10103-0001

*tel* 212-506-5000
*fax* 212-506-5151

WWW.ORRICK.COM

March 6, 2008

Lisa T. Simpson
(212) 506-3767
lsimpson@orrick.com

**BY FACSIMILE**

Philip A. Byler
Nesenoff & Miltenberg, LLP
363 Seventh Avenue -- Fifth Floor
New York, NY  10001

Re:    Great White Bear, LLC v. Mervyn's, LLC (06 Civ. 13358 (RMB)(FM))

Dear Phil:

We are in receipt of the supplement report of Stephen Rankel, sent by cover letter dated February 28, 2008.  Mr. Rankel's report remains deficient and fails to satisfy the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) for the reasons previously set forth in my correspondence with you and with Magistrate Judge Maas and as set forth in the Court's February 25, 2008 Order.

Sincerely,

Lisa T. Simpson

Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

GREAT WHITE BEAR, LLC,                                    |

                                  Plaintiff,             |    06 Civ. 13358 (RMB)(FM)

                                                         |

          -against -                                     |

                                                         |

MERVYNS, LLC,                                            |

                                                         |

                                  Defendant.             |

------------------------------------------------------------x


## SECOND SUPPLEMENT TO
## <u>EXPERT REPORT OF STEPHEN J. RANKEL</u>

This is the second supplement to the written report by the undersigned, Stephen J. Rankel. Attached as Exhibit E is an amplification of the information providing the bases for my opinions in my expert report.

Dated: March 13, 2008

_Stephen J. Rankel_

Stephen J. Rankel, ,C.P.A.

# Exhibit E

<u>Exhibit E</u>

Amplification of basis of items 1 through 11 in Exhibit B

From Exhibit B
<u>Reference A</u>

1) <u>Projected Loss</u> – GWB provided emails, spreadsheets and documentation on the styles purchased by Mervyns as well as the costs to manufacture those styles. In addition, once the documents were presented, calculations were performed to calculate the loss.

2) <u>Royalty Payments</u> – GWB had two agreements for review, the original agreement and the termination agreement. To show that there was a royalty agreement with Rampage that Mervyns had the exclusive right to the name. The company provided cancelled checks to back up the loss.

3) <u>Returns and Cancellations</u> – GWB provided cancellation letters, emails on cancellations and garments returned from Mervyns. The inventory was specifically purchased for Mervyns and was sold off to third parties at below the cost of the garment.

4) <u>Chargebacks</u> – GWB provided the factor statements which documented all of the deductions that were taken by Mervyns when they were paying GWB's invoices. There were some back up documents from Mervyns verifying these deductions.

5) <u>Sample and Development Costs</u> – GWB had to create a new line for Mervyns since they had the exclusive rights of Rampage name for sportswear. These styles had to now and different any other styles in GWB's line. The Company had to buy and make samples which they are invoices.

6) <u>Additional Employees Time and Efforts</u> – To start up a new line for Mervyns, GWB had to hire designers, pattern makers, sample hands, production, admin and sales help. Some of the people were new hires and other people were taken from other divisions within GWB. The other divisions sales volume dropped because of the focus on Mervyns.

1

7) <u>Interest</u> – GWB as well as any company that is starting up a new division needs capital as in the case of GWB. They borrowed funds from a factor and they incurred interest charges. The financing was for developed costs, people travel, cost to carry inventory and to pay suppliers.

8) <u>Travel</u> – GWB had to travel overseas to review the foreign factories that were producing the garments.

9) <u>Loss Opportunity Costs</u> – The Company's main focus was on the development of the Mervyns line. This resulted in GWB losing 2 significant customers and a lot of bad will with other customers because of where the priorities were placed.

10) <u>Showroom</u> – GWB entered into a new lease for there headquarters. The Company had copies of leases and cancelled checks to support the payments.

11) <u>Overseas Deposits</u> – GWB pays various suppliers funds before the delivery of merchandise because of the use of new factories. These suppliers would not do business unless deposits were made.

