UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

GREAT WHITE BEAR, LLC       |

              Plaintiff,     |      06 Civ. 13358 (RMB)(FM)

             |

   -against -         |

             |

MERVYNS, LLC,         |

             |

        Defendant.   |

-------------------------------------------------------------x

**PLAINTIFF GREAT WHITE BEAR LLC'S MEMORANDUM
OF LAW IN OPPOSITION TO DEFENDANT MERVYNS LLC'S
MOTION TO STRIKE ITEMS 3-8 IN THE EXPERT REPORT
OF STEPHEN J. RANKEL, C.P.A. AND FOR FEES AND COSTS**

**NESENOFF & MILTENBERG, LLP
Attorneys for Plaintiff Great White Bear, LLC
363 Seventh Avenue - Fifth Floor
New York, New York 10001
212.736.4500**

-i-

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT PROCEDURAL HISTORY ................................................................. 2

ARGUMENT ............................................................................................................. 5

I. . THE FINAL REPORT OF STEPHEN J. RANKEL, C.P.A. ON
DAMAGES MEETS THE REQUIREMENTS OF RULE 26
OF THE FEDERAL RULES OF CIVIL PROCEDURE ................................... 5

II. DAMAGE ITEMS 3, 7 AND 8 IN THE FINAL REPORT
OF STEPHEN J. RANKEL, C.P.A. ON DAMAGES
SHOULD NOT BE STRICKEN ...................................................................... 10

    A.    Item 3: Returns, Cancellations and Unjustified
Chargebacks For Accepted Garments .................................................. 10

    B.    Item 7: Lost Opportunity Costs ........................................................... 12

    C.    Item 8: Lost Overseas Deposits ........................................................... 13

III. DAMAGE ITEMS 4, 5 AND 6 IN THE FINAL REPORT
OF STEPHEN J. RANKEL, C.P.A. ON DAMAGES
SHOULD NOT BE STRICKEN ...................................................................... 14

    A.    Item 4: Lost Samples and Development Costs ..................................... 14

    B.    Item 5: Lost Additional Employees' Time and Effort ........................... 15

    C.    Item 6: Interest – Returns, Cancelled Orders and Unjustified Chargebacks .......... 15

IV. RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND
ITS INTERPRETATIVE CASE LAW DOES NOT SUPPORT STRIKING
DAMAGES ITEMS 3-8 IN THE FINAL RANKEL REPORT AND
DOES NOT SUPPORT AWARDING ATTORNEY FEES AND COSTS ........... 16

    A.    Rule 37 of the Federal Rules of Civil Procedure and Interpretative
Case Law Does Not Support Striking Damage Items 3-8 ....................... 17

-ii-

B.   Rule 37 of the Federal Rules of Civil Procedure and Interpretative
     Case Law Does Not Support Awarding Fees and Costs ........................................... 19

CONCLUSION ................................................................................................................................21

-iii-

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Atkins v. County of Orange*, 372 F.Supp.2d 377, 395-396 (S.D.N.Y. 2005) ................................. 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ........................................ 1, 9

*Daval Steel Prod. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) .............................................. 20

*Hewlitt Packard Co. v. Factory Mut. Ins. Co.*, No. 04 Civ. 2791,
    2006 WL 1788946 (S.D.N.Y. June 28, 2006) .........................................................9

*Koppell v. New York State Bd. Of Elections*, 97 F.Supp.2d 477 (S.D.N.Y. 2000) .......................... 9

*Lava Trading Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037,
    2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005) ..................................................... 8

*Maurizio v. Goldsmith*, No. 96 Civ. 4332, 2002 WL 535146 (S.D.N.Y. Apr. 9, 2002) ........9, 18-19

*Remee Products Corp. v. Sho-Me Power Electric Cooperative*,
    No. 01 Civ. 5554, 2002 WL 31323827 (S.D.N.Y. Oct. 17, 2002) ...................................... 20

*Rodriguez v. Pataki*, 293 F.Supp.2d 305 (S.D.N.Y. 2003) ....................................................... 9, 17-18

*Rouson v. Eicoff*, No. 04 Civ. 2784, 2007 WL 1827422 (E.D.N.Y. June 25, 2007) ......................20

*Venite v. St. Luke's/Roosevelt Hosp.*, No. 01 Civ. 4067, 2002 WL 1461493
    (S.D.N.Y. 2002) ....................................................................................18

*Wechsler v. Hunt Health Systems Ltd.*, 381 F.Supp.2d 135 (S.D.N.Y. 2003) ...................................9

*Williams v. County of Orange*, No. 03 Civ. 5182, 2005 WL 6001507
    (S.D.N.Y. Dec. 13, 2005) ....................................................................................18


**Statutes & Rules**

Rule 26, Federal Rules of Civil Procedure .............................................................1, 3-5, 17

Rule 26(a)(2)(B), Federal Rules of Civil Procedure ...............................................5-9, 17-20

-iv-

Rule 26(b)(4)(A), Federal Rules of Civil Procedure .................................................................. 8

