UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

GREAT WHITE BEAR, LLC,                           :

                      Plaintiff,           :       **MEMORANDUM**
                                            **DECISION AND ORDER**
       -against-                          :
                                            06 Civ. 13358 (RMB)(FM)

MERVYNS, LLC,                                    :

                      Defendant.         :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

        In this action, plaintiff Great White Bear, LLC ("GWB") alleges that defendant Mervyns, LLC ("Mervyns") breached its contractual commitment to purchase $11.7 million worth of clothing from GWB. Mervyns has moved to strike certain portions of one of GWB's two expert reports on the theory that they do not satisfy the requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Mervyns also seeks the legal fees and costs that it has incurred in making this motion. For the reasons set forth below, Mervyns' motion to strike is granted in part and denied in part, and its application to recover fees and costs is denied.

I.     Background

        In accordance with my scheduling orders, GWB served Mervyns with its experts' reports on January 21, 2008. (See Def.'s Mem. at 1; Docket No. 46). The report at issue here was prepared by GWB's damages expert, Stephen J. Rankel, who also serves

as the outside accountant for GWB. (See Decl. of Lisa T. Simpson, Esq., dated Apr. 17, 2008 ("Simpson Decl."), Ex. A). After Mervyns contended that the report did not meet the requirements of Rule 26(a)(2)(B), GWB agreed to supplement Mr. Rankel's report. (Id. Exs. B-F). Thereafter, when that supplementation was not forthcoming, Mervyns' counsel requested the Court to set a firm date for its production. (Id. Ex. G). I subsequently directed GWB to complete its expert disclosures by March 14, 2008. (Docket No. 47).

GWB served Mr. Rankel's supplemental report on February 29, 2008, and a second supplemental report on March 17, 2008. (Def.'s Mem. at 2; Simpson Decl. Exs. I-K). Neither of these additional reports satisfied Mervyns. Accordingly, on March 21, 2008, Mervyns requested a conference with the Court to address its proposed motion to strike Mr. Rankel's report. (Simpson Decl. Ex. L). After a telephone conference on April 8, 2008, I directed GWB to "provide [Mervyns] with Mr. Rankel's final expert report, together with any necessary schedules and other documentation," by April 10, 2008. (Docket No. 51 (emphasis in original)). I further directed that the amended report "take the form of one cohesive report, not supplements to the prior reports prepared by the expert." (Id.). Finally, I authorized Mervyns to file a motion to strike the final report if it believed inadequacies persisted. (Id.).

As I directed, GWB served Mr. Rankel's final damages report ("Report") on April 10, 2008. (See Simpson Decl. Ex. O). In that Report, Mr. Rankel itemizes the

damages that GWB allegedly suffered based on the assumption that Mervyns breached its contract. (Report at 1). He identifies two general categories of damages: (a) lost profits resulting from the breach and (b) additional costs that GWB incurred in reliance on Mervyns' contractual commitments. (Id. at 3).

On April 17, 2008, Mervyns moved, pursuant to Rules 26(a)(2)(B), 37(b)(2), and 37(c)(1) of the Federal Rules of Civil Procedure, to strike various portions of the Report relating to GWB's additional costs and to preclude Mr. Rankel from testifying with respect to them. (Docket No. 56). More specifically, Mervyns challenges what Mr. Rankel has labeled Damage Items 3 through 8. (Def.'s Mem. at 1). These items relate to: (a) returns, cancellations, and unjustified chargebacks for accepted garments; (b) lost samples and development costs; (c) additional employee time and effort; (d) interest; (e) lost opportunity costs; and (f) lost overseas deposits. (Report at 5). Mervyns also has moved for the fees and costs it incurred in making its motion. (Docket No. 56). Although the motion relies solely on Rules 26 and 37 of the Federal Rules, Mervyns purports to reserve the right to file a later motion to preclude Mr. Rankel's testimony based on Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). (See Def.'s Mem. at 5 n.4).

