UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

GREAT WHITE BEAR, LLC,

                        Plaintiff,

      -against -

MERVYNS, LLC,

                    Defendant.
--------------------------------------------------------------x

06 Civ. 13358 (RMB)(FM)


## PLAINTIFF GREAT WHITE BEAR LLC'S OBJECTIONS TO: (i) THE MEMORANDUM DECISION AND ORDER OF U.S. MAGISTRATE JUDGE MASS DATED MAY 27, 2008, AND (ii) THE ORDER OF U.S. MAGISTRATE JUDGE MASS DATED JUNE 4, 2008


**NESENOFF & MILTENBERG, LLP**
**Attorneys for Plaintiff Great White Bear, LLC**
**363 Seventh Avenue - Fifth Floor**
**New York, New York 10001**
**212.736.4500**

-i-

## iiTABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

      A.    The May 27, 2008 Memorandum Decision and Order ........................................... 1

      B.    The June 8, 2008 Order ........................................................................................ 1

      C.    Objections ........................................................................................................ 2

I.     STATEMENT OF PROCEDURAL FACTS IN THE
MAY 27, 2008 MEMORANDUM DECISION AND ORDER ......................................... 2

II.    THE OBJECTIONS TO STRIKING RANKEL REPORT
DAMAGES ITEMS 3-7 IN THE MAY 27, 2008
MEMORANDUM DECISION AND ORDER ................................................................

      A.    Damages Item 3: Returns, Cancellations and Unjustified Chargebacks .................

      B.    Damages Item 4: Lost Sample and Development Costs .........................................

      C.    Damages Item 5: Lost Additional Employee Time and Effort ...............................

      D.    Damages Item 6: Interest....................................................................................

      E.    Damages Item 7: Lost Opportunity Cost ..............................................................

III.   THE OBJECTIONS TO THE "REMEDY" IN THE
MAY 27, 2008 MEMORANDUM DECISION AND ORDER .........................................

      A.    "Explanation" .....................................................................................................

      B.    "Importance of Testimony" ..................................................................................

      C.    The Prejudice Suffered By The Opposing Party In Meeting New Testimony..........

      D.    The Possibility Of A Continuance ........................................................................

IV.   THE OBJECTIONS TO THE JUNE 4, 2008 ORDER.........................................................

CONCLUSION ....................................................................................................

1

## PRELIMINARY STATEMENT

Plaintiff Great White Bear, LLC ("Great White Bear") submits these Objections, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to (i) the Memorandum Decision and Order dated May 27, 2008, of U.S. Magistrate Judge Frank Mass (the document filed as Docket No. 62 in the S.D.N.Y. electronic filing system and hereinafter the "May 27, 2008 Memorandum Decision and Order"); and (ii) the Order dated June 4, 2008, of U.S. Magistrate Frank Mass dated June 4, 2008 (the document filed as Docket No. 63 in the S.D.N.Y. electronic filing system and hereinafter the "June  8, 2008 Order").

### A.    The May 27, 2008 Memorandum Decision and Order.

The May 27, 2008 Memorandum Decision and Order granted in part and denied in part the motion of Defendant Mervyns, LLC ("Mervyns") to strike portions of one of two expert reports of Great White Bear (C.P.A.) for alleged failure to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and to assess legal fees and costs in the making of the motion.

Mervyns had sought to have stricken Damages Items 3 through 8 in the expert report of Stephen J. Rankel, C.P.A. ("Rankel Report") under Rule 26(a)(2)(B) of the Federal Rules of Civil Proedure.  Mervyns did not (and did not dare to) move as to Damages Items 1 and 2 in the Rankel Report for lost profits and lost royalty payments, which total approximately $4.2 million and constitute over 70% of the claimed damages.  Mervyns did not (and did not dare to) move against the expert report of industry expert Laurence Lazar.

The May 27, 2008 Memorandum Decision and Order: (i) struck Damages Items 3 through 7 in the Rankel Report, (ii) ruled that Stephen J. Rankel, C.P.A. may not testify at trial on Damages Items 3 through 7 without the opportunity to cure the alleged defects in Damages Items

2

3 through 7 in the Rankel Report, but (iii) denied striking Damages Item 8 in the Rankel Report and (iv) denied Mervyns's motion for legal fees and costs.