Exhibit P

NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

**March 21, 2008**

**By Overnight Courier, By Hand**
**& Telecopier: 212-805-6724**
The Honorable Frank Maas
United States Magistrate Judge
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street - Room 740
New York, New York 10007

Re:    ***Great White Bear, LLC. v. Mervyns, LLC***
       **Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)**

**Dear Judge Maas:**

    I am an attorney for the Plaintiff Great White Bear, LLC. ("Plaintiff GWB") in the above-referenced diversity breach of contract action. I submit this letter in preliminary response to the letter dated March 21, 2008, by Lisa T. Simpson, Esq., attorney for Defendant Mervyns, LLC ("Defendant Mervyns"), requesting a conference in anticipation of making a meritless motion to strike the expert report of Stephen J. Rankel, CPA, the damages expert for Plaintiff Mervyns. At the outset, it must be noted that Ms. Simpson cites no case law authority for the drastic unjustified step she takes, and I submit there is no justification for proposing the motion in the first place, as explained below.

    First, I must note that this is "Good" Friday for me, and I was about to leave my office when out of the blue at 1:30 PM, I was handed the letter of Ms. Simpson; and I happen to be scheduled to take a flight early Monday morning, March 24, to Los Angeles to handle a hearing in Los Angeles in the Central District of California federal court on Tuesday, March 25. So, it was by happenstance that I received the Simpson letter, which did come out of the blue because at no time did Ms. Simpson raise with me any of the issues that she now raises with the Court. Had she done so, we would undoubtedly have been able to work out a solution. But that, I submit, would not serve Defendant Mervyns's apparent strategy of seeking to avoid dealing with the consequences of the breach of contract in this case. What does serve Defendant Mervyns's strategy is to take a shot at trying to prevent Plaintiff GWB from presenting qualified expert testimony on damages by a certified public accountant who knows the finances of Plaintiff GWB and who has shown in his report that the damages are in excess of $6.6

**Page -2-**

million.

Ms. Simpson's proposed motion is clearly unjustified. The Rankel report, as supplemented, satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. That Rule requires that an expert report contain the following:

> "(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> "(ii) the data or other information considered by the witness in forming them;

> "(iii) any exhibits that will be used to summarize or support them;

> "(iv) the witness's qualifications, including a list of all publications authored in the previous ten years;

> "(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

> "(vi) a statement of the compensation to be paid for the study and testimony in the case."

When I sent the second supplement to Ms. Simpson, I stated in my cover letter that the Rankel letter satisfied all six requirements. Attached as Exhibit A is a copy of my letter. Ms. Simpson thereafter did <u>not</u> with me dispute my statement of compliance, as my letter requests if she did, and even now does not dispute that the Rankel report fully satisfies requirements (i), (iii), (iv), (v) and (vi).

Yet, Ms. Simpson wants to try to stop Plaintiff GWB from proving its damages case with testimony by a certified public accountant who knows the finances of Plaintiff GWB because, while Mr. Rankel does provide in his report a statement of "the data or other information considered by the witness in forming [his opinions]", which is requirement (ii) in the Rule, Ms. Simpson argues that more detailed information should be provided as to five of eleven damage items. Specifically, Ms. Simpson reviews the data provided as to additional employee expense, travel, loss opportunity costs, showroom expense and overseas deposits -- which constitute $1.9 million of the $6.6 million in total damages, or about 29% of the total damages -- and says that more detail should be required in the report as to five of the eleven damage items.

As to the additional employees expense item, Mr. Rankel does explain that the basis of the damage item in footnote 6 in Exhibit B of his original Rankel report (Exhibit A to the Simpson letter) and is explained further in Exhibit E to the Rankel report (Exhibit E to the Simpson letter) as based on the additional employees hired as a result of the start up efforts for the Mervyns line.

As to the travel item, Mr. Rankel does explain that the basis of the damage item in footnote 8 in Exhibit B of his original Rankel report (Exhibit A to the Simpson letter) and is explained further in

**Page -3-**

Exhibit E to the Rankel report (Exhibit E to the Simpson letter) as based on the travel expense that had to be incurred to review foreign factories that were producing the garments.