Rule 37, Federal Rules of Civil Procedure ...................................................................1, 16-20

Rule 37(b)(2)(A), Federal Rules of Civil Procedure ..............................................17-20

Rule 37(c)(1), Federal Rules of Civil Procedure ..................................................17-20

28 U.S.C. § 1983 ...................................................................................................... 18

-1-

## INTRODUCTION

Plaintiff Great White Bear, LLC ("Great White Bear") submits this Memorandum of Law in opposition to the motion of defendant Mervyns, LLC ("Mervyns") to strike damages items 3-8 in the expert report of Stephen J. Rankel, C.P.A. and to award fees and costs. The motion should be denied. As will be explained below, damages items 3-8 in the expert report of Stephen J. Rankel, C.P.A. are compliant with Rule 26 of the Federal Rules of Civil Procedure; and fees and costs are not remotely justified under Rule 37 of the Federal Rules of Civil Procedure and interpretative case law.

At the outset, the scope of Mervyns's motion must be noted. Mervyns does _not_ and rationally could _not_ bring its motion under Rule 26 of the Federal Rules of Civil Procedure against damages items 1 and 2 of the expert report of Stephen J. Rankel, C.P.A.. These damages items for Mervyns's breach of contract are unquestionably more than sufficiently documented and explained. Damages item 1 is for lost profits on lost sales ($3,976,200.00); and damages item 2 is for lost royalty payments on the Rampage license ($286,666.66). These two damages items that are not the subject of Mervyns's motion total to be $4,262,866.66, which is 71.2% in amount of the total damages of $5,984,415.70 itemized in the expert report of Stephen J. Rankel, C.P.A..[1]

Mervyns's motion is rather directed to items 3-8 of the expert report of Stephen J. Rankel, C.P.A.; and Mervyns structures its argument in two groups.

---

[1] Mervyns acknowledges that it is not seeking to strike damages items 1 and 2 of the final Rankel report, but purports to reserve its right to do so after deposition under _Daubert v. Merrell Dow Pharmaceuticals, Inc._, 509 U.S. 579 (1993). Great White Bear is confident that there will no _Daubert_ issue as to Mr. Rankel's accounting for lost profits and lost royalty payments. Great White Bear does note that at the conference before District Judge Richard M. Berman held on April 16, 2008, Judge Berman stated that all motions for summary judgment, _Daubert_ preclusion and real party in interest are be submitted to him at one time before trial. (Byler Decl. ¶ 2 n. 1.)

-2-

One group that is subject to Mervyns's motion is for damages items 3, 7 and 8. These three damages items total to be $1,444,000.00, which is 24.2% in amount of the total damages of $5,984,415.70 itemized in the expert report of Stephen J. Rankel, C.P.A.. These items have supporting documentation, but Mervyns claims, erroneously, that the documentation is not understandable or apparently not supportive of the damage item. The short answer to Mervyns is that the documentation is understandable to people and accountants in the garment industry and is supportive of these damages items.

The other group that is subject to Mervyns's motion is for damages items 4, 5 and 6. These three damages items total to be $277,549.04, which is 4.6% in amount of the total damages of $5,984,415.70 itemized in the expert report of Stephen J. Rankel, C.P.A.. These items relate to necessary costs in the production process, and a certified public accountant has provided a conservative, not random, number for these items.

## RELEVANT PROCEDURAL HISTORY

The key point of relevant procedural history is that on April 8, 2008, the Court ordered Great White Bear's counsel to submit in 48 hours, by 5:00 PM on April 10, 2008, a final expert report of Stephen J. Rankel, C.P.A. as to damages (there was and for six weeks had been no issue as to the completeness of the expert report of Laurence P. Lazar as to industry practices previously produced by Great White Bear); and on April 10, 2008, counsel to Great White Bear produced that final expert report of Stephen J. Rankel, C.P.A. under cover of letter stating why the final expert report fully satisfied Rule 26 of the Federal Rules of Civil Procedure. The letter and the final report of Stephen J. Rankel, C.P.A. were also copied to the Court. (Byler Decl. ¶ 3 & Exs. A-B; Simpson Decl. Ex. O.) These events were preceded by the following procedural history, which when stated objectively

-3-

showed discovery compliance and cooperation by counsel to Great White Bear.

Following fact discovery (including voluminous document production by Great White Bear to Mervyns and depositions by Mervyns counsel of Great White Bear principals), on November 29, 2007, the Court entered an Order requiring, among other things, that Great White Bear disclose its experts by December 14, 2007, and submit expert reports by January 11, 2008.  On December 14, 2007, Great White Bear made the required disclosure of its experts per the November 29, 2007 Order.  On January 11, 2008, the parties by agreement requested an extension of Great White Bear's due date for expert reports from January 11, 2008, to January 21, 2008; and the Court so ordered that request.  (Byler Decl. ¶ 4 & Exs. C-E.)