II.   Discussion

    A.   Rule 26(a)(2)(B)

Rule 26(a)(2)(B) requires that a party seeking to introduce expert testimony provide a written report, signed by the expert, which includes "(i) a complete statement of all opinions the witness will express and the basis and reasons for them[ and] (ii) the data or other information considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Thus, the Rule contemplates the delivery of a "detailed and complete" report outlining the testimony the expert witness is expected to present and "the reasons therefor." Rule 26(a)(2)(B) advisory committee's note on 1993 amend.; see Giladi v. Strauch, No. 94 Civ. 3976 (RMB)(HBP), 2007 WL 415365, at *7 (S.D.N.Y. Feb. 6, 2007). To meet this threshold, the report must disclose the underlying conclusions on which the expert's opinion is based and "how" and "why" the expert reached those conclusions. Salgado v. Gen. Motors Corp., 150 F.3d 735, 741 n.6 (7th Cir. 1998) (citing Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J. 1996)); Giladi, 2007 WL 415365, at *7; see also Richman v. Sheahan, 415 F. Supp. 2d 929, 940 n.8 (N.D. Ill. 2006) ("An expert report need not be a 'primer on why the facts allow the expert to reach [his] conclusion,' but must be 'sufficient to establish the reasoning underlying the conclusion.'") (quoting Vollmert v. Wis. Dep't of Transp., 197 F.3d 293, 300-01 (7th Cir. 1999)) (brackets in original); Lava Trading Inc. v. Hartford Fire Ins. Co., No. 03 Civ. 7037 (PKC), 2005 WL 4684238, at *7 (S.D.N.Y. Apr. 11, 2005) (Report & Rec. of Dolinger, Mag. J.) (report

must contain the "essential details needed to understand and assess" the expert's conclusions).

The purpose of these requirements is to prevent parties from serving the sort of "sketchy and vague" expert reports that had been the norm before the Rule was amended in 1993, see Rule 26(a)(2)(B) advisory committee's note on 1993 amend.; Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 571 (5th Cir. 1996), thereby furthering trial preparation.  Lava Trading, 2005 WL 4684238, at *7.  Indeed, the drafters of the Rule anticipated that the more thorough reports that parties would be required to provide would shorten and narrow, if not eliminate, follow-up depositions of the experts.  Id.; see Salgado, 150 F.3d at 741 n.6 ("The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.").

    B.    Application of Rule to Facts

        1.    Damage Item 3:  Returns, Cancellations, and Unjustified Chargebacks for Accepted Garments

Damage Item 3 relates to the losses GWB allegedly sustained when Mervyns returned certain garments, as well as certain "unauthorized deductions" allegedly taken by Mervyns.  (Report at 8-9).  Mr. Rankel states in his Report that these costs "may reasonably be set, given the amount of . . . business that Mervyns did with GWB, at $250,000."  (Id. at 9).  To support this calculation, Mr. Rankel attaches Israel

5

Discount Bank factor aging statements and checks and client reports reflecting chargebacks.[1]  (Report at 9 & Ex. 4).

A damage figure in an expert report cannot satisfy Rule 26(a)(2)(B) simply by stating a conclusory figure and then attaching documents that purportedly support that figure.  Rather, the report must supply actual calculations with detailed and complete information elucidating how the expert arrived at the damage figure.  See Lava Trading, 2005 WL 4684238, at *7 (report failed to satisfy Rule 26(a)(2)(B), in part, because it lacked "actual calculation of losses").  Here, it is unclear whether the documents cited by Mr. Rankel support his determination that these costs amount to $250,000 because Mr. Rankel's explanation of his calculation is opaque and sparse.  Indeed, Mr. Rankel has failed to supply any calculation which ties the numbers contained in the underlying documents to the $250,000 figure he cites.  Accordingly, Mr. Rankel's vague explanation for Damage Item 3, without any supporting calculations, does not satisfy the requirements of Rule 26(a)(2)(B).