**B.      The June 8, 2008 Order.**

The June 8, 2008 Order provides that Mervyns shall provide its expert report on or before June 20, 2008 and that any dispositive motions are to submit to Judge Richard Berman a letter request.

**C.      Objections.**

These Objections concern certain statements and rulings in the May 27, 2008 Memorandum Decision and Order that were clearly erroneous and contrary to law. The May 27 Memorandum Decision and Order is premised on a clearly erroneous, one-sided mistreatment of the relevant procedural facts. The errors in the May 27, 2008 Memorandum Decision and Order in striking Damages Items 3 through 7 all have their root in an apparent misunderstanding of garment production and accountancy in the garment industry; supporting documentation is conceded for the most part to be provided. The errors in precluding Mr. Rankel from testifying as to Damages Items 3 through 7 without the opportunity to cure result from an erroneous sanctions analysis in misapplying the recognized legal factors for determining whether preclusion is proper.

These Objections also concern what was clearly erroneous and contrary to law in the June 8, 2008 Order: that it served as an implementing order to objected to May 27, 2008 Memorandum Decision and Order and that the June 8, 2008 Order incorrectly omitted, presumably by mistake, *Daubert* motion as one to be the subject of a letter (along with any dispositive motions) to Judge Berman for permission to move.

3

**I.**

## STATEMENT OF PROCEDURAL FACTS IN THE
## MAY 27, 2008 MEMORANDUM DECISION AND ORDER

The following are the Objections to the part of the May 27, 2008 Memorandum Decision and Order stating the procedural facts. (Doc. 62, pp. 1-3.)

The May 27, 2008 Memorandum Decision and Order omits to state procedural facts that change entirely the perception of Mervyns's Rule 26(a)(2)(B) motion. There is a reason for those omissions: the May 27, 2008 Memorandum Decision and Order rests entirely on the distorted version of the procedural facts in the declaration of Mervyns's counsel and completely ignores the declaration of Great White Bear's counsel that stated more precisely and in detail the procedural facts with express reference to the supporting documents. (The Declaration of Philip A. Byler, Esq., with supporting documents, is filed as Document No. 59 in the S.D.N.Y. electronic filing system.) A clearly erroneous one-sided presentation of the procedural facts is thus stated in the May 27, 2008 Memorandum Decision and Order, as the discussion next shows.

1. The May 27, 2008 Memorandum Decision and Order omits to state that following fact discovery (including voluminous document production by Great White Bear to Mervyns and depositions by Mervyns counsel of Great White Bear principals), on November 29, 2007, the Court entered an Order requiring, among other things, that Great White Bear disclose its experts by December 14, 2007, and submit expert reports by January 11, 2008. On December 14, 2007, Great White Bear made the required disclosure of its experts per the November 29, 2007 Order. On January 11, 2008, the parties by agreement requested an extension of Great White Bear's due date for expert reports from January 11, 2008, to January 21, 2008; and the Court so ordered that

4

request.  (Byler Decl. ¶ 4 & Exs. C-E.)

2.  The May 27, 2008 Memorandum Decision and Order notes that on January 21, 2008,

Great White Bear served two expert report in compliance with the Court-ordered deadline and

that Mervyns's Rule 26(a)(2)(B) motion concerned the report of Stephen J. Rankel the outside

accountant to Great White Bear; however, the May 27, 2008 Memorandum Decision and Order

omits to state that Stephen J. Rankel is a certified public accountant (since 1983) who is an

Executive Partner of the New York City accounting firm of Citrin Cooperman & company, LLP

and who has had 25 years of experience as an accountant servicing companies in the apparel and

textile industries.  (Byler Decl. ¶ 5 & Exs. F-G.)

3.  The May 27, 2008 Memorandum Decision and Order omits to state the following:

Over three weeks later, on February 6, 2008, counsel to Mervyns sent a letter to counsel for Great

White Bear stating that the two expert reports did not comply in all particulars with Rule 26 of

the Federal Rules of Civil Procedure.  On February 13, 2008, counsel to Great White Bear

replied providing informal supplementation and promising supplemental reports to incorporate

the informally provided information when the two expert witnesses returned to New York.  On

February 20, 2008, counsel to Great White Bear provided a supplemental report of industry

expert Laurence P. Lazar (concerning prior testimony, publications and compensation) and

promised a supplemental report by Stephen J. Rankel, C.P.A. (who was still out of town at the

time).  Thereafter, there was no issue as to completeness of the expert report of Laurence P.