As to the lost opportunity costs item, Mr. Rankel does explain that the basis of the damage item in footnote 9 in Exhibit B of his original Rankel report (Exhibit A to the Simpson letter) and is explained further in Exhibit E to the Rankel report (Exhibit E to the Simpson letter) as based on the loss of customers and bad will with other customers because of the focus on the Mervyns line and resulting problems with Mervyns.

As to the showroom expense item, Mr. Rankel does explain that the basis of the damage item in footnote 10 in Exhibit B of his original Rankel report (Exhibit A to the Simpson letter) and is explained further in Exhibit E to the Rankel report (Exhibit E to the Simpson letter) as based on the new lease to support the Mervyns work and references documentation.

As to the overseas deposits item, Mr. Rankel does explain that the basis of the damage item in footnote 11 in Exhibit B of his original Rankel report (Exhibit A to the Simpson letter) and is explained further in Exhibit E to the Rankel report (Exhibit E to the Simpson letter) as based on payment of funds to suppliers before the delivery of merchandise because of the use of new factories.

As to these five items, Ms. Simpson's complaint is not that Mr. Rankel does not state any data or information in forming his opinion; the footnote format of Exhibit B to the original Rankel report and the supplemental information in Exhibit E to the Rankel report precludes that extreme a position. Ms. Simpson says, rather, that the report should have more. What Ms. Simpson complains about, however, can constitute the basis of questioning at a deposition of Mr. Rankel that it has always been contemplated that Defendant Mervyns would have. Nevertheless, as I stated above, if Ms. Simpson had raised these items with me, I would have worked out a solution, no doubt providing at least some of the information and perhaps all, and not stood on my sincerely held legal position that the Rankel report as is fully satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

While Ms. Simpson says that Rule 26, as it relates to expert witness disclosure, was intended to prevent this situation with respect to the Rankel report, that is not true at all. She cites no case law supporting her complaint, and there is nothing that does support it. It was certainly not the intention of Rule 26, as it pertains to expert disclosure, to frustrate the litigation of a case on the substantive merits; and that is what Defendant Mervyns's proposed motion would do. In contrast, in my experience over the years, expert discovery has always involved a flexible interaction between counsel, which make sense if counsel are suppose to cooperate in federal court discovery and discovery is to aid in the just adjudication of case.

I will be back in New York on Wednesday, albeit after a flight from Los Angeles. I will be glad to address then a way of disposing of Ms. Simpson's complaint without further ado. I do, however, take strong exception to the proposed motion of Ms. Simpson. It is time instead for Defendants Mervyns to get its expert reports done, so that the parties can proceed to complete expert discovery and then, if we don't have a settlement, to have the case tried before the Honorable Judge Richard M. Berman.

**Page -4-**

Because this letter is written in the circumstances described on the first page of this letter, I reserve the right to supplement my response on my return from Los Angeles.

Respectfully submitted,
**NESENOFF & MILTENBERG, LLP**

By: _____
Philip A. Byler, Esq.

cc:     Orrick, Herrington & Sutcliffe, LLP. - by telecopier
          *(Lisa T. Simpson, Esq./Rishona Fleishman, Esq.)*

# EXHIBIT A

# NESENOFF & MILTENBERG, LLP

ATTORNEYS AT LAW
363 SEVENTH AVENUE
FIFTH FLOOR
NEW YORK, NEW YORK 10001-3904

TELEPHONE (212) 736-4500
TELECOPIER (212) 736-2260

IRA S. NESENOFF
ANDREW T. MILTENBERG

PHILIP A. BYLER
ALAN M. SHECTMAN
SHARI S. LASKOWITZ
LAINE A. ARMSTRONG
MEGAN S. GODDARD
ANDREW B. PLOTKIN

PARALEGAL

TANYA C. SIMMONS

**March 14, 2008**

**BY OVERNIGHT**
Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe, LLP.
666 Fifth Avenue
New York, New York 10103

Re:    *Great White Bear v. Mervyns, LLC,*
       <u>Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)</u>