In compliance with that deadline, Great White Bear served on January 21, 2008, two expert reports, one by Laurence P. Lazar as to industry practices and one by Stephen J. Rankel, C.P.A. as to damages.  Stephen J. Rankel is a certified public accountant (since 1983) who is an Executive Partner of the New York City accounting firm of Citrin Cooperman & company, LLP and who has had 25 years of experience as an accountant servicing companies in the apparel and textile industries. (Byler Decl. ¶ 5 & Exs. F-G.)

Over three weeks later, on February 6, 2008, counsel to Mervyns sent a letter to counsel for Great White Bear stating that the two expert reports did not comply in all particulars with Rule 26 of the Federal Rules of Civil Procedure.  On February 13, 2008, counsel to Great White Bear replied providing informal supplementation and promising supplemental reports to incorporate the informally provided information when the two expert witnesses returned to New York.  On February 20, 2008, counsel to Great White Bear provided a supplemental report of Laurence P. Lazar (concerning prior testimony, publications and compensation) and promised a supplemental report

-4-

by Stephen J. Rankel, C.P.A. (who was still out of town at the time). Thereafter, there was no issue as to completeness of the expert report of Laurence P. Lazar. (Byler Decl. ¶ 6 & Exs. H-J.)

On February 21, 2008, counsel to Mervyns applied to the Court requesting that a firm date be set for the supplemented expert report of Stephen J. Rankel, C.P.A. as to damages and an extension of Mervyns's time to serve its expert reports. On February 25, 2008, the Court set March 14, 2008, as the date for the supplemented Rankel report and extended Mervyns's time as to its expert reports. On February 28, 2008, well before the Court deadline, Great White Bear provided a supplemented report from Stephen J. Rankel, C.P.A. and requested counsel to Mervyns to advise counsel to Great White Bear if it were believed that any further supplementation was in order. (Byler Decl. ¶ 7 & Exs. K-L.)

One week later, on March 6, 2008, counsel to Mervyns sent a letter to counsel Great White Bear summarily asserting, without specifics, that the supplemented Rankel report was still insufficient. Without agreeing with counsel to Mervyns, counsel to Great White Bear provided on March 14, 2008, an additional supplementation to the Rankel report with a cover letter pointing out the supplemented Rankel report complied with Rule 26 of the Federal Rules of Civil Procedure and requesting that any further issue be raised with counsel. (Byler Decl. ¶ 8 & Exs. M-N.)

Nothing was heard from counsel to Mervyns for a week until the afternoon of Good Friday, March 21, 2008, when counsel to Mervyns made application to the Court for permission to move to strike the Rankel report; and on that same day, counsel to Great White Bear replied that the supplemented Rankel report complied with Rule 26 of the Federal Rules of Civil Procedure and that a motion to strike the whole report was not justified based on the items raised by Mervyns. (Byler Decl. ¶ 9 & Exs. O-P.)

-5-

On April 8, 2008, a teleconference of counsel and the Court was held at which time, as noted at the beginning of this statement of procedural history, the Court gave Great White Bear's counsel to submit in 48 hours, by April 10, 2008, for Great White Bear to submit a final expert report of Stephen J. Rankel, C.P.A. as to damages; and on April 10, 2008, counsel to Great White Bear produced that final expert report of Stephen J. Rankel, C.P.A. under cover of letter stating why the final expert report fully satisfied Rule 26 of the Federal Rules of Civil Procedure. (Byler Decl. ¶ 10 & Exs A-B; Simpson Decl. Ex. O.)

In the Order issued by the Court on April 8, 2008, permission was given by the Court for Mervyns to make, by April 17, 2008, a motion to strike and Mervyns was excused from submitting its expert reports in the meantime. At approximately 11:00 PM on April 17, 2008, counsel for Mervyns electronically filed, albeit incorrectly, its motion to strike damage items 3-8 in the final Rankel report and to be awarded fees and costs. (Byler Decl. ¶ 11.)

## ARGUMENT

Before the Court is Mervyns's motion to strike damage items 3-8 in the final Rankel report and to be awarded fees and costs. The motion should be denied based on the following discussion.

### I.

### THE FINAL REPORT OF STEPHEN J. RANKEL, C.P.A. ON DAMAGES MEETS THE REQUIREMENTS OF RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE

The final report of Stephen J. Rankel, C.P.A. on damages meets the requirements of Rule 26 of the Federal Rules of Civil Procedure. When the final expert report of Stephen J. Rankel, C.P.A. was delivered to counsel for Mervyns, counsel for Great White Bear included the following covering letter explaining that Rule 26(a)(2)(B) was satisfied:

-6-

Per leave kindly given by U.S. District Court Magistrate Judge Frank Mass on April 8, 2008, enclosed with this cover letter is the final Rankel damages expert report.

The final Rankel damages expert report satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. That Rule requires that an expert report contain the following:

"(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

"(ii) the data or other information considered by the witness in forming them;

"(iii) any exhibits that will be used to summarize or support them;

"(iv) the witness's qualifications, including a list of all publications authored in the previous ten years;

"(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

"(vi) a statement of the compensation to be paid for the study and testimony in the case."