### 2. Damage Item 4:  Lost Samples and Development Costs

The lost samples and development costs item relates to additional costs that GWB allegedly incurred in creating a new sportswear line for Mervyns.  Mr. Rankel states that these costs, totaling $7,500, consist of the "costs [of] purchasing and making

---

[1] In its role as a factor, Israel Discount Bank purchased GWB's receivables when GWB shipped merchandise to Mervyns, thereby enabling GWB to have funds prior to Mervyns' payments to GWB.  (See Pl.'s Mem. at 11).

samples" and "development costs [for] patterns, sourcing and the like." (Report at 9). Mervyns contends that Mr. Rankel's estimate is nothing more than a guess. (Def.'s Mem. at 5). GWB responds that his calculation is a conservative estimate by an accountant familiar with the finances of GWB and therefore reliable. (Pl.'s Mem. at 15).

Although Mr. Rankel may have an intimate knowledge of GWB's finances, the portion of his Report relating to this damage item provides no explanation, let alone a detailed analysis, as to how Mr. Rankel arrived at the $7,500 figure. Furthermore, Mr. Rankel fails to set forth any specific data or other information he considered in calculating this figure, and he cites no supporting documentation. Damage Item 4 consequently does not comply with Rule 26(a)(2)(B).

        3.      <u>Damage Item 5: Lost Additional Employee Time and Effort</u>

Damage Item 5 refers to the cost of additional employees that GWB allegedly needed to hire to fulfill the Mervyns contract. (Report at 9). Mr. Rankel calculates the value of this aspect of GWB's damages as $260,049.40, an amount which apparently is the sum of (a) the "pay" and "benefits" of two newly hired employees, (b) the "portion of . . . compensation" for existing employees whose time was redirected to the Mervyns account, and (c) $5,000 of employee time spent on "sales, administrative, samples, and patterns work." (<u>Id.</u> at 9-10).

Once again, the Report provides no explanation or documentation with respect to these figures. For example, the Report does not adequately explain how Mr.

7

Rankel calculated (a) each employee's pay, (b) each employee's benefits (and why he utilized a thirty percent rate to calculate those benefits), (c) the compensation of existing employees attributable to work for Mervyns (and what percentage of each employee's total salary this portion represents), and (d) the $5,000 of time spent on sales and other work.  In short, Mr. Rankel has utterly failed to show the "essential details needed to understand and assess" his calculations or even state what data or other information Mr. Rankel considered in arriving at his figures.  Lava Trading, 2005 WL 4684238, at *7.  Given these significant gaps, Mr. Rankel's discussion of this item does not meet the requirements of Rule 26(a)(2)(B).

    4.    <u>Damage Item 6:  Interest</u>

Damage Item 6 relates to additional interest charges in the amount of $10,000 that GWB allegedly incurred due to unshipped garments in inventory, returned garments in inventory, and unjustified chargebacks.[2]  (Report at 10).  GWB contends that Mr. Rankel calculated this figure based upon the twelve percent interest rate that GWB's bank charged for advances.  (Pl.'s Mem. at 16).

Assuming that this is an appropriate rate, the Report still fails to explain how Mr. Rankel arrived at the $10,000 figure.  For example, if Mr. Rankel calculated interest for a one-year period, he would have had to apply the twelve percent rate to approximately $83,333 ($10,000 ÷ 12%) to decide that this item amounted to $10,000.

---

    [2]    In pages 10 and 11 of the Report, Damage Items 6, 7, and 8 are incorrectly labeled Damage Items 7, 8, and 9.  (<u>See</u> Report at 10-11).

However, $83,333 does not appear to correspond to any number in the Report or supporting documentation. (It certainly does not correspond to the total amount of contracted business with Mervyns or the total amount of allegedly cancelled business by Mervyns, both of which are in the millions. (Report at 7)). Mr. Rankel may, of course, have applied the twelve percent rate to the total value of unshipped garments in inventory, returned garments in inventory, and unjustified chargebacks as the caption of this item suggests. Or perhaps he applied the interest rate over a period of time shorter than one year. The fact that the answers to these questions cannot be determined from his Report establishes why this damage calculation does not meet the requirements of Rule 26(a)(2)(B). It therefore cannot be the subject of expert testimony.