Lazar.  (Byler Decl. ¶ 6 & Exs. H-J.)

4.  The May 27, 2008 Memorandum Decision and Order states that Mervyns requested the

Court to set a deadline for the supplementation of the Mr. Rankel's report, that Magistrate Mass did

5

so ans set a deadline of March 14, 2008 and that Great White Bear provided supplementation on

February 29, 2008 and March 17, 2008. The May 27, 2008 Memorandum Decision and Order omits,

howevr, the following: It was on February 21, 2008, that counsel to Mervyns, in the face of Great

White Bear's promised supplementation when Mr. Rankel returned to town, applied to the Court

requesting that a firm date be set for the supplemented expert report of Stephen J. Rankel, C.P.A.

as to damages and an extension of Mervyns's time to serve its expert reports. On February 25, 2008,

the Court set March 14, 2008, as the date for the supplementation to the Rankel report and extended

Mervyns's time as to its expert reports. On February 28, 2008, well before the Court deadline, Great

White Bear provided a supplemented report from Stephen J. Rankel, C.P.A. and requested counsel

to Mervyns to advise counsel to Great White Bear if it were believed that any further

supplementation was in order. (Byler Decl. ¶ 7 & Exs. K-L.) One week later, on March 6, 2008,

counsel to Mervyns sent a letter to counsel Great White Bear summarily asserting, without specifics,

that the supplemented Rankel report was still insufficient. Without agreeing with counsel to

Mervyns concerning the alleged deficiencies under Rule 26(a)(2)(b), counsel to Great White Bear

provided on March 14, 2008, an additional supplementation to the Rankel report with a cover letter

pointing out the supplemented Rankel report complied with Rule 26 of the Federal Rules of Civil

Procedure and requesting that any further issue be raised with counsel. (Byler Decl. ¶ 8 & Exs. M-

N.)

5. The May 27, 2008 Memorandum Decision and Order omits the following: Nothing was

heard from counsel to Mervyns for a week until the afternoon of Good Friday, March 21, 2008, when

counsel to Mervyns made application to the Court for permission to move to strike the Rankel report;

and on that same day, counsel to Great White Bear replied that the supplemented Rankel report

6

complied with Rule 26 of the Federal Rules of Civil Procedure and that a motion to strike the whole report was not justified based on the items raised by Mervyns.  (Byler Decl. ¶ 9 & Exs. O-P.) Instead, the May 27, 2008 Memorandum Decision and Order simply states that on March 21, 2008, Mervyns's counsel requested a conference to discuss a motion to strike, that at the teleconference of April 8, 2008, the Magistrate Judge directed Great White Bear to provide Mervyns, on April 10, 2008, a final Rankel report in one cohesive form and authorized Mervyns to move to strike and that on April 10, 2008, Great White Bear complied with the Magistrate's April 8, 2008 directive and served and filed the final expert report of Stephen J. Rankel, C.P.A. (defined above as the "Rankel Report").

6. The May 27, 2008 Memorandum Decision and Order omits to state: that on April 10, 2008, when Great White Bear counsel produced the Rankel Report, Great White Bear counsel did so under cover of letter stating why the final expert report fully satisfied Rule 26 of the Federal Rules of Civil Procedure; that in the Order issued by the Court on April 8, 2008, when permission was given by the Court for Mervyns to make, by April 17, 2008, a motion to strike, Mervyns was also excused from submitting its expert reports in the meantime; and that it was at approximately 11:00 PM on April 17, 2008, that counsel for Mervyns electronically filed, albeit incorrectly, its motion to strike Damage Items 3-8 in the final Rankel report and to be awarded fees and costs. (Byler Decl. ¶¶ 10-11 & Exs A-B; Simpson Decl. Ex. O.)  It should not be overlooked that the Magistrate Judge gave a 48 hour deadline to produce a final report with permission already given to Mervyns to make a motion to strike.