Dear Lisa:

Enclosed is a second supplement to the expert report of Stephen J. Rankel. With this supplementation, there can be no reasonably raised issue about the compliance with the Rankel Report with Rule 26(a)(B). The report does contain: (i) a complete statement of all opinions that the witness will express and the basis and reasons for them; (ii) the data considered by the expert witness; (iii) the exhibits that summarize his testimony; (iv) the witness's qualifications, including a statement about publications; (v) a statement concerning prior expert testimony; and (vi) a statement on compensation. The enclosed second supplementation provides an amplification as to each item of damage in the Exhibit B Chart (which already had footnotes).

If you have any questions or problems with respect to the foregoing, please raise them with me.

Very truly yours,
**NESENOFF & MILTENBERG, LLP**

By: _____
       Philip A. Byler, Esq.

# NESENOFF & MILTENBERG, LLP
## 363 SEVENTH AVENUE
### NEW YORK, NEW YORK 10001

## FACSIMILE COVER LETTER

****WARNING**** THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THE MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POST OFFICE.

OUR FAX MACHINE RECEIVES CALLS BETWEEN 9:00 A.M. AND 5:30 P.M. IF THE TRANSMITTAL IS UNSATISFACTORY, PLEASE CALL US IMMEDIATELY.

NOTICE: PURSUANT TO CPLR RULE 2103(B)(5), THE ELECTRONIC TRANSMITTAL TELEPHONE NUMBER OF THIS OFFICE HAS NOT BEEN DESIGNATED AS A PROPER NUMBER FOR THE SERVICE OF DOCUMENTS OR PAPERS IN THIS ACTION OR PROCEEDING. SERVICE SHOULD BE ACCOMPLISHED PURSUANT TO ANY OTHER PARAGRAPH OF CPLR RULE 2103(B).

### PRIVILEGED AND CONFIDENTIAL

| Date: | **March 21, 2008** | **7 Page(s) (Including This Sheet)** |
|---|---|---|

**SEND TO:**

| Name: | Honorable Frank Maas |
|---|---|
| Facsimile No.: | 212.805.6724 |
| Telephone No.: | |

FROM:

| Name: | Philip A. Byler, Esq. |
|---|---|

## COMMENTS TO RECEIVER:

Re:    *Great White Bear, LLC. v. Mervyns, LLC*
       Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)

Please see the enclosed.

**Please contact our office at 212.736.4500 if there are any problems with this transmission.**

```
    ***********************
    ***   TX REPORT   ***
    ***********************

TRANSMISSION OK

TX/RX NO                1726
RECIPIENT ADDRESS       12128056724
DESTINATION ID
ST. TIME                03/21 15:51
TIME USE                01'00
PAGES SENT              7
RESULT                  OK
```

# NESENOFF & MILTENBERG, LLP
## 363 SEVENTH AVENUE
### NEW YORK, NEW YORK 10001

## FACSIMILE COVER LETTER

****WARNING**** THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THE MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POST OFFICE.

OUR FAX MACHINE RECEIVES CALLS BETWEEN 9:00 A.M. AND 5:30 P.M. IF THE TRANSMITTAL IS UNSATISFACTORY, PLEASE CALL US IMMEDIATELY.

NOTICE: PURSUANT TO CPLR RULE 2103(B)(5), THE ELECTRONIC TRANSMITTAL TELEPHONE NUMBER OF THIS OFFICE HAS NOT BEEN DESIGNATED AS A PROPER NUMBER FOR THE SERVICE OF DOCUMENTS OR PAPERS IN THIS ACTION OR PROCEEDING. SERVICE SHOULD BE ACCOMPLISHED PURSUANT TO ANY OTHER PARAGRAPH OF CPLR RULE 2103(B).