A review of these elements as against the enclosed final Rankel damages expert report establishes that the final Rankel damages expert report fully satisfies Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

**Subsection (i): "a complete statement of all opinions
the witness will express and the basis and reasons for them"**

The enclosed final Rankel damages expert report contains the opinions and the basis and reasons for those opinions. Part II of the final Rankel damages expert report outlines the approach taken to the accounting of damages and identifies the two general categories of damages. Part III of the final Rankel damages expert report provides a summary list of the items of damages with amounts added to a total number. Part IV of the final Rankel damages expert report provides an analysis of each of the damage items with the basis and reasons for including the damage item and for the number stated for the item. Part V of the final Rankel damages expert report performs a check on the damages calculation by providing a summary financial history of Plaintiff GWB.

-7-

**Subsection (ii): "the data or other information
considered by the witness in forming them"**

The enclosed final Rankel damages expert report states the data and
information considered in preparing the report, identifies and discusses documents
used in deriving the specific damage item figures and further attaches as exhibits
documents in support of the damages analysis.

**Subsection (iii): "any exhibits that will be used
to summarize or support them"**

The enclosed final Rankel damages expert report refers to the charts on pages
5 and 12 as being trial exhibits and likely the subject of enlarged size charts at trial.

**Subsection (iv): "the witness's qualifications, including a
list of all publications authored in the previous ten years"**

The enclosed final Rankel damages expert report provides this information
in Part I of the report on pages 1 and 2.

**Subsection (v): "a list of all other cases in which, during the previous
four years, the witness testified as an expert at trial or by deposition"**

The enclosed final Rankel damages expert report provides this information
in Part I of the report on page 2.

**Subsection (vi): "a statement of the compensation to
be paid for the study and testimony in the case"**

The enclosed final Rankel damages expert report provides this information
in Part I of the report on page 2.

(Byler Decl. ¶ 3 & Ex. B.)

Mervyns argues that the requirements of expert reports set forth in Rule 26(a)(2)(b) of the

Federal Rules of Civil Procedure enable expert reports to fulfill their role in expert discovery

(Mervyns Mem p. 4); however, those requirements are exactly what are discussed in the above

quoted letter of Great White Bear's counsel when producing the final Rankel report.

Mervyns does more specifically argue that the "basis" for Mr. Rankel's "opinions" in

-8-

including damages items 3 through 8 in the damages calculation for Mervyns's breach of contract are not provided (Mervyns Mem. pp. 4-5); however, as discussed below, the final Rankel report does provide the "basis" for the stated "opinions."

For its general statement of position, Mervyns cites Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure and three cases. These authorities do not support Mervyns's motion to strike in this case:

(i)   Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure states: "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided." The requirement of the report before a deposition is not in contention.

(ii)   In *Lava Trading Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037, 2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005), an expert report for the plaintiff company Lava Trading asserted conclusions with respect to business that the plaintiff company Lava Trading would have done had the events of September 11, 2001 not occurred, but that report was stricken because the conclusions as to lost business were based on products different from the plaintiff's product, a historical period different from the plaintiff's product history and assumptions from the plaintiff as to volume of potentially available business. Mr. Rankel did not do anything of that sort; he is the outside accountant for Great White Bear and thus was not dependent on any supplied assumptions, but rather he proceeded with a certain knowledge of the finances of Great White Bear in computing the damages from the breach of contract by Mervyns.

(iii)   In *Maurizio v. Goldsmith*, No. 96 Civ. 4332, 2002 WL 535146 (S.D.N.Y. Apr. 9, 2002), an expert report that damages suffered by plaintiff Maurizio should include a proportionate

-9-

share of 70% of defendant Goldsmith's credits, participation and income from books authored by

defendant Goldsmith, but the expert report was stricken because while the expert had general

experience in the book publishing field, he did not relate specific data to the damages calculation he

made. Again, Mr. Rankel is not relying upon his general knowledge and experience as an accountant

for the damages items, but the identified financial information from Great White Bear.

(iv) In _Koppell v. New York State Bd. Of Elections_, 97 F.Supp.2d 477 (S.D.N.Y.

2000), a case challenging the constitutionality of New York Election Law § 7-116(3) concerning the

position of candidates on the ballot, District Judge Stein upheld the sufficiency of one expert report,

but struck another one providing an electoral analysis because: (a) it did not satisfy the requirements

of _Daubert v. Merrill Dow Pharm., Inc._, 509 U.S. 579 (1993); and (b) it did not satisfy Rule

26(a)(2)(B) because there was no relation between, on the one hand, pieces of campaign literature

and newspaper articles and, on the other, his conclusion that "position bias" was not determinative

in the analyzed elections. Mr. Rankel has provided an accounting of damages based on a theory of

damages and specific financial information, not an amorphous political analysis of elections.