        5.        <u>Damage Item 7: Lost Opportunity Cost</u>

This item relates to work orders that GWB allegedly was unable to fill because it performed work for Mervyns instead. Mr. Rankel contends that the unfilled orders of two GWB customers, Charming Shoppes and Cato, amount to $700,000. (Report at 10-11). Once again, it is a mystery how Mr. Rankel made this determination. As an initial matter, the documentation attached to the Report indicates that Mr. Rankel is basing his figure on unfulfilled purchase orders. Such unfilled purchased orders, which are akin to lost sales, obviously do not accurately reflect GWB's damages because they reflect gross receipts and have not been adjusted to account for the cost of manufacturing the goods which allegedly would have been sold.

The only supporting documentation Mr. Rankel refers to with respect to this item consists of the unfilled purchase orders of Charming Shoppes. Although Mr. Rankel also indicates that his calculation includes unfulfilled purchase orders submitted by Cato, no purchase orders for Cato are attached to his Report as exhibits, nor has he provided any itemization of the lost opportunity costs allegedly related to Cato.

Using Charming Shoppes purchase orders, it is impossible to determine how Mr. Rankel calculated the $700,000 figure. GWB contends that the "$700,000 number [is] conservative," and that the "total is closer to $800,000," (Pl.'s Mem. at 13), but many of the purchase orders attached to the Report relate to the same goods. When this duplication is eliminated, GWB's documents seem to show that the total amount of the allegedly unfilled purchase orders is closer to $586,824.[3] In any event, even if Mr. Rankel did not engage in double counting, his Report fails to provide an adequate explanation of how and why he arrived at the sum of $700,000 for this aspect of GWB's alleged damages. He therefore has failed to meet the requirements of Rule 26(a)(2)(B).

      6.      <u>Damage Item 8: Lost Overseas Deposits</u>

This item relates to deposits made to international suppliers and factories that GWB allegedly forfeited when Mervyns breached the contract. (Report at 11). Mr. Rankel asserts that these lost deposits total $494,000. In marked contrast to his

---

      [3]      The $586,824 figure relates to three distinct purchase orders attached to the Report: $213,928 for purchase order number 9254566, $139,104 for purchase order number 6887541, and $233,792 for purchase order number 9846213. (<u>See</u> Report Ex. 7).

discussion of the other challenged damage items, in this instance Mr. Rankel has attached a Quickbooks schedule to his Report to explain his calculations. The Quickbooks schedule details fourteen purchases of finished goods for the Mervyns clothing line. (Report Ex. 8). It is not clear how these "purchase[s] of finished goods" correspond to the unrecovered deposits to international suppliers that allegedly comprise this item. Presumably, the purchases of finished goods that GWB was required to honor are the deposits to which Mr. Rankel refers. In any event, in this instance it is possible to determine how Mr. Rankel calculated GWB's damages. Indeed, on his Quickbooks schedule, Mr. Rankel lists fourteen separate purchases of finished goods, the dates of the purchases, the amounts of the purchases, the method of payment, and the applicable account numbers. These separate entries total approximately $494,000. This is sufficient to permit Mervyns to explore Mr. Rankel's calculations at his deposition.

  C. <u>Appropriate Remedy</u>

    Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, if "a party fails to provide information . . . required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Moreover, if a party does not comply with Rule 26(a) the court may order the payment of reasonable expenses and attorney's fees caused by the failure, as well as "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A), (C).

Despite the mandatory language of the Rule, the Second Circuit has held that preclusion is a discretionary remedy, even if "the trial court finds that there is no substantial justification and the failure to disclose is not harmless." Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006). In exercising its discretion as to whether to impose sanctions, a court should consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006) (quoting Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc., 118 F.3d 955, 961 (2d Cir. 1997)) (brackets in original).

Here, GWB's failure to comply with Rule 26(a)(2)(B) with respect to Damage Items 3 through 7 clearly was not justified since it was given many opportunities to correct its report before Mervyns filed its motion to strike. Nor can GWB's failure be considered harmless since Mervyns was forced to file a motion, which has delayed the progress of this case. In these circumstances, Mervyns has made the prima facie showing required to secure an award of sanctions under Rule 37(c)(1).

Before imposing sanctions, however, it is appropriate to consider the factors identified by the Second Circuit in Balsamico. The first of these factors, a party's explanation for its failure to comply with discovery, weighs heavily in favor of Mervyns.