7. The May 27, 2008 Memorandum Decision and Order notes that Mervyns, when making its motion under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, reserved its right to make

7

a motion as to Damages Items 1-2 in the Rankel Report under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. The May 27, 2008 Memorandum Decision and Order omits to state, however, that at the conference before District Judge Richard M. Berman held on April 16, 2008, Judge Berman stated that all motions for summary judgment, *Daubert* preclusion and real party in interest are be submitted to him at one time before trial.  (Byler Decl. ¶ 2 n. 1.)  This last omission is only significant because the June 4, 2008 Order fails, presumably by mistake, to include reference to any *Daubert* preclusion motion that Mervyns might wish to make as one to be addressed (along with any dispositve motions) in a letter to Judge Berman.

As will be discussed below, the foregoing objected to one-sided mistreatment of the procedural facts, a mistreatment that is clearly erroneous, contributes significantly to the objected to erroneous rulings in the May 27, 2008 Memorandum Decision and Order.

## II.

### THE OBJECTIONS TO STRIKING RANKEL REPORT DAMAGES ITEMS 3-7 IN THE MAY 27, 2008 MEMORANDUM DECISION AND ORDER

The following are the Objections to the part of the May 27, 2008 Memorandum Decision and Order that was clearly erroneous and contrary to law in striking of Damages Item 3-7 from the Rankel Report.  (Doc. 62, pp. 4-10.)

The May 27, 2008 Memorandum Decision and Order is correct that Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure require an expert to prepare a written report, signed by the expert, that includes, among other things, "(i) a complete statement of all opinions the witness will express and the reasons and bases for them [and] (ii) the data and other information considered by the

8

witness in forming them.  The position of Great White Bear was and is that the Rankel Report satisfied Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure in these two and all other respects. The May 27, 2008 Memorandum Decision and Order asserts that expert reports are not to be sketchy and vague, but that problem was simply not the case here with respect to the Rankel Report, which does disclose the underlying conclusions as to Damages Items 3-7 and which does attach ample supporting documentation.  The supposed problem that the May 27, 2008 Memorandum Decision and Order had was with not seeing a precise arithmetic calculation as to the Damage Items in question.  As explained next, these rulings were in error, and Great White Bear objects to these rulings in the Memorandum Decision and Order striking Damages Items 3 through 7.

A.     **Damages Item 3: Returns, Cancellations and Unjustified Chargebacks.**

Damages Item 3 does include in the damages computation in the Rankel Report an amount for garments unjustifiably returned or cancelled and for unauthorized "charge-backs" (deductions taken by Mervyns from the Great White Bear invoiced price).  The Memorandum Decision and Order acknowledges that the Rankel Report attaches Israeli Bank factor aging statements and checks and client reports reflecting "charge-backs."  Based on this documentation, the Rankel Report sets these costs as $250,000.

The Memorandum Decision and Order, however, asserts that this is a conclusory number and that an expert report cannot simply state a number and attach supporting documents, relying upon *Lava Trading Inc v. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037, 2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005), for the proposition that actual calculation os losses is required.  This is incorrect for a number of reasons.

First, *Lava Trading Inc v. v. Hartford Fire Ins. Co.* is highly inapposite.  A plaintiff service

9

bureau, Lava Trading, sought to prove business interruption losses from the events of September 11, 2001, by having an economist estimate revenues that the service bureau would have had if the events of September 11, 2001 had not occurred. Lava Trading's economist purportedly used a "good faith curve" premised on the notion that had the defendant insurer Hartford promised more money than actually paid on the insurance policy, the plaintiff service bureau could have hired more personnel who then could have taken certain revenue-generating actions. At the very least, it was a problematic, speculative approach.

In distinct contrast, in this case, there were specific returns, cancellations and charge-backs that are reflected in the supporting documentation attached to the Rankel Report. The statements from the factor, the Israeli Discount Bank, are specific in nature and reflect Mervyns's accounting with Great White Bear. The minus notations on the statements indicate that Mervyns took a deduction or that a return was made. But in keeping with Mervyns practice and understood in the garment industry, Mervyns would not deduct off the check that corresponds with a specific order or return, but off a subsequent check. The factor, Israeli Discount Bank, would collect the checks (which have codes indicating the reason for the deduction) and apply the deductions. Quite unlike *Lava Trading Inc v. v. Hartford Fire Ins. Co.*, there was no speculative estimation here of what never happened but for a certain event. The specific returns, cancellations and charge-backs happened.