### PRIVILEGED AND CONFIDENTIAL

**Date:** March 21, 2008                    7 Page(s) (Including This Sheet)

**SEND TO:**     **Name:**              **Honorable Frank Maas**
                 **Facsimile No.:**     **212.805.6724**
                 **Telephone No.:**

**FROM:**        **Name:**              **Philip A. Byler, Esq.**

## COMMENTS TO RECEIVER:

Re:   *Great White Bear, LLC. v. Mervyns, LLC*
      Index No. 06 Civ. 13358 (S.D.N.Y.)(RMB)

# NESENOFF & MILTENBERG, LLP
## 363 SEVENTH AVENUE
### NEW YORK, NEW YORK 10001

## FACSIMILE COVER LETTER

****WARNING**** THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THE MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POST OFFICE.

OUR FAX MACHINE RECEIVES CALLS BETWEEN 9:00 A.M. AND 5:30 P.M. IF THE TRANSMITTAL IS UNSATISFACTORY, PLEASE CALL US IMMEDIATELY.

NOTICE: PURSUANT TO CPLR RULE 2103(B)(5), THE ELECTRONIC TRANSMITTAL TELEPHONE NUMBER OF THIS OFFICE HAS NOT BEEN DESIGNATED AS A PROPER NUMBER FOR THE SERVICE OF DOCUMENTS OR PAPERS IN THIS ACTION OR PROCEEDING. SERVICE SHOULD BE ACCOMPLISHED PURSUANT TO ANY OTHER PARAGRAPH OF CPLR RULE 2103(B).

### PRIVILEGED AND CONFIDENTIAL

| Date: | March 21, 2008 | 7 Page(s) (Including This Sheet) |
|---|---|---|

| SEND TO: | Name: | Lisa T. Simpson, Esq. |
|---|---|---|
| | | *Orrick, Herrington & Sutcliffe, LLP.* |
| | Facsimile No.: | 212.506.5151 |
| | Telephone No.: | 212.506.3767 |

| FROM: | Name: | Philip A. Byler, Esq. |
|---|---|---|

## COMMENTS TO RECEIVER:

Re: <u>Great White Bear, LLC. v. Mervyns, LLC.</u>

Please see the enclosed.

**Please contact our office at 212.736.4500 if there are any problems with this transmission.**

```
        ***********************
        ***   TX REPORT   ***
        ***********************

   TRANSMISSION OK

   TX/RX NO                 1727
   RECIPIENT ADDRESS        12125065151
   DESTINATION ID
   ST. TIME                 03/21 15:52
   TIME USE                 02'32
   PAGES SENT               7
   RESULT                   OK
```

# NESENOFF & MILTENBERG, LLP
## 363 SEVENTH AVENUE
### NEW YORK, NEW YORK 10001

## FACSIMILE COVER LETTER

****WARNING**** THE INFORMATION CONTAINED IN THIS FACSIMILE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POST OFFICE.

OUR FAX MACHINE RECEIVES CALLS BETWEEN 9:00 A.M. AND 5:30 P.M. IF THE TRANSMITTAL IS UNSATISFACTORY, PLEASE CALL US IMMEDIATELY.

NOTICE: PURSUANT TO CPLR RULE 2103(B)(5), THE ELECTRONIC TRANSMITTAL TELEPHONE NUMBER OF THIS OFFICE HAS NOT BEEN DESIGNATED AS A PROPER NUMBER FOR THE SERVICE OF DOCUMENTS OR PAPERS IN THIS ACTION OR PROCEEDING. SERVICE SHOULD BE ACCOMPLISHED PURSUANT TO ANY OTHER PARAGRAPH OF CPLR RULE 2103(B).

### PRIVILEGED AND CONFIDENTIAL

| Date: | March 21, 2008 | 7 Page(s) (Including This Sheet) |
|---|---|---|

| SEND TO: | Name: | Lisa T. Simpson, Esq. |
|---|---|---|
| | | *Orrick, Herrington & Sutcliffe, LLP.* |
| | Facsimile No.: | 212.506.5151 |
| | Telephone No.: | 212.506.3767 |

| FROM: | Name: | Philip A. Byler, Esq. |
|---|---|---|

## COMMENTS TO RECEIVER:

Re: <u>Great White Bear, LLC. v. Mervyns, LLC.</u>