In addition to relying upon inapposite authority, Mervyns does not acknowledge the general

point, expressly recognized by this Court, that a decision to grant a motion to strike is a "drastic" one

which should not be made without a showing of "good cause." _Rodriguez v. Pataki_, 293 F.Supp.2d

305, 308-309 (S.D.N.Y. 2003)(Mass, Mag. J.) (motion to strike denied); _see Hewlitt Packard Co._

_v. Factory Mut. Ins. Co._, No. 04 Civ. 2791, 2006 WL 1788946 *18 (S.D.N.Y. June 28,

2006)(preclusion a "disfavored" remedy). As Points II and II below demonstrate, good cause does

not exist to justify the drastic sanction of preclusion here. As in _Wechsler v. Hunt Health Systems_

_Ltd._, 381 F.Supp.2d 135 (S.D.N.Y. 2003), the accountant's damages report here should be upheld.

-10-

## II.

### DAMAGE ITEMS 3, 7 AND 8 IN THE FINAL REPORT OF
### STEPHEN J. RANKEL, C.P.A. ON DAMAGES SHOULD NOT BE STRICKEN

Mervyns argues that the Court should strike damage items 3, 7 and 8 in the expert report of Stephen J. Rankel, C.P.A. on the ground "[a]lthough Mr. Rankel purports to provide some documentation" for the these items. According to Mervyns, "[t]hat documentation is either entirely irrelevant on its face or Mr. Rankel fails to provide any indication of the basis for the numbers he arrives at." (Marvyns Mem. p. 7.)   The short answer is that Mervyns is just wrong: the documentation is the proper documentation for supporting these damage items, and Mr. Rankel does explain the basis for the numbers he states for these damage items (totaling $1,444,000.00, which is 24.2% in amount of the total damages of $5,984,415.70 itemized in the expert report).  As will be seen by examining Mervyns's arguments, the problem is that, respectfully stated, Mervyns's counsel seems not to understand the business documents attached to the Rankel report and thus seems not to understand how the attached documentation establishes and supports these damage items (which the documentation does).  That problem, however, does not provide a basis for a motion to strike under Rule 26.

**A.    Item 3: Returns, Cancellations and Unjustified**
**Chargebacks For Accepted Garments.**

Damage Item 3 is for returns, cancellations and unjustified chargebacks for accepted garments, which Mr. Rankel set at $250,000.00 given the amount of "R for Rampage" business that Mervyns did with Great White Bear.  Mr. Rankel's report clearly states the "basis" for this damage item.  This damage item represents the losses from: (i) Mervyns returning garments and cancelling orders of made garments that ended up in a Great White Bear warehouse, as to which Great White

-11-

Bear had to take a loss on such garments because of the Rampage exclusive license; and (ii) Mervyns making what Great White Bear considered to be unauthorized deductions when paying Great White Bear's invoices -- chargebacks taken when Great White Bear's invoices were paid by Mervyns to the factor, Israel Discount Bank ("IDB Factor"), which had purchased the receivables as the time of the shipment and loaned funds to Great White Bear to operate and pay for the garments prior to being paid by Mervyns. These are very real costs resulting from Mervyns's breach of contract, and Mr. Rankel identifies these costs as appearing in two kinds of documents attached as collective Exhibit 4: (a) IDB Factor Aging Statements (accounts receivable); and (b) checks and client reports showing chargebacks.

Mervyns's attack on the stated "basis" for this damage item consists of a series of misconceived assertions about the documentation.

Mervyns disparages the documentation that Mr. Rankel provides for these costs as just "a stack of documents" (Mervyns Mem. p. 7); however, that is just being argumentative without real substance. IDB Factor Aging Statements, checks and client reports showing chargebacks are not just a stack of documents. It is true that, as Mervyns complains, IDB Factor Aging Statements include buyers other than Mervyns on them; however, that is because the IDB Factor Aging Statements track payments by buyers, including Mervyns, and those payments reflect, among other things, that as to garments factored by IDB, payments were or were not made by buyers, including Mervyns. It is the Mervyn numbers on those IDB Factor Aging Statements that are relevant.

Mervyns claims that Mr. Rankel does not explain how he relied on "this myriad of documents" to reach the figure of $250,000.00. (Mervyns Mem. p. 7.) This is not so. Only because Mervyns does not deal with the kind of documents attached to the report for this damage item -- IDB

-12-

Factor Aging Statements, checks and client reports showing chargebacks -- can Mervyns take the

position it does. The documents reflect returns, cancellations and chargebacks for accepted garments.

Mervyns admits that it did engage in making chargebacks, but asserts that they were justified

because of performance issues. (Mervyns Mem. p. 7.) The defense that Mervyns did not breach the

contract is certainly available to Mervyns; however, as Mr. Rankel notes in his report, his task is not

to adjudicate the breach of contract, but rather to do a accounting of the damages assuming, for the

purposes of the report, that there has been separately established the breach of contract.

**B.    Item 7: Lost Opportunity Costs.**

Damage item 7 is for lost opportunity costs, set at $700,000.00, resulting from the loss of

business that Great White Bear forewent in order to do the Mervyns's contract for the "R for

Rampage" line. The final Rankel report clearly states the "basis" for this conclusion. Mr. Rankel,

the outside accountant to Great White Bear, notes in his report that, excluding Mervyns, Great White

Bear had a core customer base of approximately $8 million, but that by prioritizing the work of the

company for Mervyns, Great White Bear was not able to fill orders for customers as Charming

Shoppes and Cato's because overseas factories applied deposits provided for other orders that were

applied to the costs of garments for Mervyns.   What Mr. Rankel attached as supporting

documentation for this damage item are confirmed orders from Charming Shoppes for delivery in

2005 that could not be shipped due to Great White Bear, LLC's business with Mervyns.