GWB has yet to offer any explanation for its failure to comply with Rule 26(a)(2)(B) despite having been given numerous opportunities. Indeed, even now, GWB seeks to justify what obviously is a woefully inadequate report.

The second factor, the importance of the testimony to GWB, also weighs in favor of preclusion. Although damages testimony is crucial in a breach of contract action, it appears that nothing would preclude GWB from offering at least some of the substance of the Report through a fact witness, assuming a proper foundation can be laid. For example, an individual at GWB with knowledge presumably could testify to the fact that the company spent money to hire additional employees to handle the increased volume of work arising out of the Mervyns contract. A fact witness similarly could testify about Mervyns' allegedly improper return of garments. The fact that GWB can prove certain challenged aspects of its case without the trappings of an accounting expert witness thus augurs in favor of preclusion.

The third factor weighs slightly against imposing sanctions. Because expert discovery is ongoing, and Mervyns has yet to produce its own expert reports, Mervyns would not suffer undue prejudice if the Court granted GWB more time to cure the Report. However, turning to the fourth factor, GWB does not deserve such a further continuance since it already has had several opportunities to address the deficiencies of the Report, but has failed to respond adequately. To allow additional time now would be unfair not only to Mervyns, but to the Court.

Balancing these factors, I find that sanctions are warranted. Accordingly, Damage Items 3 through 7 are stricken, and Mr. Rankel will be precluded from testifying with respect to these items at trial.[4] See Williams v. County of Orange, No. 03 Civ. 5182 (LMS), 2005 WL 6001507, at *4-5 (S.D.N.Y. Dec. 13, 2005) (granting motion to preclude under Rule 37(c)(1) for failure to comply with Rule 26(a)(2)(B)); Lava Trading, 2005 WL 4684238, at *7-9, 21 (same); Wechsler v. Hunt Health Sys., Ltd., 381 F. Supp. 2d 135, 155-57 (S.D.N.Y. 2003) (granting, in part, motion to strike under Rules 26(a)(2)(B) and 37(c)(1)); Giladi v. Strauch, No. 94 Civ. 3976 (RMB)(HBP), 2001 WL 388052, at *9 (S.D.N.Y. Aug. 16, 2001) (same).

I nevertheless decline to assess fees and costs against GWB. The preclusion of evidence is, of course, itself a harsh sanction. Moreover, Mervyns' motion was not entirely successful as the Court did not strike Damage Item 8. In these circumstances, in the exercise of my discretion, I find that preclusion alone is a sufficient sanction. See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979); Rahman v. Smith & Wollensky Rest. Group, Inc., No. 06 Civ. 6198 (LAK)(JCF), 2008 WL 696807, at *1 (S.D.N.Y. Mar. 14, 2008) (noting that preclusion is a harsher sanction than the shifting of costs and fees).

---

[4] I note that Mervyns' motion to strike and preclude evidence is a "nondispositive" motion within the scope of the general pretrial referral here. See, e.g., St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., No. 91 Civ. 0748 (MJL), 1996 WL 19028, at *11 (S.D.N.Y. Jan. 17, 1996) (motion to strike for failure to comply with Rule 26(a)(2)(B) is nondispositive); Ferriso v. Conway Org., No. 93 Civ. 7962 (KMW), 1995 WL 580197, at *1 (S.D.N.Y. Oct. 3, 1995) (same).

III.   Conclusion

For the foregoing reasons, Mervyns' motion to preclude GWB's proposed expert witness Stephen J. Rankel from testifying as to certain aspects of his Report, (Docket No. 56), is granted in part and denied in part. Additionally, the Court will hold a further telephone conference on June 4, 2008, at 3:30 p.m. Mervyns' counsel should initiate that call.

SO ORDERED.

Dated:   New York, New York
         May 27, 2008

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Honorable Richard M. Berman
United States District Judge

Philip A. Byler, Esq.
Nesenoff & Miltenberg LLP
Fax: (212) 736-2260

Lisa T. Simpson, Esq.
Orrick, Herrington & Sutcliffe LLP
Fax: (212) 506-5151