*Second*, the reason that the Rankel Report provides a reasonable estimate, rather than a calculation, for the unjustified returns and deductions is the nature of the returns, cancellations and charge-backs in this case. Mervyns just made the returns and took the deductions; and those are reflected in the documents. In any supplier-purchaser relationship in the garment industry, however, the subject of returns, cancellations and charge-backs is a matter of continuing discussion, with some

10

deductions accepted and some not. An accountant such as Mr. Rankel who services garment industry clientele is very acquainted with the practices of the garment industry. Given what happened here, that there were deductions taken without agreement, only an estimate can be provided, as some portion of the deductions were improperly taken instead of being negotiated to agreement.

**B.     Damages Item 4: Lost Sample and Development Costs.**

Damages Item 4 does include in the damages computation in the Rankel Report an amount for lost sample and development costs that Great White Bear incurred in creating a new line of clothing for Mervyns. The Rankel Report provides for these inherent costs in the process of marketing a new line of clothing, here under the "R for Rampage" name, a conservative number of $7,500.

The Memorandum Decision and Order acknowledges that Mr. Rankel has intimate knowledge of the finances of GWB (and indeed the record shows that Mr. Rankel has had 25 years of experience in the garment industry as an accountant), but asserts that there is no explanation for the $7,500 figure and no specific data. The error in this assertion is the assumption that there is some special explanation that is required. Sample and development costs are inherent and cannot be avoided in the process of developing a new line of garments, which had a stated amount: $11,700,000 in committed sales from Great White Bear to Mervyns in a 18-month or 3-season period. Given that amount of business and at least 20 different styles reflected in the Mervyns purchase orders, a $7,500.00 figure for samples and development costs is a conservative number for the outside accountant to Great White Bear with 25 years in the apparel and textile industries and knowing the specific finances of Great White Bear and the Mervyns contract.

11

**C.     Damages Item 5: Lost Additional Employee Time and Effort.**

Damages Item 5 does include in the damages computation in the Rankel Report an amount for lost additional employee time and effort.    The Rankel Report calculates that amount at $260,049.40, which is the sum of: (i) the pay and benefits of two new employees, (ii) the portion of compensation for existing employees whose time was redirected to the Mervyns account and (iii) $5,000 of employee time on sales, administrative, samples and patterns work.

The Memorandum Decision and Order asserts that the Rankel Report provides no explanation or documentation as to these figures.  This is not a fair statement at all.  To the contrary, the Rankel Report does provide an identification of the specific employees whose time is being included in the calculation based on specific amounts ascribed to each employee.   Mr. Rankel thus provides a "basis" for the number for this damage item within the meaning of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

Perhaps this is why the May 27, 2008 Memorandum Decision and Order shifts to asserting that the Rankel Report does not provide an "adequate explanation" as to specifics of pay, benefits, compensation of existing employees attributable to Mervyns and the $5,000 sales and other work. Such greater detail can be provided, but there is quite often always a greater detail that can be provided in any expert report.  The question is whether the "basis" for a conclusion under Rule 26(a)(2)(B) has been provided, and that "basis" has been provided.

**D.     Damages Item 6: Interest.**

Damages Item 6 does include in the damages computation in the Rankel Report an amount for interest in the amount of $10,000 that Great White Bear incurred due to unshipped garments in

12

inventory, returned garments in inventory and unjustified charge-backs. The Rankel Report states that the interest figure has been calculated based on the 12% interest rate that Great White Bear's factoring bank charged Great White Bear.

The May 27, 2008 Memorandum Decision and Order still faults the Rankel Report as not providing an explanation for the $10,000 figure and raises some supposed possibilities as to different ways to calculate the interest. The Rankel Report clearly states, however, the "basis" within the meaning of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure for its conclusion as to interest: Great White Bear was financed by Israeli Discount Bank Factor (such financing was necessary and typical in the apparel industry); there was, however, an additional cost attributable to the Mervyns breach in additional finance interest resulting from unshipped garments in inventory, returned garments in inventory and unjustified chargebacks; and taking into account that the factor IDB was charging 12% on all advances and the amount of business that Mervyns did and was contracted to do with Great White Bear, additional interest charges that would not have occurred but for the Mervyns breach are what are included in this damage item. Supporting documentation for this damage item is provided for the costs in the unshipped garments in inventory, returned garments in inventory and unjustified chargebacks is provided. What Mr. Rankel supplies to derive the number is the 12% charge on all advances that the factor Israeli Discount Bank Factor was charging and the amount of the contracted for business with Mervyns.