Mervyns's attack on the stated "basis" for this damage item again consists of an erroneous

series of argumentative assertions about the documentation.

Mervyns first claims that the documentation is "irrelevant" (Marvyns Mem. p. 8); however,

confirmed purchase orders are clearly relevant to a damage item that is for the losses resulting from

-13-

not being in a position to fill those purchase orders due to a contract with another customer (Mervyns) that breached that contract.

Mervyns then argues that there is no indication on the purchase orders that the orders were not filled by Great White Bear (Mervyns Mem. p. 8); however, a purchase order in the ordinary course of business would not contain that information.

Mervyns further argues that the attached documentation is only for Charming Shoppes and not Cato's (Mervyns Mem. p. 8); however, documentation for the loss resulting from the lost sales to Charming Shoppes alone substantiates the damage number.

Mervyns finally argues that even if the documentation shows lost sales, the numbers do not total to $700,000.00 (Mervyns Mem. p. 8); admittedly, the total is closer to $800,000.00, making the $700,000.00 number conservative.

**C.     Item 8:  Lost Overseas Deposits.**

Damage item 8 is for lost overseas deposits of $494,000.00. The final Rankel report clearly states the "basis" for this conclusion.  Mr. Rankel, the outside accountant to Great White Bear, explains that Great White Bear  was required by the overseas suppliers and factories to make deposits (advances) to overseas suppliers and factories in order to have the "R for Rampage" garments made for Mervyns and that the cancellation of the Mervyns orders cost Great White Bear the stated amount in lost deposits.  Mr. Rankel attached supporting documentation a schedule from Quickbooks showing the lost overseas deposits made for the "Mervyns" garments.

Mervyns's attack on the stated "basis" for this damage item consists of an argument about the supporting documentation that is just wrong.  Mervyns erroneously argues that the Quickbook schedule does not refer to overseas deposits, but only "Total Purchase of finish goods," and thus this

-14-

simply cannot be the basis of Mr. Rankel's opinion even though there is a "coincidence" of the

Quickbooks schedule showing a total of $494,000.00. (Mervyns Mem. pp. 8-9.) What "Total

Purchase of finish goods" in the Quickbooks schedule refers to, however, are payments made up

front for the Mervyns garments to what are overseas suppliers and factories; an up front payment is

a deposit or advance; and the Quickbooks schedule supports precisely the $494,000.00 included in

the damage total. That is not a coincidence, but quite differently an accounting of the lost advances

when Mervyns breached the contract.

### III.

### DAMAGE ITEMS 4, 5 AND 6 IN THE FINAL REPORT OF<br>STEPHEN J. RANKEL, C.P.A. ON DAMAGES SHOULD NOT BE STRICKEN

Mervyns argues that the Court should strike damage items 4, 5 and 6 in the expert report of

Stephen J. Rankel, C.P.A. on the ground that no documentation or other information as to the basis

for these damage items. (Marvyns Mem. p. 5.) The short answer is that the final Rankel report does

provide the "basis" for these damage items (totaling $277,549.04, which is 4.6% in amount of the

total damages of $5,984,415.70 itemized in the expert report). As will be seen by examining

Mervyns's arguments, the problem is that, respectfully stated, Mervyns's counsel seems not to

understand the garment business to a sufficient degree to know why these damage items are properly

included. That problem, however, does not provide a basis for a motion to strike under Rule 26.

### A.      Item 4: Lost Samples and Development Costs.

Damage item 4 is for lost samples and development costs st at $7,500.00. The final Rankel

report clearly states the "basis" for this conclusion: Great White Bear created a new sportswear line

for Mervyns with the exclusive license "R for Rampage" and in the process required incurring: (i)

-15-

costs in purchasing and making samples and (ii) development costs in patterns, sourcing and the like

Mervyns argues that the number for this damage item is a "random" figure that cannot be used, whether conservative or not. (Mervyns Mem. p. 5.) A "conservative" number as stated by Mr. Rankel, however, is not a "random" number and not a guess. Sample and development costs are inherent and cannot be avoided in the process of developing a new line of garments, which had a stated amount: $11,700,000 in committed sales from Great White Bear to Mervyns in a 18-month or 3-season period. Given that amount of business, a $7,500.00 figure for samples and development costs is a conservative number for the outside accountant to Great White Bear knowing the specific finances of Great White Bear and an accountant with 25 years in the apparel and textile industries.

**B.     Item 5: Lost Additional Employees' Time and Effort.**

Damage item 5 is for lost additional employees' time and effort calculated to be $260,049.04. The final Rankel report clearly states the "basis" for this conclusion: precise amounts for (a) two employees hired to handle the EDI for Mervyns, (b) employee time redirected to Mervyns and (c) employee time for sales, administrative, samples and patterns allocated to Mervyns.