The questions that are contained in the May 27, 2008 Memorandum Decision and Order would make for a legitimate line of questioning at a deposition of Mr. Rankel; however, the issue presently is under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure whether the "basis" for a conclusion in an expert report, and that "basis" is provided.

13

**E.**    **Damages Item 7: Lost Opportunity Cost.**

Damages Item 7 does include in the damages computation in the Rankel Report an amount for lost opportunity cost relating to work orders that Great White Bear was unable to fill because it performed work for Mervyns instead. The Rankel Report identifies unfilled orders for two customers, Charming Shoppes and Cato that amount to $700,000. The Rankel Report attaches documentation in unfulfilled purchase orders of Charming Shoppes, and that documentation alone substantiates the claimed losses.

The May 27, 2008 Memorandum Decision and Order argues with the Rankel Report that unfilled purchase orders cannot by themselves be used to prove damages because they do not take into account the costs of manufacturing and because insufficient explanation is provided as to how the $700,000 figure is derived. The problem with the May 27, 2008 Memorandum Decision and Order on this point is that it does not take into account the theory of lost opportunity costs explained in the Rankel Report. Mr. Rankel, the outside accountant to Great White Bear, notes in his Rankel Report that, excluding Mervyns, Great White Bear had a core customer base of approximately $8 million, but that by prioritizing the work of the Great White Bear company for Mervyns, Great White Bear was not able to fill orders for such customers as Charming Shoppes and Cato's because overseas factories had applied deposits provided for other orders that were applied instead to the costs of garments made for Mervyns.

14

## III.

## THE OBJECTIONS TO THE "REMEDY"
## IN THE MAY 27, 2008 MEMORANDUM DECISION AND ORDER

The following are the Objections to the part of the May 27, 2008 Memorandum Decision and Order that concern the "remedy" ordered -- the preclusion of testimony at trial by Mr. Rankel concerning Damage Items 3 through 7 without an opportunity to cure the supposed defects stated in the Memorandum Decision and Order.  (Doc. 62, pp. 11-14.)

The Memorandum Decision and Order correctly recognizes that preclusion is not mandatory, citing _Design Strategy, Inc. v. Davis_, 469 F.3d 284, 297 (2d Cir. 2006), but imposes that "remedy" without opportunity to cure ostensibly using a four-factor test stated in _Patterson v. Balsamico_, 440 F.3d 104, 117 (2d Cir. 2006), _quoting Softel, Inc. v. Dragon Med. & Scientific Communications, Inc._, 118 F.3d 955, 961 (2d Cir. 1997): (A) the party's explanation for the failure to comply with the disclosure requirement; (B) the importance of the testimony of the precluded witness; (C) the prejudice suffered by the opposing party as a result of having to prepare to meet new testimony; and (D) the possibility of a continuance.  The error of the Memorandum Decision and Order was in the application of this four part test.  As explained next, even assuming the rulings in striking Damages Items 3-7 have merit (which Great White Bear does not concede), the rulings concerning "remedy" were in error, and Great White Bear objects to the "remedy" imposed and the statement of reasons for it.

## A.    "Explanation."

The first factor is a party's explanation for the failure to comply with disclosure.  According to the Memorandum Decision and Order, Great White Bear was given many opportunities to correct

15

its report and has no explanation for its failure and that this factor weighs heavily in favor of

Mervyns in terms of imposing a sanction. This assertion, however, directly depends on the objected

to misstatement of the procedural facts discussed in Part I of these Objections and results in misusing

against Great White Bear its cooperation in expert discovery to respond to Mervyns's complaints

asserted under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. The statement that this

factor of "explanation" weighs heavily in favor of Mervyns is clearly erroneous.