Mervyns acknowledges that Mr. Rankel does provide an identification of the specific employees whose time is being included in the calculation based on specific amounts ascribed to each employee, but still faults Mr. Rankel for picking numbers out a hat and not providing such information as start and end dates for employees. (Mervyns Mem. p. 6.) This argument does not undercut the fact that Mr. Rankel provides a "basis" for the number for this damage item.

**C.     Item 6: Interest – Returns, Cancelled Orders and Unjustified Chargebacks.**

Damage item 6 is for interest on returns, cancelled orders and unjustified chargebacks, set at $10,000.00. The final Rankel report clearly states the "basis" for this conclusion: Great White

-16-

Bear was financed by IDB Factor (such financing was necessary and typical in the apparel industry); there was, however, an additional cost attributable to the Mervyns breach in additional finance interest resulting from unshipped garments in inventory, returned garments in inventory and unjustified chargebacks; and taking into account that the factor IDB was charging 12% on all advances and the amount of business that Mervyns did and was contracted to do with Great White Bear, additional interest charges that would not have occurred but for the Mervyns breach are what are included in this damage item.

Mervyns faults this damage item for lacking documentation and for being a guess (Mervyns Mem. pp. 6-7); however, supporting documentation under damage item 3 for the costs in the unshipped garments in inventory, returned garments in inventory and unjustified chargebacks is provided, and a guess is not made in stating a conservative number for this damage item. What Mr. Rankel supplies to derive the number is the 12% charge on all advances that the factor IDB was charging and the amount of the contracted for business with Mervyns.

## IV.

### RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND ITS INTERPRETATIVE CASE LAW DOES NOT SUPPORT STRIKING DAMAGES ITEMS 3-8 IN THE FINAL RANKEL REPORT AND DOES NOT SUPPORT AWARDING ATTORNEY FEES AND COSTS

Rule 37 of the Federal Rule of Civil Procedure and its interpretative case law does not support striking damages items 3-8 in the final Rankel report and certainly does not support awarding attorneys fees and costs. In compliance with an April 8, 2008 order of the Court that set a 48-hour deadline to provide a final Rankel report by 5:00 PM on April 10, 2008, there is no dispute that Great White Bear did so; and indeed, Mervyns's present motion contests the adequacy of only

-17-

certain damage items in the final Rankel report comprising 28.8% of the itemized damages in terms

of amount. Even as to Mervyns's motion, damage items 3 through 8 in the final Rankel expert report

should not be stricken for failure to provide the "basis" for the opinions stated in that expert report

because, as discussed above, the final Rankel report does provide that "basis" and is compliant with

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, precluding there being any issue of

sanctions under Rules 37(b)(2) and 37(c)(1) of the Federal Rules of Civil Procedure. What is more,

the relevant procedural history shows that prior to the April 8 Order and April 10 compliance with

that Order, Great White Bear provided an expert report by Laurence Lazar that is not being

challenged and further, Great White Bear, without conceding any inadequacy under Rule 26 of the

Federal Rules of Civil Procedure, provided requested supplementation as to prior iterations of the

Rankel report at every turn in a cooperative effort to get the discovery done in this case.

## A.    Rule 37 of the Federal Rules of Civil Procedure and Interpretative Case Law Does Not Support Striking Damage Items 3-8.

Rule 37 of the Federal Rules of Civil Procedure and its interpretative case law first of all do

not support striking damage items 3-8 from the Rankel report. As noted above, when there is

compliance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, the issue of sanctions,

much less the sanction of preclusion, is not even reached under Rules 37(b)(2)(A) and 37(c)(1) of

the Federal Rules of Civil Procedure.

Furthermore, the case law establishes that preclusion under Rule 37 is not automatic for non-

compliance with Rule 26(a)(2)(B) and is not generally ordered, *Atkins v. County of Orange*, 372

F.Supp.2d 377, 395-396 (S.D.N.Y. 2005). As noted above, this Court has recognized that a decision

to grant a motion to strike is a "drastic" one which should not be made without a showing of "good

-18-

cause." *Rodriguez v. Pataki*, 293 F.Supp.2d 305, 308-309 (S.D.N.Y. 2003)(Mass, Mag. J.).

The cases cited by Mervyns for preclusion involved different, more extreme facts and are inapposite:

(i)  *Venite v. St. Luke's/Roosevelt Hosp.*, No. 01 Civ. 4067, 2002 WL 1461493 (S.D.N.Y. 2002), a medical malpractice action, is cited by Mervyns for the proposition that the failure to meet a clearly articulated deadline to produce an expert report warrants preclusion. The facts in that case, however, were very different. There, an amended deadline was set by the Court giving two more months to both parties, the plaintiff submitted her expert report meeting the amended deadline, but the defendant's expert report was not submitted until two months after the amended deadline and six weeks before the scheduled trial, causing the trial court judge to conclude that under the circumstances of that very different case, preclusion of defendant's expert report was proper.