This is why the clearly erroneous mistreatment of the procedural facts is so objectionable;

it gives the impression that Great White Bear had no explanation for failures to cure when in fact,

all along, Great White Bear disputed Mervyns's assertion that Rule 26(a)(2)(B) of the Federal Rules

of Civil Procedure was not complied with, but instead sought to provide supplementation in response

to what was a generalized complaint until the Good Friday correspondence. Great White Bear even

meet a 48-hour deadline imposed on it with a detailed explanation why Rule 26(a)(2)(B) of the

Federal Rules of Civil Procedure was satisfied. (Doc. 59: Byler Decl. ¶ 3 & Ex. B.) For Great White

Bear to be so cooperative in expert discovery and then provide an explanation for its compliance

with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, it simply is unreasonable for the May

27, 2008 Memorandum Decision and Order to say that no explanation was provided by Great White

Bear for so called repeated failures to cure.

**B.**      **"Importance of Testimony."**

The second factor is the importance of the testimony of the precluded witness. The May 27,

2008 Memorandum Decision and Order recognizes that Great White Bear can put on a fact witness

to prove Damages Items 3-7 (these Damage Items are real), but then concludes that the availability

of fact testimony on those Damages Items argues in favor of preclusion of the expert witness. This

16

seems to be a it of a *non sequitur*. By recognizing the availability of a fact witness to testify to what are valid elements of damages in this case, the more logical conclusion would be that even if there is insufficient explanation of theses Damages Items, an opportunity to cure should be made available, particularly since the above review of the stricken Damages Items appear as ones where cure can be provided. The statement that this factor of "importance of testimony" weighs in favor of preclusion is clearly erroneous.

**C.**    **The Prejudice Suffered By The Opposing Party In Meeting New Testimony.**

The third factor is the prejudice suffered by the opposing party as the result of having to prepare to meet new testimony. The May 27, 2008 Memorandum Decision and Order states that this factor weighs slightly against imposing sanctions, recognizing that expert discovery is ongoing and Mervyns has yet been required to produce its expert reports. The statement that this factor of "prejudice" weighs slightly against sanctions is clearly erroneous because it should be considered a heavy factor against sanctions.

**D.**    **The Possibility Of A Continuance.**

The fourth factor is the possibility of a continuance. Under this factor, the May 27, 2008 Memorandum Decision and Order invokes "fairness" to Mervyns and to the Magistrate to justify a sanction. This statement that there are "fairness" considerations to Mervyns and the Magistrate in this case to warrant sanctions is clearly erroneous.

As to Mervyns, there is no fairness, as Mervyns has not heretofore been required to do one thing in expert discovery for the past six months. Furthermore, once the procedural facts are treated fairly, there is especially no basis to be considering a supposed fairness factor with respect to Mervyns.

17

As to the Magistrate Judge, there is no such fairness factor, as Magistrate Judge is not suppose to be a litigant on the side of Mervyns so as to have a fairness interrest.  Also, once the procedural facts are treated fairly, there is especially no basis to be considering a supposed fairness factor with respect to the Magistrate.  Indeed, the statement in the May 27, 2008 Memorandum Decision and Order about a fairness interest on the part of the Magistrate Judge is odd and disturbing, seemingly reflective of the Magistrate putting himself on the side of Mervyns in the litigation.

## IV.

## <u>THE OBJECTIONS TO THE JUNE 4, 2008 ORDER</u>

The following are the Objections to the June 4, 2008 Order.  (Doc. 63.)  The June 4, 2008 Order is clearly erroneous and contrary to law in two respects.  *First*, the June 4, 2008 Order, insofar as it effectively serves as an implementing order to objected to rulings in the May 27, 2008 Memorandum Decision and Order, is subject to the same Objections.  *Second*, the June 4, 2008 Order incorrectly omitted, presumably by mistake, reference to any *Daubert* motion under Rule 702 of the Federal Rules of Evidence that Mervyns might wish to make as one to be addressed (along with any dispositve motions) in a letter to Judge Berman. as to be the subject of a letter to Judge Berman for permission to move.

18

## CONCLUSION

Based on the foregoing Objections, Great White Bear requests that the objected to statements

and rulings in the May 27, 2008 Memorandum Decision and Order and the June 8, 2008 be set aside

or modified as appropriate.

Dated:  New York, New York
        June 6, 2008

                              NESENOFF & MILTENBERG, LLP

                              By:  __/s/ Philip A. Byler, Esq._____
                                       Philip A. Byler, Esq. (PB 1234)

                              Attorneys for Plaintiff Great White Bear, LLC
                              363 Seventh Avenue - Fifth Floor
                              New York, New York 10001
                              212.736.4500