(ii)  *Williams v. County of Orange*, No. 03 Civ. 5182, 2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005), an action brought by a prisoner under 42 U.S.C. § 1983 and New York state law for alleged deliberate indifference to the prisoner's medical needs, is cited  by Mervyns for the proposition that the failures to meet deadlines and to identify portions of material relied upon for opinions warrants preclusion. Again, however, the facts were very different. The defendant County submitted an expert report by a doctor whose qualifications and basis in the medical records for the stated medical conclusion were not provided as required by Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure by the Court ordered scheduled deadline.

(iii)  *Maurizio v. Goldsmith*, No. 96 Civ. 4332, 2002 WL 535146 (S.D.N.Y. Apr. 9, 2002), a Lanham Act case, is cited by Mervyns for the proposition that preclusion is warranted

-19-

because the expert did not relate specific data to the damages calculation he made. As noted above

(pp. 8-9), *Maurizio* involved different facts: the expert report there asserted, based on the expert's

general experience in the publishing industry only, that damages suffered by plaintiff Maurizio

should include a proportionate share of 70% of defendant Goldsmith's credits, participation and

income from books authored by defendant Goldsmith. In contrast here, Mr. Rankel is not relying

upon his general knowledge and experience as an accountant for the damages items, but the

identified financial information from Great White Bear.

(iv) *Koppell v. New York State Bd. Of Elections*, 97 F.Supp.2d 477 (S.D.N.Y. 2000),

an Election Law case, is cited by Mervyns for the proposition that preclusion is warranted where the

expert does not provide a clear understanding of the data upon which the expert relied. As noted

above (p. 9), *Koppell* involved different facts: while one expert report submitted by plaintiff there

was upheld against challenge, an expert report submitted by defendants was stricken by the District

Judge because it did not satisfy the requirements of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S.

579 (1993), and Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, as there was no relation

between, on the one hand, pieces of campaign literature and newspaper articles and, on the other, his

conclusion that "position bias" was not determinative in the analyzed elections. In contrast here, Mr.

Rankel has provided an accounting of damages based on a theory of damages and specific financial

information, not an amorphous political analysis of elections.

**B.      Rule 37 of the Federal Rules of Civil Procedure and Interpretative
         Case Law Does Not Support Awarding Fees and Costs.**

Rule 37 of the Federal Rules of Civil Procedure and its interpretative case law also do not

support awarding attorney fees and costs with respect to the final Rankel report. As noted above,

-20-

when there is compliance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, the issue of sanctions, much less the sanction of awarding fees and costs, is not even reached under Rules 37(b)(2) and 37(c)(1) of the Federal Rules of Civil Procedure.

Furthermore, sanctions under Rule 37 of the Federal Rules of Civil Procedure are required to be "just," _Daval Steel Prod. v. M/V Fakredine_, 951 F.2d 1357, 1366 (2d Cir. 1991), and an award of fees and costs require far, far more extreme circumstances than this case. _See, e.g._, _Remee Products Corp. v. Sho-Me Power Electric Cooperative_, No. 01 Civ. 5554, 2002 WL 31323827 (S.D.N.Y. Oct. 17, 2002)(repeated, ongoing two year failure by defendant to obey numerous court orders).

The one and only case cited by Mervyns is inapposite. In _Rouson v. Eicoff_, No. 04 Civ. 2784, 2007 WL 1827422 (E.D.N.Y. June 25, 2007), the sanction of awarding fees and costs was warranted because "defendants' counsel repeatedly violated court orders." As much as Mervyns strains to depict Great White Bear in the same light (Mervyns Mem. 10-11), that is not the case here at all. Mervyns has not challenge and could not reasonably challenge, under Rule 26 of the Federal Rules of Civil Procedure, the sufficiency of the expert report of Laurence P. Lazar, which has not been an issue for six weeks as of the date of this Memorandum of Law; and in compliance with the Court's Order dated April 8, 2008, Mervyns has received the final expert report of Stephen J. Rankel, C.P.A. that is not even challenged by Mervyns as to 71.2% of the itemized damages in terms of amount and that, as shown above, is fully compliant with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. What Mervyns does in order to depict Great White Bear as derelict is to misuse Great White Bear's cooperative willingness to have supplement its expert reports as evidence of wilful non-compliance with court orders. A review, however, of the "Relevant Procedural History" stated

-21-

above (pp. 2-5) leads inexorably to the conclusion that it would not be "just" for fees and costs to

be awarded.

## CONCLUSION

For the reasons stated above, Defendant Mervyns's motion to strike damage items 3-8 in

the final Rankel report and to be awarded fees and costs should be denied, and such further and

other relief as the Court deems proper should be ordered.

**Dated:  New York, New York**
**        April 24, 2008**

                                        **NESENOFF & MILTENBERG, LLP**

                                        By: ___/s/ Philip A. Byler, Esq._____
                                            **Philip A. Byler, Esq.**

                                        **Attorneys for Plaintiff Great White Bear, LLC**
                                        **363 Seventh Avenue - Fifth Floor**
                                        **New York, New York 10001**
                                        **212.736.4500**